UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CHEROKEE NATION, et al., | ) |
| *Plaintiffs,* | ) |
| v. | ) Civil Action No.: 1:20-cv-2167 (TJK) |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.,* | ) |
| *Defendants.* | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JOE BUNCH AND BRIAN GIVENS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..............................................................................................................................4

STATEMENT OF THE FACTS ALLEGED AGAINST CHIEF BUNCH AND MEKKO GIVENS..................................................................................................................................5

ARGUMENT......................................................................................................................................6

    A.    There Is No Private Cause of Action Against Chief Bunch or Mekko Givens Under IGRA.................................................................................................................6

    B.    There Is No Subject Matter Jurisdiction for the Claims Against Chief Bunch and Mekko Givens.....................................................................................................11

    C.    Plaintiff Nations Have Failed to Satisfy the *Ex parte Young* Doctrine .........................11

CONCLUSION................................................................................................................................14

## TABLE OF AUTHORITIES

Page

### CASES

*Alabama v. PCI Gaming Authority,* 801 F. 3d 1278 (11th Cir. 2015) ................................................. 12

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................................................ 7

*Crosby Lodge, Inc. v. Nat'l Indian Gaming Ass'n*, No. 3:06-CV-00657, 2007 WL 2318581 (D. Nev. Aug. 10, 2007) ......................................................................................................... 9

*Davids v. Coyhis,* 869 F. Supp. 1401 (E.D. Wis. 1994) ..................................................................... 10

*Dewberry v. Kulongoski*, 406 F. Supp. 2d 1136 (D. Or. 2005) ..................................................... 8, 9

*Ex parte* Young, 209 U.S. 123 (1909) .......................................................................................... 11, 12

*Florida v. Seminole Tribe of Fla.*, 181 F. 3d 1237 (11th Cir. 1999) ...................................... 9, 10, 12

*Friends of Amador County v. Salazar,* No. CIV. 2:10-348, 2010 WL 4069473 (E.D. Cal. Oct. 18, 2010) ............................................................................................................ 9

*Hartman v. Kickapoo Tribe Gaming Comm'n*, 319 F.3d 1230 (10th Cir. 2003) .............................. 7, 9

*Hein v. Capitan Grande Band of Diegueno Mission Indians,* 201 F.3d 1256 (9th Cir. 2000) ............. 7, 8

*Hettinga v. United States,* 677 F.3d 471 (D.C. Cir. 2012) .................................................................. 7

*Jimi Development Corp. v. Ute Mountain Ute Indian Tribe,* 930 F. Supp. 493 (D. Colo. 1996) .......... 11

*Langley v. Edwards,* 872 F. Supp. 1531 (W.D. La. 1995) ................................................................ 10

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) ........................................... 13

*Michigan v. Bay Mills Indian Community,* 572 U.S. 782 (2014) ....................................................... 12

*Okusami v. Psychiatric Inst. of Wash., Inc.,* 959 F.2d 1062 (D.C. Cir. 1992) ..................................... 7

*Richards v. Duke Univ.,* 480 F. Supp. 2d 222 (D.D.C. 2007) ........................................................... 11

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ................................................................ 12

*Tamiami Partners, Ltd. By and Through Tamiami Development Corp. v. Miccosukee Tribe of Indians of Florida*, 63 F. 3d 1030 (11th Cir. 1995) .................................................................. 8

*Vann v. Kempthorne*, 534 F.3d 741 (D.C. Cir. 2008) ...................................................... 12, 13, 14

*Whiteco Metrocom Div. of Whiteco Indus., Inc. v. Yankton Sioux Tribe,* 902 F. Supp. 199 (D.S.D. 1995) ............................................................................................................................ 11

**STATUTES**

Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq* ........................................................................... 7

Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 - 2714 ............................................................ passim

**AGENCY ACTIONS**

NIGC Notice of Violation ("NOV") 09-35, Fort Sill Apache Tribe of Oklahoma (July 21, 2009)
    (available at https://www.nigc.gov/images/uploads/enforcement-actions/NOV-09-35.pdf). ........... 14

**INTRODUCTION**

In 1988, Congress passed the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq.* ("IGRA") to establish a statutory basis for the operation and regulation of gaming by Indian tribes. 25 U.S.C. § 2702. IGRA divides gaming into three classes. Class I gaming comprises social games played for prizes of minimal value and traditional forms of Indian gaming; it is regulated exclusively by Indian tribes. 25 U.S.C. §§ 2703(6), 2710(a)(1). Class II gaming consists of bingo and similar games over which the National Indian Gaming Commission ("NIGC") and tribes share regulatory authority. 25 U.S.C. §§ 2703(7), 2710(a)(2). Finally, Class III gaming includes "all forms of gaming that are not class I gaming or class II gaming." 25 U.S.C. § 2703(8).

In order to conduct Class III gaming, an Indian tribe must: (1) authorize the gaming activities by a tribal ordinance that has been approved by the Chairman of the NIGC; (2) conduct the gaming activities in a State that otherwise permits such gaming; and (3) enter into a Tribal-State gaming compact. 25 U.S.C. § 2710(d)(1). Tribal-State gaming compacts are negotiated between the Indian tribe and the State and must be approved by the Secretary of the Department of the Interior in order to take effect. 25 U.S.C. §§ 2710(d)(3), 2710(d)(8).

Plaintiffs are four federally recognized Indian tribes ("Plaintiff Nations") that conduct gaming in the State of Oklahoma under existing Tribal-State Compacts. They have brought this action to attempt to challenge Tribal-State Compacts entered into between the Governor of Oklahoma and four other Indian tribes, including the United Keetoowah Band of Cherokee Indians in Oklahoma ("UKB") and the Kialegee Tribal Town ("KTT"). The tribes were not directly named as defendants. They have sovereign immunity from suit. Instead, Plaintiff Nations named tribal leaders from the four tribes, citing the *Ex parte Young* doctrine. This Motion to Dismiss is brought

4

by Defendants Joe Bunch, Chief of the UKB, and Brian Givens, Mekko of the KTT, who seek to be dismissed from this lawsuit.

## STATEMENT OF THE FACTS ALLEGED AGAINST
## CHIEF BUNCH AND MEKKO GIVENS

1. Despite the First Amended Complaint ("F.A.C.") [D.N. 24-1] containing 268 paragraphs and 115 pages, the allegations against Chief Bunch and Mekko Givens, recited here but not admitted, may be succinctly stated as follows:

2. Chief Bunch is the Chief of the UKB, a federally recognized Indian Tribe. F.A.C. ¶ 18.

3. Mekko Givens is the Mekko of the KTT, a federally recognized Indian Tribe. F.A.C. ¶ 19.

4. Plaintiffs, Cherokee Nation, Chickasaw Nation, Choctaw Nation, and Citizen Potawatomi Nation ("Plaintiff Nations") are federally recognized Indian tribes. F.A.C. ¶¶ 8-11.

5. Plaintiff Nations have each entered into gaming compacts and operate gaming facilities in the competitive Oklahoma gaming market. F.A.C. ¶¶ 60, 70.

6. On July 1, 2020, UKB and KTT entered into separate Class III Tribal-State gaming compacts pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq.* ("IGRA") with Defendant Governor J. Kevin Stitt, Governor of the State of Oklahoma ("Governor Stitt") (the "UKB Compact" and the "KTT Compact," respectively). F.A.C. ¶ 101.

7. The UKB Compact and the KTT Compact (collectively, the "Subject Compacts") were submitted to the United States Department of the Interior ("Department") for approval. F.A.C. ¶ 101.

8.      On August 15, 2020, the 45-day period of time in which Defendant Secretary of the Interior ("Secretary") had to approve or disapprove of a gaming compact expired. The Secretary took no action with regard to the Subject Compacts and pursuant to IGRA, 25 U.S.C. § 2710(d)(8)(c), they were deemed approved by operation of law. F.A.C. ¶ 105.

9.      The Plaintiff Nations' only allegations against Chief Bunch and Mekko Givens are that, (i) by submission of the Subject Compacts to the Department, they represented that the Subject Compacts were validly entered by Governor Stitt under Oklahoma law; (ii) subsequent to August 15, 2020, Chief Bunch and Mekko Givens have publicly represented that the Subject Compacts are valid and in effect; and (iii) Chief Bunch and Mekko Givens have taken unspecified actions to exercise authority or jurisdiction under the Subject Compacts. F.A.C. ¶¶ 3, 4, 105, 112, 123, 130, 267.

10.     The only relief sought by Plaintiff Nations against Chief Bunch and Mekko Givens, under Count VIII of the First Amended Complaint, is a declaration by the Court that their "efforts to exercise authority or jurisdiction under the Agreements, including by engaging in Class III gaming without a Tribal-State compact that has been validly 'entered into' by the State under IGRA, are unlawful and constitute a continuing violation of federal law." F.A.C. Prayer for Relief, ¶ 1(i).

## ARGUMENT

**A. There Is No Private Cause of Action Against Chief Bunch or Mekko Givens Under IGRA.**

Plaintiff Nations allege various reasons why they believe the Subject Compacts to be invalid and ask the Court to declare that Chief Bunch and Mekko Givens' exercise of authority or jurisdiction under them is unlawful. However, IGRA does not provide a private cause of action for

6

challenges to the validity of a compact. While Plaintiff Nations also seek relief under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*. ("APA"), the APA does not apply to tribes or tribal officials.[1] Accordingly, Plaintiffs' claims against Chief Bunch and Mekko Givens should be dismissed under Rule 12(b)(6). "Court[s] must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged" when considering a Rule 12(b)(6) motion. *Hettinga v. United States,* 677 F.3d 471, 476 (D.C. Cir. 2012) (quotation and citation omitted). Threadbare recitals of the elements of a cause of action supported only by conclusory statements are not sufficient to state a claim. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Dismissal for failure to state a claim "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.,* 959 F.2d 1062, 1066 (D.C. Cir. 1992).

Plaintiff Nations' claims against Chief Bunch and Mekko Givens must fail, because "IGRA provides no general private right of action[.]" *Hein v. Capitan Grande Band of Diegueno Mission Indians,* 201 F.3d 1256, 1260 (9th Cir. 2000); *Hartman v. Kickapoo Tribe Gaming Comm'n*, 319 F.3d 1230, 1232 (10th Cir. 2003) ("nowhere does IGRA expressly authorize private individuals to sue directly under the statute for failure of a tribe, a state, or the NIGC to comply with its provisions."). In crafting IGRA, Congress expressly enumerated the causes of action which may be brought. 25 U.S.C. § 2710(d)(7)(A). They are:

> (i) Any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact under paragraph (3) or to conduct such negotiations in good faith,

---

[1] The APA applies only to federal agencies, not to tribes or tribal officials. 5 U.S.C. § 701.

  (ii) Any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal State compact entered into under paragraph (3) that is in effect, and

  (iii) Any cause of action initiated by the Secretary to enforce the procedures prescribed under subparagraph (B)(vii).[2]

*Id.*

  Because IGRA provides a comprehensive regulatory scheme and explicit remedies, the coverage of the statute should not be expanded. *Hein,* 201 F.3d at 1260; *Tamiami Partners, Ltd. By and Through Tamiami Development Corp. v. Miccosukee Tribe of Indians of Florida*, 63 F. 3d 1030, 1049 (11th Cir. 1995) ("IGRA provides [the plaintiff] no right to relief.").

  Plaintiff Nations' claims do not fit within any of the prescribed causes of action set forth in IGRA. They are not a tribe seeking to enter into good faith negotiations with a state, and they, of course, are not the Secretary. *See* 25 U.S.C. § 2710(d)(7)(A)(i), (iii). Furthermore, their suit does not fall under the type of action contemplated by subsection (ii), because (a) they are not seeking injunctive relief against Chief Bunch or Mekko Givens, or seeking to enjoin any party from class III gaming activity, and (b) they made no allegations concerning any class III gaming activity that is being conducted in violation of any Tribal-State compact. Therefore, Plaintiff Nations' claims are not within the permissible causes of action allowed under IGRA.

  Multiple courts have reached the same conclusion under similar circumstances. In *Dewberry v. Kulongoski*, 406 F. Supp. 2d 1136 (D. Or. 2005), the court rejected IGRA claims

---

[2] *See also*, 25 U.S.C. §§ 2711(d) (authorizing suit if Chairman of the NIGC fails to approve or disapprove a proposed management contract submitted by an Indian tribe); § 2714 (authorizing review of certain NIGC decisions under the APA). Neither of these provisions are at issue here, as Plaintiff Nations have made no allegations regarding the NIGC.

similar to those asserted by Plaintiff Nations. *Id.* at 1146.  There, the plaintiffs were a group of landowners who filed suit to challenge the validity of a Tribal-State compact. *Id.* at 1143. They argued that the subject compact violated Oregon state law because it was not legally executed by the Governor. *Id.* at 1138-39. In dismissing the action, the court stated that IGRA's "limited abrogation of sovereign immunity does not extend to any claim brought by any person in connection with the Tribes' Compact, and plaintiffs cannot invoke IGRA to overcome the Tribes' sovereign immunity." *Id.* at 1146.

Similarly, the Eastern District of California dismissed a suit brought by a citizens group to challenge the validity of a compact, holding that "IGRA does not explicitly authorize private individuals to sue under the statute for failure of a state, tribe, or the National Indian Gaming Commission to comply with its provisions…[and had] Congress intended for individuals to have a private cause of action to enforce the class III gaming requirements of IGRA, it would have provided for it explicitly." *Friends of Amador County v. Salazar,* No. CIV. 2:10-348, 2010 WL 4069473 at *4-5 (E.D. Cal. Oct. 18, 2010). Not only is there no explicit private cause of action, but there is not an implied private cause of action under IGRA either. *Hartman*, 319 F. 3d at 1233 (affirming dismissal of card dealer's lawsuit against tribe, tribal officials, the state, the NIGC, and federal officials for alleged IGRA violations).

Additional examples of IGRA lawsuits dismissed under Rule 12(b)(6) include: a State's suit to enjoin class III gaming activity without a compact (as opposed to class III gaming in violation of a compact), *Florida v. Seminole Tribe of Fla.*, 181 F. 3d 1237, 1246-50 (11th Cir. 1999); a gaming operator's challenge to a tribal demand for payment of net revenue to the tribe, *Crosby Lodge, Inc. v. Nat'l Indian Gaming Ass'n*, No. 3:06-CV-00657, 2007 WL 2318581 (D. Nev. Aug. 10, 2007) ("[I]t is also well settled that Congress did not intend to provide for a private

9

right of action to enforce IGRA."); a tribal citizens' suit against the validity of their tribe's compact, *Langley v. Edwards,* 872 F. Supp. 1531, 1535 (W.D. La. 1995) ("No substantive right exists to challenge the approval [of a Tribal-State gaming compact] on the basis of alleged state law irregularities."); and a tribal citizens' suit alleging diversion of net gaming revenue in violation of IGRA, *Davids v. Coyhis,* 869 F. Supp. 1401, 1410 (E.D. Wis. 1994) ("The IGRA contains no explicit private cause of action against tribal officers.").

It is clear that unless a cause of action precisely falls within those created by Congress, plaintiffs may not sustain suits under IGRA. *Florida*, 181 F. 3d at 1248 ("when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies"). Plaintiff Nations, as competitor tribes, claim that Chief Bunch and Mekko Givens violated IGRA, and continue to violate IGRA, by taking some unspecified actions to exercise jurisdiction under the Subject Compacts and by representing that the Subject Compacts are valid.  Even if such allegations were true, and even if such allegations amounted to IGRA violations, they are outside the scope of actions which may be brought under IGRA, and they must therefore be dismissed.[3]

Even if there were a conceivable cause of action to be brought by Plaintiff Nations under IGRA, the F.A.C. fails to include any specific allegations of any facts necessary to support the position that Chief Bunch or Mekko Givens are actually exercising authority or jurisdiction under the Subject Compacts. Thus, their claim for relief is not supported by allegations of fact, but instead includes only conclusory statements, and it should be dismissed.  *Iqbal,* 556 U.S. at 678.

---

[3] No other statute provides a cause of action for Plaintiff Nations to include Chief Bunch and Mekko Givens as defendants in this lawsuit.  Moreover, no UKB or KTT tribal law authorized Plaintiff Nations to bring this federal litigation.

### B. There Is No Subject Matter Jurisdiction for the Claims Against Chief Bunch and Mekko Givens.

The Plaintiff Nations bear the burden of establishing that the court has jurisdiction under Rule 12(b)(1). *Richards v. Duke Univ.,* 480 F. Supp. 2d 222, 231 (D.D.C. 2007). Courts give the plaintiff's factual allegations "closer scrutiny" when reviewing a motion to dismiss for lack of subject matter jurisdiction and there is no presumption of truthfulness. *Id.* at 231-32.

Courts have dismissed IGRA claims that are not authorized by the statute under Rule 12(b)(1), rather than Rule 12(b)(6). *See, e.g., Jimi Development Corp. v. Ute Mountain Ute Indian Tribe,* 930 F. Supp. 493, 498 (D. Colo. 1996) (dismissing IGRA claims under Rule 12(b)(1)); *Whiteco Metrocom Div. of Whiteco Indus., Inc. v. Yankton Sioux Tribe,* 902 F. Supp. 199, 202-203 (D.S.D. 1995). Because Congress gave the United States district courts jurisdiction to hear only specific causes of action relating to IGRA, the Court does not have subject matter jurisdiction to entertain claims that are not enumerated in Section 2710(d)(7)(A).

Recognizing that the arguments made under Rule 12(b)(6) above apply equally to Rule 12(b)(1), Chief Bunch and Mekko Givens respectfully request that the Court alternatively consider dismissing them from this case because the Court has no subject matter jurisdiction.

### C. Plaintiff Nations Have Failed to Satisfy the *Ex parte Young* Doctrine

Plaintiff Nations allege that they have sued Chief Bunch and Mekko Givens in their official capacities "under the doctrine of *Ex parte* Young, 209 U.S. 123 (1909)." F.A.C. ¶ 1. While it is possible for a plaintiff to pursue an IGRA claim against a tribal official under *Ex parte Young*, they may only do so under a valid cause of action, and as discussed above, Plaintiff Nations are not before this Court with a viable claim against Chief Bunch and Mekko Givens. *See Alabama v. PCI*

*Gaming Authority,* 801 F. 3d 1278, 1289-90 (11th Cir. 2015); *Florida*, 181 F. 3d at 1246-50) (affirming dismissal of claim against tribal official).

Even if the Court were to hold that the F.A.C. states a cause of action against Chief Bunch or Mekko Givens, Plaintiff Nations have failed to satisfy the *Ex parte Young* doctrine and Chief Bunch and Mekko Givens are shielded from suit by their respective tribes' sovereign immunity. Indian tribes such as UKB and KTT "exercise inherent sovereign authority. . . [U]nless and until Congress acts, the tribes retain their historic sovereign authority. . . Among the core aspects of sovereignty that tribes possess – subject, again to congressional action – is the common law immunity from suit traditionally enjoyed by sovereign powers." *Michigan v. Bay Mills Indian Community,* 572 U.S. 782, 788 (2014) (internal quotations and citations omitted). "A suit against a tribe is barred unless the tribe clearly waived its immunity or Congress expressly abrogated that immunity by authorizing the suit." *PCI Gaming Authority,* 801 F. 3d at 1287 (internal quotations and citation omitted). Tribal immunity is not derived from the Eleventh Amendment, but is treated similarly. *See Vann v. Kempthorne*, 534 F.3d 741, 746 (D.C. Cir. 2008) ("This immunity flows from a tribe's sovereign status in much the same way as it does for the States and for the federal government.") (footnote omitted).

Under certain circumstances not present here, Federal courts can apply a narrow exception to a government's sovereign immunity under the *Ex parte Young* doctrine. *Ex parte Young*, 209 U.S. 123 (1908). A federal court is not barred from hearing a case against a government official when the suit seeks only prospective injunctive relief in order to end a continuing violation of federal law. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73-74 (1996). To determine whether the doctrine applies, courts conduct a straightforward inquiry into whether the complaint (a) alleges an ongoing violation of federal law and (b) seeks prospective relief. *Vann,* 534 F.3d at

12

750 ("Faced with allegations of ongoing constitutional and treaty violations, and a prospective request for injunctive relief, officers of the Cherokee Nation cannot seek shelter in the tribe's sovereign immunity.").

Where a plaintiff seeks no prospective injunctive relief against an official to enjoin a continuing action that is outside the scope of his authority, the suit is actually against the tribe and it is barred by sovereign immunity. *Id.* at 751 (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-90 (1949) ("The stripping rationale did not apply to the Administrator because the Corporation's breach-of-contract claim did not show him to have acted outside his authority.").

Plaintiff Nations' only grievances against Chief Bunch and Mekko Givens are that, on behalf of their respective tribes, they: submitted the Subject Compacts to the Department for approval; after such approval, made public representations that the Subject Compacts were valid and in effect; and took unspecified actions to exercise jurisdiction and authority under the Subject Compacts. First, the Plaintiff Nations make no allegations that the tribal officials acted outside of their authority under tribal law.  Nor could they have made any such allegations, because none of the actions alleged above are outside of the tribal officials' authority.  Under tribal law, Chief Bunch and Mekko Givens were authorized to submit the Subject Compacts to the Department of the Interior for approval, inform others that the Subject Compacts were signed by the Governor and approved pursuant to IGRA, and start to plan for the implementation of the Subject Compacts. Therefore, the alleged actions are official functions of the tribal officials' positions, not *ultra vires* actions outside the scope of their authority.  As such, this suit is more properly framed as being one against the tribes rather than the officers. *Id.*

Further, Plaintiff Nations do not allege any ongoing illegal activity under either federal or tribal law. The submission of each compact for approval was a one-time event, so even if it were a violation of IGRA (which it was not), such submission cannot be the subject of a continuing violation. Making public representations about the validity of the Subject Compacts is not a violation of IGRA, as no provision of IGRA addresses this point, nor does any other federal or tribal law. To commit a violation of IGRA requires the actual conduct of gaming. *See, e.g.*, Notice of Violation ("NOV") 09-35, Fort Sill Apache Tribe of Oklahoma (July 21, 2009) (available at https://www.nigc.gov/images/uploads/enforcement-actions/NOV-09-35.pdf) (basing NOV on actual conduct of gaming after developing facility on ineligible Indian lands). IGRA regulates gaming, not preparing to game. 25 U.S.C. § 2702 (IGRA provides a statutory basis for the "operation of gaming" and the "regulation of gaming" by Indian tribes). Until there is gaming, as a matter of law, there can be no continuing violation of IGRA. While making the conclusory statements that Chief Bunch and Mekko Givens are exercising authority or jurisdiction under the Subject Compacts, Plaintiff Nations did not allege—nor could they allege—that either of them are conducting or regulating Class III gaming, or causing others to take such actions.

Finally, Plaintiff Nations do not seek any injunctive relief against Chief Bunch or Mekko Givens to enjoin any activity, which is an essential element of the *Ex parte Young* doctrine. *Vann,* 534 F.3d at 750. Plaintiff Nations have not satisfied either prong necessary to overcome sovereign immunity under *Ex parte Young*. Chief Bunch and Mekko Givens therefore should be dismissed from this litigation because they are shielded from suit as officials of sovereign tribes.

## CONCLUSION

Plaintiff Nations have failed to allege a valid cause of action against Chief Bunch or Mekko Givens. In addition, the Court does not have subject matter jurisdiction to grant the relief sought

against Chief Bunch and Mekko Givens under IGRA.  Moreover, Chief Bunch and Mekko Givens are immune from suit pursuant to sovereign immunity. Accordingly, Chief Bunch and Mekko Givens respectfully request that this Court dismiss with prejudice all claims against them.

Dated: October 13, 2020	Respectfully submitted,

 /s/ *Klint A. Cowan*
Klint A. Cowan, admitted *pro hac vice*
**Fellers Snider Blankenship Bailey**
  **& Tippens, P.C.**
100 N. Broadway, Suite 1700
Oklahoma City, OK 73102-9211
Email: Kcowan@FellersSnider.com
Tel: (405) 232-0621
Fax: (405) 232-9659


 /s/ *Jeffrey C. Nelson*
Jeffrey C. Nelson, Bar # 462481
**Maglio Christopher & Toale, P.A.**
1015 15th St NW, Suite 1125
Washington, DC 20005
Email: Jnelson@mctlaw.com
Email: ebanfelder@mctlaw.com
Tel: 888.952.5242
Fax: 977.952.5042

Altom M. Maglio, Bar # 456975
Laura Bauman, admitted *pro hac vice*
**Maglio Christopher & Toale, P.A.**
1605 Main Street, Suite 710
Sarasota, FL 34236
Email: amm@mctlaw.com
Email: lbauman@mctlaw.com
Tel: 888.952.5242
Fax: 977.952.5042

*Attorneys for Defendants, JOE BUNCH, in his capacity as the Chief of the United Keetoowah Band of Cherokee Indians in Oklahoma, and BRIAN GIVENS, in his official capacity as the Mekko of the Kialegee Tribal Town*

**CERTIFICATE OF SERVICE**

    I, Jeffrey C. Nelson, hereby certify that on October 13, 2020 the foregoing documents were filed through CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                                  /s/ *Jeffrey C. Nelson*
                                                                   Jeffrey C. Nelson