# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE CHEROKEE NATION,<br>a federally recognized Indian Tribe,<br>17675 S. Muskogee Ave.<br>Tahlequah, OK 74464, | ) ) ) ) ) | |
| THE CHICKASAW NATION,<br>a federally recognized Indian Tribe,<br>520 E. Arlington St.<br>Ada, OK 74820, | ) ) ) ) ) | |
| THE CHOCTAW NATION,<br>a federally recognized Indian Tribe,<br>1802 Chukka Hina Dr.<br>Durant, OK 74701, and | ) ) ) ) ) | |
| THE CITIZEN POTAWATOMI NATION,<br>a federally recognized Indian Tribe,<br>1601 S. Gordon Cooper Dr.<br>Shawnee, OK 74801, | ) ) ) ) ) ) | |
|      Plaintiffs, | ) ) | |
| v. | ) ) ) | No. 1:20-cv-02167 (TJK) |
| UNITED STATES DEPARTMENT OF THE INTERIOR, DAVID BERNHARDT, in his official capacity as the Secretary of the Interior, TARA KATUK MAC LEAN SWEENEY, in her official capacity as the Assistant Secretary of the Interior – Indian Affairs, United States Department of the Interior,<br>1849 C Street N.W.<br>Washington, DC 20240, | ) ) ) ) ) ) ) ) ) ) ) | |
| J. KEVIN STITT, in his official capacity as the Governor of the State of Oklahoma,<br>2300 N. Lincoln Blvd. #212<br>Oklahoma City, OK 73105, | ) ) ) ) ) ) | |

WILLIAM NELSON, SR., in his official capacity )
as the Chairman of the Business Committee of the )
Comanche Nation, )
583 NW Bingo Rd. )
Lawton, OK 73507, and )
 )
JOHN R. SHOTTON, in his official capacity as )
the Chairman of the Tribal Council of the Otoe- )
Missouria Tribe of Indians )
8151 Hwy 177 )
Red Rock, OK 74651, )
 )
JOE BUNCH, in his official capacity as the Chief )
of the United Keetoowah Band of Cherokee )
Indians in Oklahoma )
18263 Keetoowah Cir. )
Tahlequah, OK 74464, and )
 )
BRIAN GIVENS, in his official capacity as the )
Mekko of the Kialegee Tribal Town )
100 Kialegee Dr. )
Wetumka, OK 74883, )
 )
       Defendants. )

## ANSWER AND COUNTERCLAIM OF DEFENDANT JOHN R. SHOTTON

Defendant John R. Shotton, in his official capacity as the Chairman of the Tribal Council

("Chairman Shotton") of the Otoe-Missouria Tribe of Indians ("Tribe"), by undersigned counsel,

hereby submits this Answer to the First Amended Complaint and Supplemented Complaint

("Amended Complaint) and Counterclaims.   ECF No. 26.   Specifically, in response to the

numbered paragraphs set forth in the Amended Complaint, Chairman Shotton admits, denies, or

otherwise responds to the allegations as set forth below.   All allegations are denied unless

expressly admitted, and an admission to a portion of an allegation does not constitute an

admission, either express or implied, to the remainder of the allegation.

## I.   NATURE OF THE ACTION

1.      Paragraph 1 is a subjective characterization of the above-captioned civil action and relief requested by Plaintiffs to which no response is required, except to the extent that the paragraph can be construed to allege that the Chairman Shotton has violated of federal law, in which case such allegations are denied.

2.      Paragraph 2 contains legal conclusions and subjective characterizations, to which no response is required.  To the extent that a response is required, Chairman Shotton denies the allegations of Paragraph 2.

3.      Paragraph 3 contains legal conclusions and subjective characterizations, to which no response is required. To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 3.

4.      Paragraph 4 contains legal conclusions and subjective characterizations, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 4.

5.      Paragraph 5 contains legal conclusions and subjective characterizations, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 5.

6.      Paragraph 6 contains legal conclusions and subjective characterizations, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 6.

7.      Paragraph 7 contains legal conclusions and subjective characterizations, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 7.

## II.   PARTIES

8.      Chairman Shotton admits the allegations in Paragraph 8.

9.      Chairman Shotton admits the allegations in Paragraph 9.

10.     Chairman Shotton admits the allegations in Paragraph 10.

11.     Chairman Shotton admits the allegations in Paragraph 11.

12.     Chairman Shotton admits the allegations in Paragraph 12.

13.     Chairman Shotton lacks sufficient knowledge to admit or deny the allegations of Paragraph 13 that Defendant David Bernhardt still serves in the capacity as the Secretary of the Interior and therefore denies them on that basis.

14.     Chairman lacks sufficient knowledge to admit or deny that Defendant Tara Katuk Mac Lean Sweeney still serves in the capacity of Assistant-Secretary of Indian Affairs. Chairman Shotton admits that the Bureau of Indian Affairs ("BIA") is an agency within the Department of the Interior.

15.     Chairman Shotton admits the allegations in Paragraph 15.

16.     Chairman Shotton admits the allegations in Paragraph 16.

17.     Chairman Shotton admits the allegations in Paragraph 17, except insofar as the Chairman Shotton denies the allegation that his first name is "James."

18.     Chairman Shotton lacks sufficient knowledge to admit or deny the allegations in Paragraph 18 and therefore denies them on that basis.

19.     Chairman Shotton lacks sufficient knowledge to admit or deny the allegations in Paragraph 19 and therefore denies them on that basis.

### III.    JURISDICTION AND VENUE

20.     Paragraph 20 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton admits that 28 U.S.C. § 1331 provides federal district courts with subject matter jurisdiction to adjudicate claims alleging a violation of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701 *et seq.*

21.     Paragraph 21 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton does not dispute the venue.

### IV.    FACT ALLEGATIONS

22.     Paragraph 22 purports to characterize or quote a legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 22.

23.     Paragraph 23 asserts legal conclusions and otherwise purports to characterize or quote a statute, to which no response is required, because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 23.

24.     Paragraph 24 asserts legal conclusions and otherwise purports to characterize or quote a statute, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 24.

25.     Paragraph 25 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 25.

26.     Paragraph 26 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks

for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 26.

27.     Paragraph 27 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 27.

28.     Paragraph 28 asserts legal conclusions and otherwise purports to characterize or quote a statute, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 28.

29.     Paragraph 29 asserts legal conclusions and otherwise purports to characterize or quote a statute or regulation, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 29.

30.      Paragraph 30 asserts legal conclusions and otherwise purports to characterize or quote a statute or regulation, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 30.

31.     Paragraph 31 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 31.

32.     Paragraph 32 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks

for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 32.

33.     Paragraph 33 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 33.

34.     Paragraph 34 asserts legal conclusions and otherwise purports to characterize or quote a statute, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 34.

35.     Paragraph 35 asserts legal conclusions and otherwise purports to characterize or quote a statute, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 35.

36.     Paragraph 36 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 36.

37.     Paragraph 37 asserts legal conclusions and otherwise purports to characterize or quote a statute, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 37.

38.     Paragraph 38 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 38.

39.      Paragraph 39 asserts legal conclusions and otherwise purports to characterize or quote a statute or regulation, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 39.

40.      Paragraph 40 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 40.

41.      Paragraph 41 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 41.

42.      Paragraph 42 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 42.

43.      Paragraph 43 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 43.

44.      Paragraph 44 asserts legal conclusions and otherwise purports to characterize or quote a regulation, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 44.

45.     Paragraph 45 asserts legal conclusions and otherwise purports to characterize or quote a statute, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 45.

46.     Paragraph 46 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 46.

47.     Paragraph 47 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 47.

48.     Paragraph 48 asserts legal conclusions and otherwise purports to characterize or quote a legal opinion, to which no response is required because that document speaks for itself. To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 48.

49.     Chairman Shotton lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 49, and such allegations are therefore denied.

50.     Chairman Shotton lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 50, and such allegations are therefore denied.

51.     Chairman Shotton lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 51, and such allegations are therefore denied.

52.     Paragraph 52 asserts legal conclusions and otherwise purports to characterize a statute, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 52.

53.     Paragraph 53 asserts legal conclusions and otherwise purports to characterize or quote a statute or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 53.

54.     Paragraph 54 asserts legal conclusions and otherwise purports to characterize or quote a statute, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 54.

55.     Paragraph 55 asserts legal conclusions and otherwise purports to characterize or quote a statute, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 55.

56.     Paragraph 56 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 56, and on that basis such allegations are denied..

57.     Chairman Shotton admits that the Otoe-Missouria Tribe accepted the State's offer as set forth in the Model Compact, and by doing so, entered into a compact (hereafter, the "Model Compact") with the State pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq*.  Chairman Shotton lacks sufficient knowledge to form a belief as to the allegations against the Comanche Nation and KTT, and on that basis, those allegations are denied.  Chairman Shotton otherwise denies the allegations in Paragraph 57.

58.     Chairman Shotton lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 58, and on that basis such allegations are denied.

59.     The allegations in Paragraph 59 consist of legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 59, and on that basis such allegations are denied.

60.     Paragraph 60 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 60 and on that basis such allegations are denied.

61.     The allegations in Paragraph 61 consist of legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 61, and on that basis such allegations are denied.

62.     Chairman Shotton admits the allegations contained in the first sentence of Paragraph 62.  The remainder of the allegations in Paragraph 62 purport to quote or characterize the "Comanche Approval Letter," which speaks for itself, and to which no response is required.  To the extent that such allegations mischaracterize or misquote the Comanche Approval Letter, such allegations are denied.

63.     Paragraph 63 asserts legal conclusions and otherwise purports to characterize or quote a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 63, and on that basis such allegations are denied.

64.     Paragraph 64 asserts of legal conclusions and otherwise purports to characterize a legal document, to which no response is required because that document speaks for itself.  To the

extent a response is required, Chairman Shotton lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 64, and on that basis such allegations are denied.

65.     Paragraph 65 asserts legal conclusions and otherwise purports to characterize a legal document, to which no response is required.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 65.

66.     Paragraph 66 asserts legal conclusions and otherwise purports to characterize a statute, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 66.

67.     Paragraph 67 consists of subjective characterizations of the gaming market in Oklahoma, to which no response is required.  The allegations in Paragraph 67 consist of legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 67.

68.     Paragraph 68 asserts legal conclusions and otherwise purports to characterize a statute, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 68.

69.     Paragraph 69 purports to characterize or quote a court filing and legal opinion, to which no response is required because the filings and opinions in that proceeding speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 69.

70.     Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 70, and on that basis such allegations are denied.

71.     Paragraph 71 asserts legal conclusions and otherwise purports to characterize or quote a statute, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 71.

72.     Paragraph 72 asserts legal conclusions and otherwise purports to characterize or quote a statute, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 72.

73.     To the extent Paragraph 73 purports to characterize a legal opinion, no response is required because that document speaks for itself.   To the extent a response is required, Chairman Shotton admits the allegations of Paragraph 73.

74.     To the extent Paragraph 74 purports to characterize a legal opinion, no response is required because that document speaks for itself.   To the extent a response is required, Chairman Shotton admits the allegations of Paragraph 74.

75.      Chairman Shotton lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 75, and such allegations are therefore denied. Chairman Shotton admits that Otoe-Missouria Tribe engaged in negotiations with Governor Stitt for a new compact.

76.     To the extent Paragraph 76 purports to characterize a press release or news article, no response is required because that document speaks for itself.   To the extent a response is required, Chairman Shotton admits that on April 21, 2020, the Otoe–Missouria Tribe announced that it had signed its new Compact ("Compact") with Governor Stitt.

77.     To the extent Paragraph 77 purports to characterize a court filing, no response is required because that document speaks for itself.  To the extent a response is required, Chairman

Shotton admits that additional information was not filed with the Court, as it was not required to be, nor was it ordered of the parties.

78.    Paragraph 78 purports to characterize a court filing, to which no response is required because that document speaks for itself.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 78.

79.    Paragraph 79 purports to quote or characterize a legal opinion, to which no response is required because that document speaks for itself.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 79.

80.    Paragraph 80 purports to characterize a letter, to which no response is required. because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 80.

81.    Chairman Shotton admits that on April 23, 2020, the Tribe submitted the Compact to the Secretary of the Interior for review under IGRA.  Chairman Shotton also admits that in submitting the Compact, the Tribe represented that the Compact was legally entered into and that the Tribe granted consent to the Secretary to review the Compact.  As to the Comanche Nation, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 81, and on that basis, such allegations are denied.

82.    Paragraph 82 purports to characterize a legal memorandum, to which no response is required because that document speaks for itself.   To the extent a response is required, Chairman Shotton admits that such a memorandum exists.

83.    Chairman Shotton admits that the Chickasaw Nation submitted comments to the Secretary.  Otherwise, Chairman Shotton lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 83, and on that basis, such allegations are denied.

84.     Paragraph 84 asserts legal conclusions and otherwise purports to quote or characterize documents, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 84.

85.     Paragraph 85 asserts legal conclusions and purports to characterize legal documents, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 85.

86.     Paragraph 86 asserts legal conclusions and otherwise purports to characterize legal documents, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 86

87.     Paragraph 87 asserts legal conclusions and otherwise purports to characterize a document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 87.

88.     Paragraph 88 asserts legal conclusions and otherwise purports to characterize a document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 88.

89.     Chairman Shotton admits that the Oklahoma Attorney General submitted comments to the Secretary.  Otherwise, Paragraph 89 asserts legal conclusions and purports to characterize a legal document, to which no response is required.

90.     Paragraph 90 asserts legal conclusions and otherwise purports to quote or characterize a legal document, to which no response is required because that document speaks

for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 90.

91.     Chairman Shotton admits that the President Pro Tempore of the Oklahoma Senate and the Speaker of the Oklahoma House of Representatives filed an action in the Oklahoma Supreme Court.  Otherwise, Paragraph 91 asserts legal conclusions and purports to characterize a legal action, to which no response is required.

92.     Chairman Shotton admits that the Defendant Secretary did not disapprove the Compact within the forty-five day period provided by 25 U.S.C. § 2710(d)(8)(C), and that the Compacts were thus deemed to have been approved.  Otherwise, Paragraph 92 asserts legal conclusions, to which no response is required.

93.     Chairman Shotton admits that the Compact was deemed approved by the Secretary of Interior and such approval was reflected through publication in the Federal Register. Otherwise, to the extent Paragraph 93 purports to quote or characterize the Federal Register, no response is required because that document speaks for itself.

94.     Paragraph 94 asserts legal conclusions and otherwise purports to characterize a statute and legal opinion, to which no response is required.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 94.

95.     Chairman Shotton lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 95, and therefore such allegations are denied.

96.     Paragraph 96 asserts legal conclusions and otherwise purports to characterize a legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 96.

97.     Paragraph 97 asserts legal conclusions and otherwise purports to characterize a legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 97.

98.     Paragraph 98 asserts legal conclusions and purports to characterize a media publication, to which no response is required.  To the extent a response is required, Chairman Shotton denies that the Oklahoma Supreme Court's decision in any way invalidates or otherwise legally compromises the validity and legality of the Tribe's Compact.

99.     Paragraph 99 purports to characterize the current posture of a legal proceeding, to which no response is required because the filings in that proceedings speak for themselves.  To the extent a response is required, Chairman Shotton lacks sufficient information to admit or deny the truth of the allegations of Paragraph 99, and on that basis such allegations are denied.

100.    Paragraph 100 asserts legal conclusions and purports to characterize legal filings, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 100.

101.    Chairman Shotton lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 101, and therefore such allegations are denied.

102.    Chairman Shotton lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 102, and therefore such allegations are denied.

103.    Chairman Shotton admits that the President Pro Tempore of the Oklahoma Senate and the Speaker of the Oklahoma House of Representatives filed an action in the Oklahoma Supreme Court.  Otherwise, Paragraph 103 asserts legal conclusions and purports to characterize a legal proceeding, to which no response is required.  To the extent a response is required, Chairman Shotton denies the remaining allegations of Paragraph 103.

104.    Paragraph 104 purports to characterize the posture of a legal proceeding, to which no response is required, as the filings in that proceeding speak for themselves.   To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information as to the truth of the allegations in Paragraph 104, and on that basis such allegations are denied.

105.    Chairman Shotton lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 105, and therefore such allegations are denied.

106.    Paragraph 106 asserts legal conclusions and otherwise purports to characterize a publication in the Federal Register, to which no response is required because that document speaks for itself.   To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 106, and therefore such allegations are denied.

107.    The allegations in Paragraph 107 consist of legal conclusions and subjective characterizations, to which no response is required.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 107.

108.    The allegations in Paragraph 108 consist of legal conclusions and subjective characterizations, to which no response is required.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 108.

109.    The allegations in Paragraph 109 consist of legal conclusions and subjective characterizations, to which no response is required.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 109.

110.    Paragraph 110 asserts legal conclusions and otherwise purports to quote or characterize a statute and legal opinion, to which no response is required.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 110.

18

111.    Paragraph 111 asserts legal conclusions and otherwise purports to characterize a statute, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 111.

112.    Chairman Shotton admits that the Tribe's Compact was submitted to the Secretary of Interior for approval on or around April 23, 2020.  The remaining allegations in Paragraph 112 consist of legal conclusions, to which no response is required.   To the extent a response is required, Chairman Shotton denies the remaining allegations of Paragraph 112.

113.    Paragraph 113 asserts legal conclusions and otherwise purports to quote and characterize the Oklahoma Constitution, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 113.

114.    Paragraph 114 asserts legal conclusions and otherwise purports to quote or characterize the Oklahoma Constitution and legal opinions, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 114.

115.    Paragraph 115 asserts legal conclusions and otherwise purports to characterize the Oklahoma Constitution, to which no response is required because that document speaks for itself.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 115.

116.    Paragraph 116 asserts legal conclusions and otherwise purports to quote or characterize the Oklahoma Constitution and various statutes, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 116.

117.    Paragraph 117 asserts legal conclusions and otherwise purports to quote or characterize a statute, to which no response is required because that document speaks for itself. To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 117.

118.    Paragraph 118 asserts legal conclusions and otherwise purports to quote or characterize a statute and legal opinion, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 118.

119.    Paragraph 119 asserts legal conclusions and otherwise purports to characterize a legal opinion, to which no response is required because those documents speak for themselves. To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 119.

120.    Paragraph 120 asserts legal conclusions and otherwise purports to quote or characterize a statute, to which no response is required because that document speaks for itself. To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 120.

121.    Paragraph 121 asserts legal conclusions and otherwise purports to characterize a legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 121.

122.    Chairman Shotton admits that the Tribe's Compact does not "recite" all of the "terms offered in the Model Compact," but Chairman Shotton denies any implication that such differences make the Compact invalid.  Otherwise, Chairman Shotton denies the allegations of Paragraph 122.

123.    Paragraph 123 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 123.

124.    Paragraph 124 asserts legal conclusions and otherwise purports to quote or characterize a statute and regulation, to which no response is required because those documents speak for themselves.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 124.

125.    Paragraph 125 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 125.

126.    Paragraph 126 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 126.

127.    Paragraph 127 asserts legal conclusions and otherwise purports to quote or characterize a statute and legal opinion, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 127.

128.    Paragraph 128 asserts legal conclusions and otherwise purports to quote or characterize statutes, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 128.

129.    Paragraph 129 asserts legal conclusions and otherwise purports to quote or characterize a legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits that the Otoe–Missouria Tribe will pay less money in exclusivity payments under its current Compact as compared to its former compact.  Otherwise, Chairman Shotton denies the allegations of Paragraph 129.

130.    The allegations in Paragraph 130 consist of legal conclusions, to which no response is required.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 130.

131.    Paragraph 131 asserts legal conclusions and otherwise purports to quote or characterize a statute, to which no response is required because that document speaks for itself. To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 131.

132.    Paragraph 132 asserts legal conclusions and otherwise purports to characterize a statute, to which no response is required because that document speaks for itself. To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 132.

133.    Paragraph 133 asserts legal conclusions and otherwise purports to characterize a statute and legal opinion, to which no response is required because that document speaks for itself.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 133.

134.    Paragraph 134 asserts legal conclusions and otherwise purports to quote or characterize a statute, to which no response is required because that document speaks for itself. To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 134.

135.    Paragraph 135 purports to quote or characterize the Compact, to which no response is required because that document speaks for itself.   To the extent a response is required, Chairman Shotton admits that Part 2.A.6 of the Compact contains the language quoted in Paragraph 135 and that each category of gaming activity mentioned in Part 2.A.6 is specifically defined elsewhere in the Compact.

136.    Paragraph 136 purports to quote or characterize the Compact, to which no response is required because that document speaks for itself.   To the extent a response is

required, Chairman Shotton admits that Part 2.A.12 of the Compact contains the language quoted in Paragraph 136.

137.   Paragraph 137 purports to quote or characterize the Compact, to which no response is required because that document speaks for itself.   To the extent a response is required, Chairman Shotton admits that Part 2.A.37 and Part 2.A.9 of the Compact contain the language quoted in Paragraph 137.

138.   Chairman Shotton admits that the Compact's definition of "Event Wagering" "means the placing of a wager on the outcome of a Sport event, including E-Sports, or any other events, to the extent such wagers are authorized by law."  Otherwise, Paragraph 138 asserts legal conclusions and purports to quote and characterize a statute, to which no response is required. To the extent a response is required, Chairman Shotton denies the remaining allegations.

139.   Paragraph 139 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 139.

140.   Paragraph 140 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 140.

141.   Paragraph 141 purports to quote or characterize the Compact, to which no response is required because that document speaks for itself.  To the extent that a response is required, Chairman Shotton admits that the Compact contains the language quoted in Paragraph 141 but otherwise denies the allegations of Paragraph 141.

142.   Paragraph 142 asserts legal conclusions and otherwise purports to characterize a statute, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 142.

143.    Paragraph 143 purports to quote or characterize the Compact, to which no response is required because that document speaks for itself.  To the extent that a response is required, Chairman Shotton admits that Part 2.A.20 of the Compact contains the language quoted in Paragraph 143.

144.    Paragraph 144 purports to quote or characterize the Compact, to which no response is required because that document speaks for itself.  To the extent that a response is required, Chairman Shotton admits that Part 2.A.21 of the Compact contains the language quoted in Paragraph 144.

145.    Paragraph 145 asserts legal conclusions and otherwise purports to characterize a statute, to which no response is required, as that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 145.

146.    Paragraph 146 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 146.

147.    Paragraph 147 purports to quote or characterize the Compact, to which no response is required because that document speaks for itself.  To the extent that a response is required, Chairman Shotton admits that Part 3.F of the Tribe's Compact contains the language quoted in Paragraph 147.  Otherwise, Chairman Shotton denies the allegations of Paragraph 147.

148.    Paragraph 148 asserts legal conclusions and otherwise purports to characterize a statute, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 148.

149.    Paragraph 149 asserts legal conclusions and otherwise purports to quote or characterize a regulation, to which no response is required because that document speaks for

itself.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 149.

150.   Paragraph 150 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 150.

151.   Paragraph 151 consist of legal conclusions, to which no response is required.  To the extent Paragraph 151 purports to quote or characterize a media article, no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 151.

152.   Paragraph 152 asserts legal conclusions and otherwise purports to quote or characterize a statue or legal opinion, to which no response is required because those documents speak for themselves.   To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 152.

153.   Paragraph 153 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 153.

154.   Paragraph 154 asserts legal conclusions and otherwise purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits that the Tribe's prior compact included the language cited in Paragraph 154.

155.   Paragraph 155 asserts legal conclusions and otherwise purports to characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits only that the Compact modifies the formula for exclusivity payments to the State but otherwise denies the remaining allegations of Paragraph 155.

156.    Paragraph 156 asserts legal conclusions and otherwise purports to characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits only that Part 10.A of the Compact includes the language quoted in Paragraph 156 but otherwise denies the remaining allegations of Paragraph 156.

157.    Paragraph 157 asserts legal conclusions, to which no response is required To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 157.

158.    Paragraph 158 asserts legal conclusions and otherwise purports to characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits only that Parts 3.B and 2.A.23 of the Compact contain the language quoted in Paragraph 158 but otherwise denies the allegations of Paragraph 158.

159.    Paragraph 159 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 159.

160.    Paragraph 160 asserts legal conclusions and otherwise purports to characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits only that Part 10.B of the Compact includes the language quoted in Paragraph 160 but otherwise denies the remaining allegations of Paragraph 160.

161.    Paragraph 161 asserts legal conclusions and otherwise purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits that Part 10.B.1 of the Tribe's Compact provides methods for determining the amount of exclusivity fees to be paid

from Adjusted Net Win, that the definition of Adjusted Net Win includes the language quoted in Paragraph 161, and that the calculation of Adjusted Net Win allows for deduction of certain third-party vendor fees, Free Play and Point Play, and the cost of an Annual Oversight Assessment.  Chairman Shotton otherwise denies the allegations of Paragraph 161.

162.    Paragraph 162 asserts legal conclusions and otherwise purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits that the Compact provides for exclusivity fees of 4.5% of Adjusted Net Win for existing facilities, with that amount subject to rising to 6% if certain conditions are met.  Chairman Shotton otherwise denies the allegations of Paragraph 162.

163.    Paragraph 163 consists of subjective characterizations, to which no response is required.  To the extent a response is required, Chairman Shotton admits that the Tribe will pay less in substantial exclusivity fees as compared to its former compact.  Chairman Shotton lacks sufficient knowledge or information to form a belief as to the truth of the allegations relating to the Comanche Nation, and on that basis, such allegations are denied.

164.    Paragraph 164 asserts purports to quote or characterize a legal document, to which no response is required.  To the extent a response is required, Chairman Shotton admits that that Part 10.B.1.b of the Compact contains the language quoted in Paragraph 164.

165.    Paragraph 165 asserts legal conclusions and otherwise purports to quote or characterize a statute, to which no response is required because that document speaks for itself. To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 165.

166.    Paragraph 166 asserts legal conclusions and purports to quote or characterize a statute, to which no response is required because that document speaks for itself.  To the extent a

response is required, Chairman Shotton admits that Part 10.B.2.a of the Compact contains the language quoted in Paragraph 166 but otherwise denies the remaining allegations of Paragraph 166.

167.    Chairman Shotton denies the allegations of Paragraph 167 as they relate specifically to the Compact.

168.    Paragraph 168 asserts legal conclusions and purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 168, and such allegations are therefore denied.

169.    Chairman Shotton admits that Oklahoma City is the capital of the State and located in Oklahoma County.  Otherwise, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 169, and such allegations are therefore denied.

170.    Paragraph 170 asserts legal conclusions and purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 170, and such allegations are therefore denied.

171.    Paragraph 171 asserts legal conclusions and purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 171, and such allegations are therefore denied.

172.    Paragraph 172 asserts legal conclusions and purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the

extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 172, and such allegations are therefore denied.

173.    Paragraph 173 asserts legal conclusions and purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 173, and such allegations are therefore denied.

174.    Paragraph 174 asserts legal conclusions and purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 174, and such allegations are therefore denied.

175.    Paragraph 175 asserts legal conclusions and purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 175, and such allegations are therefore denied.

176.    Paragraph 176 asserts legal conclusions and purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits only that the Compact includes the language quoted in Paragraph 176 but otherwise denies the remaining allegations of Paragraph 176.

177.    Paragraph 177 asserts legal conclusions and purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits only that the Compact includes the

language quoted in Paragraph 177 but otherwise denies the remaining allegations of Paragraph 177.

178.    Paragraph 178 asserts legal conclusions and purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits only that the Compact includes the language quoted in Paragraph 178 but otherwise denies the remaining allegations of Paragraph 178.

179.    Paragraph 179 asserts legal conclusions and purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits only that the Compact includes the language quoted in Paragraph 179 but otherwise denies the remaining allegations of Paragraph 179.

180.    Paragraph 180 asserts legal conclusions and otherwise purports to quote or characterize a legal document or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits only that the Compact includes the language quoted in Paragraph 180 but otherwise denies the remaining allegations of Paragraph 180.

181.    Paragraph 181 asserts legal conclusions and otherwise purports to quote or characterize a statute, to which no response is required because that document speaks for itself. To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 181.

182.    Paragraph 182 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 182.

183.    Paragraph 183 asserts legal conclusions and otherwise purports to quote or characterize a legal document or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits the allegations of Paragraph 183 as they relate specifically to the Compact.

184.    Paragraph 184 asserts legal conclusions, to which no response is required. To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 184.

185.    Paragraph 185 asserts legal conclusions and otherwise purports to quote or characterize legal opinions, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 185.

186.    Paragraph 186 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 186.

187.    Paragraph 187 legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 187.

188.    Paragraph 188 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 188.

189.    Paragraph 189 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 189.

190.    Paragraph 190 asserts legal conclusions and otherwise purports to quote or characterize a legal document or legal opinion, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton admits that the Compact contains the language quoted in Paragraph 190.

191.    Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 191, and such allegations therefore are denied.

192.    Paragraph 192 asserts legal conclusions and otherwise purports to quote or characterize a statute and legal opinion, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 192.

193.    Paragraph 193 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 193.

194.    Paragraph 194 asserts legal conclusions and otherwise purports to quote or characterize a legal document to which no response is required because that document speaks for themselves.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 194, and such allegations therefore are denied.

195.    Paragraph 195 asserts legal conclusions and otherwise purports to quote or characterize a legal document to which no response is required because that document speaks for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 195 as they relate to the Tribe's Compact.  As the allegations relate to other compacts, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 195, and such allegations therefore are denied.

196.    Paragraph 196 asserts legal conclusions and purports to quote or characterize a legal document, to which no response is required because the document speaks for itself.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 196.

197.    Paragraph 197 asserts legal conclusions and purports to quote or characterize a legal document, to which no response is required because the document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 197, and such allegations therefore are denied.

198.    Paragraph 198 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 198.

199.    Paragraph 199 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 199.

200.    Paragraph 200 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 200.

201.    Paragraph 201 asserts legal conclusions and otherwise purports to quote or characterize a statute and regulations, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 201.

202.    Paragraph 202 asserts legal conclusions and otherwise purports to quote or characterize a statute and regulations, to which no response is required because those documents speaks for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 202.

203.    Paragraph 203 asserts legal conclusions and otherwise purports to quote or characterize a statute and regulations, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 203.

204.     Paragraph 204 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 204.

205.     Paragraph 205 purports to quote or characterize a legal document, to which no response is required because the document speaks for itself.  To the extent a response is required, Chairman Shotton admits that Part 4.J.2 of the Tribe's Compact contains the language quoted in Paragraph 205.  Otherwise, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 205, and on that basis such allegations are denied.

206.     Paragraph 206 asserts legal conclusions and otherwise purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 206.

207.     Paragraph 207 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 207.

208.     Paragraph 208 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 208.

209.     Paragraph 209 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 209.

210.     Paragraph 210 asserts legal conclusions and otherwise purports to quote or characterize a legal document, to which no response is required because that document speaks

34

for itself.  To the extent a response is required, Chairman Shotton admits only that "New Facilities" under its Compact may be located "within one (1) mile of a state or federal highway or turnpike running through" Logan, Noble, and Payne Counties.  Otherwise, Chairman Shotton denies the allegations of Paragraph 210.

211.    Paragraph 211 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 211.

212.    Paragraph 212 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 212.

213.    Paragraph 213 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 213.

214.    Chairman Shotton admits the that the Tribe has not obtained consent from the Chickasaw Nation, the Citizen Potawatomi Nation, any other tribe to acquire land in trust within that tribe's reservation or former reservation in Oklahoma.  As to the allegations regarding the Comanche Nation, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 214, and on that basis such allegations are denied.

215.    Paragraph 215 asserts legal conclusions and otherwise purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 215, and such allegations therefore are denied.

216.    Paragraph 216 asserts legal conclusions and otherwise purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or

information to form a belief as to the allegations in Paragraph 216, and such allegations therefore are denied.

217.    Paragraph 217 asserts legal conclusions and otherwise purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 217, and such allegations therefore are denied.

218.    Paragraph 218 asserts legal conclusions and otherwise purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 218, and such allegations therefore are denied.

219.    Paragraph 219 asserts legal conclusions and otherwise purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 219, and such allegations therefore are denied.

220.    Paragraph 220 asserts legal conclusions and otherwise purports to quote or characterize a legal document, to which no response is required because that document speaks for itself.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 220, and such allegations therefore are denied.

221.    Paragraph 221 asserts legal conclusions and otherwise purports to quote or characterize regulations, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 221.

222.    Paragraph 222 asserts legal conclusions and otherwise purports to characterize the Oklahoma Constitution, statutes, or case law, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 222.

223.    Paragraph 223 asserts legal conclusions and otherwise purports to quote or characterize statutes, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 223.

224.    Paragraph 224 consist of legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 224, and such allegations therefore are denied.

225.    Paragraph 225 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 225.

226.    Paragraph 226 asserts legal conclusions and otherwise purports to quote or characterize statutes and case law, to which no response is required because those documents speak for themselves.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 226.

227.    Paragraph 227 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 227.

228.     Paragraph 228 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 228, and such allegations therefore are denied.

229.     Paragraph 229 asserts legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 229.

230.     The allegations in Paragraph 230 consist of legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 230.

231.     The allegations in Paragraph 231 consist of legal conclusions, to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 231.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:

232.     Chairman Shotton re-alleges and incorporates by reference each and every response of this Answer as though fully set forth herein.

233.     Paragraph 233 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 233.

234.     Paragraph 234 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 234.

235.     Paragraph 235 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 235.

## SECOND CAUSE OF ACTION:

236.    Chairman Shotton re-alleges and incorporates by reference each and every response of this Answer as though fully set forth herein.

237.    Paragraph 237 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 237.

238.    Paragraph 238 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 238.

239.    Paragraph 239 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 239.

240.    Paragraph 240 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 240.

## THIRD CAUSE OF ACTION:

241.    Chairman Shotton re-alleges and incorporates by reference each and every response of this Answer as though fully set forth herein.

242.    Paragraph 242 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 242.

243.    Paragraph 243 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 243.

244.    Paragraph 244 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 244.

## FOURTH CAUSE OF ACTION:

245.    Chairman Shotton re-alleges and incorporates by reference each and every response of this Answer as though fully set forth herein.

246.     Paragraph 246 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 246.

247.     Paragraph 247 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 247.

248.     Paragraph 248 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 248.

249.     Paragraph 249 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 249.

250.     Paragraph 250 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 250.

## FIFTH CAUSE OF ACTION:

251.     Chairman Shotton re-alleges and incorporates by reference each and every response of this Answer as though fully set forth herein.

252.     Paragraph 252 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 252.

253.     Paragraph 253 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 253.

254.     Paragraph 254 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 254.

255.     Paragraph 255 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 255.

256.     Paragraph 256 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 256.

**SIXTH CAUSE OF ACTION:**

257.    Chairman Shotton re-alleges and incorporates by reference each and every response of this Answer as though fully set forth herein.

258.    Paragraph 258 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 258.

259.    Paragraph 259 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 259.

260.    Paragraph 260 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 260.

261.    Paragraph 261 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 261.

**SEVENTH CAUSE OF ACTION:**

262.    Chairman Shotton re-alleges and incorporates by reference each and every response of this Answer as though fully set forth herein.

263.    Paragraph 263 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 263.

264.    Paragraph 264 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 264.

265.    Paragraph 265 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 265.

**EIGHTH CAUSE OF ACTION:**

266.    Chairman Shotton re-alleges and incorporates by reference each and every response of this Answer as though fully set forth herein.

267.     Paragraph 267 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 267.

268.     Paragraph 268 asserts legal conclusions to which no response is required.  To the extent a response is required, Chairman Shotton denies the allegations of Paragraph 268.

**PRAYER FOR RELIEF**

Plaintiffs' "PRAYER FOR RELIEF" does not contain allegations to which a response is required. To the extent a response is required, Chairman Shotton denies that Plaintiffs are entitled to any relief and, on that basis, denies any and all allegations in the "PRAYER FOR RELIEF."

To the extent an allegation anywhere in Plaintiffs' Amended Complaint is not expressly admitted above, Chairman Shotton denies the allegation.

**AFFIRMATIVE DEFENSES**

Chairman Shotton sets forth the following affirmative and other defenses.  Chairman Shotton does not intend to assume the burden of proof with respect to those matters as to which, pursuant to law, Plaintiffs bear the burden.  Chairman Shotton reserves the right to assert any and all defenses allowable by law and/or that may become available.  By listing certain defenses herein, Chairman Shotton does not waive any other defenses that may apply.

1.     The Amended Complaint and each and every alleged cause of action therein fail to state facts sufficient to constitute a claim upon which relief can be granted.

2.     Plaintiffs' claims fail to join an indispensable party.

3.     Claims against Chairman Shotton are barred by tribal sovereign immunity and/or qualified immunity.

4.      Plaintiffs' claims are barred, in whole or in part, because Chairman Shotton's conduct was in good faith at all times.

5.      Plaintiffs' claims are barred, in whole or in part, because the alleged injuries or damage alleged in the Amended Complaint, if any, were caused wholly or in part by the conduct, acts, omissions, and/or fault of third parties other than Chairman Shotton.

6.      Plaintiffs' claims are barred, in whole or in part, because of the doctrine of unclean hands.

7.      Plaintiffs would be substantially and unjustly enriched if allowed to recover on the Amended Complaint.

8.      The relief that Plaintiffs seek in voiding the entire Compact is impermissible.  The severability clause in the Compact permits this Court to sever any invalid provisions from the Compact.

9.      Plaintiffs' claims are barred by the doctrine of laches.

10.     Plaintiffs' are estopped from asserting claims against Chairman Shotton.

11.     Plaintiffs lack standing to bring their claims, in whole or in part.

12.     Plaintiffs have failed to allege sufficient facts to support a claim for attorneys' fees or costs.

13.     Chairman Shotton hereby incorporates by reference and realleges, as if set forth in full, all other affirmative defenses raised by other defendants.

## ADDITIONAL DEFENSES

Chairman Shotton does not presently know all facts respecting the allegations by, and conduct of, Plaintiffs sufficient to state all affirmative defenses at this time. Accordingly, Chairman Shotton reserves the right to amend this Answer or otherwise assert additional

affirmative defenses should he later discover facts demonstrating the existence of additional affirmative defenses and hereby gives notice that he intends to rely upon such other defenses as may become available or appear during discovery proceedings in this case.

WHEREFORE, Chairman Shotton respectfully requests that this Court (1) enter judgment in his favor, (2) dismiss Plaintiffs' Amended Complaint in its entirety, with prejudice, (3) award Chairman Shotton reasonable costs and expenses including, but not limited to, attorneys' fees and costs of suit; and (4) award such other relief as may be appropriate.

## DEFENDANT/COUNTERPLAINTIFF CHAIRMAN JOHN R. SHOTTON'S COUNTERCLAIM AGAINST PLAINTIFFS

Chairman Shotton, for his Counterclaims, states as follows:

### I.      NATURE OF THE COUNTERCLAIMS

1.      Chairman Shotton seeks a judicial declaration that the Compact was validly entered into and is in full compliance with the IGRA.

2.      The Plaintiffs have disrupted and continue to disrupt the Tribe's ability to exercise its right under federal law to engage in lawful gaming under its Compact.  Their conduct has caused immediate and ongoing injuries to the Tribe's rights, as it destabilizes the Tribe's gaming operations and threatens to deprive the Tribe of its right to engage in Class III gaming entirely.

3.      To protect the Tribe's federally guaranteed right to engage in lawful gaming under its Compact, the Tribe seeks a declaratory judgment that its Compact is valid.

### II.      PARTIES

4.      Defendant/Counterplaintiff John R. Shotton is the elected Chairman of the Otoe–Missouria Tribe, serving in his official capacity.

5.      Plaintiff/Counterclaim Defendant the Cherokee Nation is a federally recognized Indian tribe.

44

6.      Plaintiff/Counterclaim Defendant the Chickasaw Nation is a federally recognized Indian tribe.

7.      Plaintiff/Counterclaim Defendant the Choctaw Nation is a federally recognized Indian tribe.

8.      Plaintiff/Counterclaim Defendant the Citizen Potawatomi Nation is a federally recognized Indian tribe.

### III.      JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1362.

10.     This Court has jurisdiction to grant the declaratory relief requested in this action under the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202.

11.     Venue is proper in this district under 28 U.S.C. § 1391(e), as a substantial part of the events giving rise to the claim occurred within this district, and as this Court has recently confirmed. *See* Minute Order (Dec. 28, 2020).

### IV.      FACTUAL ALLEGATIONS

#### A.  *The Tribe's Gaming Operations and the Indian Gaming Industry in Oklahoma*

12.     The Tribe is a federally recognized Indian tribe located in northern Oklahoma.

13.     Historically and to the present day, the Tribe faces severe economic hardships. The unemployment rate is high among tribal membership.  Approximately 40% of the Tribe's enrolled members live below the federal poverty line.  The tribal community also struggles with substance abuse issues.

14.     The Tribe owns and operates several casinos in the State of Oklahoma ("State").

15.     The Tribe's casinos provide an important source of governmental revenue, and they provide numerous jobs for their local communities.

16.     However, gaming revenues, in their current amounts (and even before the coronavirus pandemic), are insufficient to fund essential government programs.

17.     Because of its rural location, the Tribe is unable to attract a meaningful customer base to its casinos.

18.     Meanwhile, the Plaintiffs are among the largest gaming operators in the State.

19.     In particular, Plaintiff Chickasaw Nation, measured by revenue, is the largest gaming tribe in the State.

20.     In the thirty-plus years since IGRA was enacted, the Chickasaw Nation has expanded its gaming operations significantly.  The Chickasaw Nation now owns over twenty (20) casinos that offer Class III gaming.

21.     In addition to its casinos that offer Class III gaming, the Chickasaw Nation also owns various facilities that offer exclusively Class II gaming.

22.     Among its more prominent facilities, Chickasaw Nation owns the WinStar World Casino and Resort, which often advertises itself as "the World's Biggest Casino."  Indeed, WinStar's gaming floor is almost four hundred thousand (400,000) square feet, with over eight thousand (8,000) electronic gaming machines, one hundred (100) table games, bingo, and other amenities.

23.     The Chickasaw Nation, through a wholly-owned subsidiary, also holds one of only two "organization licenses" in the State.  This means that the Chickasaw Nation, through that subsidiary, is able to own a state-regulated facility, *off* tribal land, that offers electronic gaming of the kind offered in tribal casinos across the State.  Okla. Stat. tit. 3A § 262.

24.     Pursuant to the organization license, the Chickasaw subsidiary owns one of the State's two "racinos"—Remington Park.  Remington Park offers live horse racing, pari-mutuel

46

wagering, and around seven-hundred and fifty (750) electronic gaming machines.  It has billed itself as "Oklahoma City's only casino."

25.     Despite already owning nearly two-dozen facilities—including, through its subsidiary, the only casino in Oklahoma City—the Chickasaw Nation's gaming business continues to expand.  For example, on January 19, 2017, one (1) day before President Barack Obama left office, the United States accepted a parcel of land into trust in Terral, Oklahoma, clearing the way for the Chickasaw Nation to build a casino known as RiverStar, which opened in or around March 2018.  The following year, in July 2019, the Chickasaw Nation opened yet another casino facility—the MegaStar Casino—located near the tourist destination of Lake Texoma, in Willis, Oklahoma.

26.     As their annual progress report indicates, the Chickasaw Nation's net assets for fiscal year 2019 exceeded $3.3 billion.

27.     Plaintiff Cherokee Nation is another highly successful gaming tribe.

28.     The Cherokee Nation owns at least twelve (12) casinos that offer Class III gaming, including the highly profitable Hard Rock Hotel & Casino in Tulsa.  As of fiscal year 2019, the Cherokee Nation held around $1.4 billion in net assets.  Like the Chickasaw Nation, the Cherokee Nation, through a subsidiary, also holds an "organization license."  This license allows the Cherokee Nation (through its subsidiary) to own the State's other racino—Will Rogers Downs, in Claremore, Oklahoma.  Will Rogers Downs, like Remington Park, is a state-regulated facility that offers live horse racing, pari-mutuel wagering, and electronic gaming.

29.     The Choctaw Nation is yet another billion-dollar tribe, owning around twenty-two (22) Class III casinos, including one of the largest casino's in southern Oklahoma, the Choctaw Casino & Resort – Durant, located just a few minutes north of the Oklahoma–Texas border.  The

Durant facility hosts over four thousand (4,000) gaming machines, with additional table games, a poker room, and other sources of gaming revenue.

30.     For its part, the Citizen Potawatomi Nation also has a highly successful gaming operation.  Though it owns less facilities than the other Plaintiffs, it has casinos in some highly desirable geographic locations.  One of these facilities is the Grand Casino Hotel and Resort, located just around thirty (30) minutes from downtown Oklahoma City, Oklahoma.  The Grand Casino Hotel and Resort offers around two-thousand (2,000) Vegas-style slot machines and other gaming amenities across a 125,000 square foot gaming floor.  A substantial part of the facility's customer base is from Oklahoma City.

31.     The Tribe does not begrudge any other sovereign nation's success; it simply wishes to develop its own economy and improve the well-being of its members pursuant to its inherent sovereign authority and within the confines of the law.  In an effort to achieve its long-term economic goals, the Tribe seeks to increase its profit from gaming revenues.

### B.  Compact Litigation and the Tribe's Negotiations

32.     The Tribe's former compact, which substantially mirrors that of most other Oklahoma tribes, provided for an initial term of fifteen (15) years.  It was based on the "Model Compact" codified in Oklahoma's State-Tribal Gaming Act, Okla. Stat. tit. 3A §§ 261–82.

33.     The Tribe entered into its former compact—that is, the Model Compact—with the State of Oklahoma on or around June 23, 2005.  That compact included a renewal provision which stated as follows:

> This Compact shall have a term which will expire on January 1, 2020, and at that time, if organization licensees or others are authorized to conduct electronic gaming in any form other than pari-mutuel wagering on live horse racing pursuant to any governmental action of the State or court order following the effective date of this Compact, the Compact shall automatically renew for a successive additional fifteen-year terms; provided that, within one hundred eighty (180) days

of the expiration of this Compact or any renewal thereof, either the Tribe or the State, acting through its Governor, may request to renegotiate the terms of subsections A and E of Part 11 of this Compact.

34.     Throughout 2019, leading up to the end of the initial fifteen (15) year period, multiple tribes in Oklahoma met and conferred as to the future of Indian gaming in Oklahoma post-2019.  Discussions focused largely on the issue of renewal.

35.     Intertribal discussions regarding renewal of the Model Compact, and potential negotiations with the State, were often convened through a trade organization known as the Oklahoma Indian Gaming Association ("OIGA").

36.     Concurrent with the strategy sessions held through OIGA, there was also a media campaign called "United for Oklahoma."  United for Oklahoma published numerous television, newspaper, and online advertisements all advocating the position that the Model Compact automatically renewed.

37.     The Plaintiffs wield substantial influence over OIGA and United for Oklahoma.

38.     Through the latter part of 2019, strategy discussions continued at regular monthly meetings of the OIGA membership.  At none of these meetings did any of the Plaintiff Nations signal an intent to bring a lawsuit regarding compact renewal.

39.     On December 28, 2019, OIGA sent each member tribe an email informing them that OIGA would be holding a conference call on December 31, 2019, at 10:30 am, central standard time.  There was no mention of any specific agenda for the conference call.

40.     The OIGA conference call took place as scheduled on December 31, 2019. During the call, Plaintiffs the Cherokee, Chickasaw, and Choctaw Nations informed OIGA membership that they had just filed a lawsuit in the U.S. District Court for the Western District of Oklahoma against Governor Stitt in his official capacity as the Governor of Oklahoma,

seeking a declaratory judgment that their compacts would automatically renew on January 1, 2020.

41.    Shortly after the call ended, OIGA distributed copies of the legal filings to the other member tribes.

42.    The Plaintiffs did not previously inform any the OIGA membership—or at least, the vast majority thereof—that they were contemplating filing the lawsuit.  Indeed, the Tribe was at no point made aware of the Cherokee, Chickasaw, and Choctaw Nations' intent to sue Governor Stitt.

43.    On February 10, 2020, the U.S. District Court for the Western District of Oklahoma issued an order that the parties engage in confidential mediation.

44.    Following the issuance of this order, the Tribe became concerned that its interests would not be represented during negotiations.  As a result, the Tribe intervened in the case.

45.    While mediation was pending, the Tribe began discussions with the Governor regarding a future compact.  The other tribes that were a party to the case were aware that the Tribe had entered into such conversations.

46.    Although the Tribe firmly believed—and still believes—that its then-compact would have automatically renewed, that compact was not designed with the best interests of the Otoe-Missouria people in mind.

47.    In entering into conversations with the Governor regarding a new compact, the Tribe thus endeavored to exercise a core aspect of tribal sovereignty—the ability to negotiate with other sovereigns on a government-to-government basis to further the well-being of its members.

48.     All negotiations with the Governor were conducted in good faith and with the intent to secure a legal and binding compact that would serve the best interests of the Tribe and its members going forward.

### C. The Tribe's Compact

49.     Nothing in IGRA requires that every federally recognized tribe adopt the same compact terms as other tribes—even tribes in the same state.  Nor does IGRA require that tribes engage in compact negotiations collectively with other tribes in their state.  The Tribe's Compact differs from the "Model Compact" in a variety of ways.

50.     While the Model Compact's exact language was codified in state legislation as a template gaming compact, the Tribe's Compact was drafted over the course of negotiations with the Governor, while still remaining consistent with the STGA.  Under Oklahoma law, the Governor of the State "has been and continues to be the party responsible for negotiating compacts with the sovereign nations of this state."  *Sheffer v. Buffalo Run Casino*, 315 P.3d 359, 364 & n.18 (Okla. 2013) (citing Article VI, § 8 of the Oklahoma Constitution).

51.     In recognizing the Governor's negotiation authority, the Attorney General of the State of Oklahoma has stated in an official AG Opinion that "any requirement that individual agreements or compacts negotiated by the Governor on behalf of the State with other sovereigns, such as Indian tribes, be approved by the Legislature would violate the principles of separation of powers."  Attorney General Opinion 2004-27, ¶27.

52.     The Tribe's Compact also differs from the Model Compact in that it provides certain specific parameters for forms of gaming that are not yet legal under Oklahoma law, but could be legal in the future.  While the Model Compact does address not-yet-legal games to the extent it allows for the possibility of broadening the scope of "covered games," the Tribe's

Compact provides some specificity as to certain types of gaming that might someday be authorized by state law.

53.     The Tribe's Compact contains a provision relating to "Event Wagering."  It defines Event Wagering to mean "the placing of a wager on the outcome of a Sport event, including E-Sports, or any other events, *to the extent such wagers are authorized by law*, subject to the following terms and conditions." Compact, Part 2.A.12 (emphasis added).

54.     "Event Wagering," as defined in the Compact, is thus permitted "to the extent authorized by law."  Under Oklahoma law, sports betting and similar activities are generally *not* "authorized by law."

55.     If, at some point in the future, sports betting activity of the kind referenced in the Compact is eventually "authorized by law" under Oklahoma law, then the Tribe's Compact will permit the Tribe to engage in such gaming activity, subject to various terms and conditions.

56.     The Tribe's Compact also contains provisions relating to "house-banked" games.

57.     "House-banked" games, under the Compact, are included as a "Covered Game" under the Compact, but only if, among other conditions, "such game has been approved by the [State Compliance Agency]."  Compact, Part 2.A.6.

58.     The State Compliance Agency cannot approve any game that is not authorized under Oklahoma law.

59.     The Tribe has not conducted any form of gaming that is not authorized under Oklahoma law, and has no plans to do so unless and until such forms of gaming are in fact authorized under Oklahoma law.

60.     Although the Tribe's Compact refers to forms of gaming that are not yet authorized under Oklahoma law, it is not unprecedented for the Secretary of the Interior

("Secretary") to approve a tribal–state compact that include provisions relating to forms of gaming that have not yet been legalized under state law.  For just one example, the Mashpee Wampanoag Tribe's compact includes provisions relating to Internet gaming, though Internet gaming is not permitted under Massachusetts law.  *See* Compact Between the State of Massachusetts and the Mashpee Wampanoag Tribe, § 4.3.2.

61.   The Tribe's Compact provides that the Tribe shall pay the State certain revenue-sharing fees known as "Substantial Exclusivity Fees" in exchange for the State providing the Tribe with substantial exclusivity over class III Covered Gaming.  Compact, Part 10.  If the State does not provide the Tribe with substantial exclusivity, the Tribe no longer will be obligated to pay such fees.

62.   The Substantial Exclusivity Fees under the Tribe's Compact are lower than they were under the former "Model Compact."  However, the Tribe has agreed to increase those fees if certain casino development occurs in the future, at which point the substantial exclusivity will become more valuable.

63.   The Tribe's Compact includes a provision stating that the Tribe "shall certify by Tribal resolution that Forty-Five Percent (45%) of revenues from all Facilities is derived from Covered Games."  Compact, Part 3.D.  In the event the Department of the Interior—with the concurrence of the State—takes certain lands into trust for gaming purposes in the future, that percentage changes to 50%.  *Id.*

64.   The Tribe's Compact also includes a provision stating that the Tribe (or its subordinate agency that operates gaming) "shall report at least quarterly . . . the number of Covered Games and class II devices in each Facility, by the name or type of each and its

identifying number, and denomination of bets accepted.  This list shall include both class II and class III games."  Compact, Part 4.K.

65.     It is not unprecedented for the Secretary of the Interior to approve tribal–state compacts that refer to Class II gaming in some form or manner.  In Arizona, for instance, the compacts typically "Gaming Device" as inclusive of Class II machines, and those compacts include a provision stating that the relevant tribe may only operate up to forty (40) Class II Gaming Devices, with any Class II Gaming Devices in excess of that number counting against the tribe's overall Gaming Device allocation.  *See, e.g.*, Compact between the State of Arizona and the Ak-Chin Indian Community, §§ 2(*l*), 3(c).

66.     The Tribe's Compact includes provisions relating to potential "New Facilities" located in Logan, Payne, and Noble Counties.  Compact, Part 4.J.2.  Specifically, the Compact provides for a "Section 20 Concurrence," which provides that "the State, through its Governor, . . . hereby agrees in any determination by the Secretary of the Interior that lands in [such Counties] should be taken into trust for gaming purposes, and such lands are eligible for gaming under 25 U.S.C. § 2719(b)(1)(A)."  *Id.* Part 4.J.2.a.

67.     It is not unprecedented for the Secretary to approve a tribal-state compact that includes a state's commitment to concur in any future land-into-trust acquisitions under Section 20 of IGRA.  For example, the Department has previously approved a compact between the State of California and the Fort Mojave Tribe which included a provision stating that the Governor intends to grant a Section 20 concurrence so long as certain preconditions are met.  The Department voiced no concern as to the Governor's pre-negotiated concurrence.  *See, e.g.*, Compact between the State of California and the Fort Mojave Tribe, Preamble (I) and Cover Letter.

68.     The taking of land into trust under Section 20 invokes a process that is entirely distinct from the compact-approval process, pursuant to which tribes neighboring the relevant parcel of land are expressly allowed to provide their input.  25 U.S.C. § 2719(b)(1)(A).

69.     The Tribe's Compact includes a severability clause, which provides that "[i]f any clause or provision of this Compact is subsequently determined by any federal court to be invalid or unenforceable under any present or future law, including but not limited to the scope of Covered Games, the remainder of this Compact shall not be affected thereby."  Compact, Part 13.B.

70.     Like any contract, it is not uncommon for a tribal-state gaming compact to be upheld even if a provision of the compact is declared to be invalid.

71.     In fact, the Tribe's former compact—the Model Compact—included at least two provisions that were found to be problematic.

72.     Part 3(5) of the Model Compact, in the Department's view at the time, posed the risk of allowing for the improper state regulation of Class II gaming.  The Department nonetheless approved that version of the compact on the basis that it could be stricken.  This was documented in some of the Department's approval letters at the time, including the approval letter sent to the Chickasaw Nation on January 12, 2005.

73.     Similarly, Part 12(3) of the Model Compact, which related to arbitration of disputes, was held by the United States Court of Appeals for the Tenth Circuit to be invalid because it allowed for a federal court to exercise *de novo* review over arbitration awards, in violation of the Federal Arbitration Act ("FAA") and the U.S. Supreme Court's decision in *Hall Street Associations, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008).  Nonetheless, that provision was

severed, and the Model Compact remained in full effect.  *Citizen Potawatomi Nation v.*
*Oklahoma*, 881 F.3d 1226 (10th Cir. 2018).

**D. The Plaintiffs' Attempts to Disrupt the Tribe's Ability to Engage in Gaming Under IGRA.**

74.    The Tribe signed its Compact with the State on April 21, 2020, and submitted the
Compact to the Department of the Interior ("Department") two days later, on April 23, 2020.
This triggered the forty-five (45) day review period for the Secretary to approve or disapprove
the Compact.

75.    Within hours of the Tribe and Governor Stitt signing the Compact, the Plaintiffs,
in concert with numerous other tribes, organizations, and government officials, began an active
campaign against the Compact.

76.    Among the first public statements condemning the Compact was a statement from
OIGA.  Specifically, OIGA's Chairman, Matthew Morgan, an employee of the Chickasaw
Nation, issued a press release stating:

> We respect the sovereignty of each Tribe to take what actions it believes it must
> on behalf of its citizens.

> All the same, Governor Stitt does not have the authority to do what he claims to
> have done today. Without the engagement of the Oklahoma Legislature, he has
> entered agreements based on a claim of unilateral State authority to legalize
> sportsbook, to revamp the Oklahoma Lottery, and to authorize new gaming
> facilities in Norman and Stillwater, among other places. That's simply not the
> law.

> I expect Tribal and State officials are now reviewing the documents he released
> today and trying to understand what exactly it is Governor Stitt is trying to do.
> But at the end of the day, I suspect his actions have not helped matters for anyone.

77.    On information and belief, the Plaintiffs took actions to encourage OIGA to speak
out against the Compact.

78.     Later that day, Oklahoma Attorney General Mike Hunter issued a press release

relating to the Compact (as well as the compact between the State and the Comanche Nation),

stating:

> The agreements signed today between the governor, the Otoe–Missouria Tribe
> and the Comanche Nation are not authorized by the state Tribal Gaming Act, Title
> 3A. Section 261 *et seq.*  The governor has the authority to negotiate with tribes on
> behalf of the state.  However, only gaming activities authorized by the act may be
> the subject of a tribal gaming compact.  Sports betting is not a prescribed
> "covered game" under the act.

79.     On information and belief, the Plaintiffs took actions to encourage Attorney

General Hunter to speak out against the Compact.

80.     The following day, April 22, 2020, Oklahoma Speaker of House Charles McCall

and Senate Leader Greg Treat both sent Governor Stitt a letter further denigrating the Compact.

The letter stated, *inter alia*, that the Compact was "legally flawed."

81.     On information and belief, the Plaintiffs took actions to encourage Speaker

McCall and Senate Leader Treat to speak out against the Compact.

82.     On May 5, 2020, the Attorney General issued an AG Opinion providing his view

that the Tribe's Compact unlawfully "purport to grant the State's consent to conduct gambling

activities that are prohibited by state criminal law."  The AG Opinion did not meaningfully

grapple with the fact that such activities were only permitted in the Compact *if* they later become

"authorized by law."  Nor did the AG Opinion address the Compact's severance clause.  Also on

May 5, 2020, the Attorney General submitted a letter to the Secretary requesting that the

Secretary disapprove the Tribe's Compact for the reasons stated in his AG Opinion.

83.     That same day, in response to the Attorney General's actions, OIGA Chairman

Morgan issued the following statement:

We appreciate Oklahoma Attorney General Mike Hunter's clear analysis of the law and his strong letter to the United States Secretary of the Interior. As the Attorney General states and we have argued for some time, Governor Stitt does not have the authority to bind Oklahoma to his empty promises. Oklahoma and the Tribes deserve better than the carelessness Governor Stitt has brought to the table, and the Attorney General's analysis encourages us that we will be able to reestablish the sort of Tribal–State engagement that confirms to the law and serves all of us well. Oklahomans deserve no less from state government, and the Tribes remain committed to that result.

84.     OIGA's statement was subsequently circulated as a press release by United for Oklahoma.

85.     On information and belief, the Plaintiffs took deliberate actions to encourage the Attorney General to issue the AG Opinion and formally request that the Secretary disapprove the Compact.

86.     On information and belief, the Plaintiffs also took deliberate actions to have OIGA issue the statement supporting the Attorney General, and to have United for Oklahoma circulate that statement with approval.

87.     On or around May 7, 2020, the intertribal organization OIGA suspended the Tribe as a member. The Chairman of OIGA stated: "This was a difficult decision to make, but it was the correct one. [OIGA] works best when its membership can speak frankly and with the trust that all members are working together to support our industry as a whole."

88.     On information and belief, the decision to suspend the Tribe from OIGA was prompted by and ultimately determined by leadership of the Plaintiffs, with the goal of casting doubt upon the legality of the Tribe's Compact and the Tribe's ability to exercise its right to engage in intergovernmental negotiations under IGRA.

89.     During the forty-five (45) day period during which the Compact was under review at the Department, the Cherokee, Chickasaw, and Citizen Potawatomi Nations submitted written

requests to the Department requesting that the Compact be disapproved.  In doing so, those tribes made much the same arguments that were presented in their amended complaint in this case, e.g., that the Compact was not properly "entered into" with the State; that it unlawfully "authorized" sports betting; and that it imposed substantial exclusivity payments without any meaningful concessions from the State.

90.     During the forty-five (45) day review period, the Plaintiffs all publicly stated, explicitly or implicitly, that the Tribe's Compact was unlawful.

91.     On June 4, 2020, before the forty-five (45) day review period ended, Speaker McCall and Senate Leader Treat filed an original action in the Oklahoma Supreme Court against Governor Stitt in his official capacity, seeking to invalidate the Compact.   The action was captioned *Treat v. Stitt*, No. O-118829 (*Treat I*).

92.     Plaintiff the Cherokee Nation responded to the filing of *Treat I* with the following statement:

> Governor Stitt refuses to acknowledge the terms of the compact and his limits of authority under state and federal law.   Fortunately for all four million Oklahomans, Speaker McCall and Senator Treat have yet again demonstrated that they have the courage and good judgment to hold the Governor accountable for overreaching his authority and executing illegal agreements.

93.     OIGA circulated with approval the statement from the Cherokee Nation regarding the filing of *Treat I*.

94.     Plaintiff the Chickasaw Nation responded to the filing of *Treat I* with the following statement:

> We deeply appreciate the leadership demonstrated today by President Pro Tem Treat and Speaker McCall.   The action they filed in the Oklahoma Supreme Court is tailored to protect their constitutional role as Oklahoma's policymakers and will help get things back on the right track.

95.     On information and belief, the Plaintiffs took deliberate actions to encourage Speaker McCall and Senate Leader Treat to file the petition in *Treat I*.

96.     The Tribe was not a party to *Treat I*.

97.     On or around June 7, 2020, the forty-five (45) day review period ended, at which point the Secretary had taken no action on the Compact, and the Compact was therefore deemed approved under IGRA.  *See* 25 U.S.C. § 2710(d)(8)(C).

98.     The Compact went into effect on June 29, 2020, upon publication of notice in the Federal Register.  *See* 85 Fed. Reg. 38,919 (June 29, 2020).

99.     On July 21, 2020, after the Compact went into effect, the Oklahoma Supreme Court issued its opinion in *Treat I*, stating without analysis that the Compact was "invalid."

100.    The majority opinion in *Treat I* was eight (8) paragraphs long, and just barely more than four (4) pages.  To the extent the opinion addressed the actual terms of the Compact, it focused on the event wagering provisions, failing entirely to acknowledge that the Compact only permits such activity "to the extent authorized by law."  The opinion did not address the severability clause of the Compact.  The opinion also failed to address why the Tribe should not have been considered an indispensable party.  For the latter reason, Justice Kane dissented, stating that he would dismiss the case for lack of indispensable parties, as the Tribe was not a party to the action.

101.    The Tribe has been conducting Class III gaming under its Compact since time the Compact became effective through its publication in the Federal Register, and the Tribe desires to continue to engage in Class III gaming under its Compact.

102.    The public allegations made by the Plaintiff Nations or their representatives have caused and will continue to cause unease among potential third-party gaming vendors, business partners, customers, and other parties and institutions.

103.    The Plaintiffs ultimately seek to prevent the Tribe from conducting Class III gaming under *any* compact.   Indeed, in written correspondence with the Department, the Chickasaw Nation specifically promoted the theory that agency approval, if followed by judicial invalidation, would result in the Tribe being "left without any lawful Class III gaming compact."

104.    Through their own written and verbal advocacy—at the agency level and elsewhere—the Plaintiffs have orchestrated and perpetuated the false narrative that the Compact is illegal.

105.    The Plaintiffs' actions have directly frustrated the Tribe's ability to engage in gaming under IGRA, a right that is guaranteed to the Tribe under federal law.

## V.    CAUSE OF ACTION

## DECLARATORY JUDGMENT

106.    Chairman Shotton incorporates all previous allegations as if fully set forth herein.

107.    The Tribe has entered into the Compact with the State of Oklahoma to conduct Class III gaming pursuant to IGRA.

108.    All of the provisions of the Tribe's Compact challenged by the Plaintiffs are valid under IGRA.

109.    Even if one or more discrete provisions of the Compact are found to be invalid, such provision(s) may be severed in accordance with the Compact's severability clause, and the Compact may continue to remain in effect, save for any offending provisions.

110.    The Secretary acted appropriately in allowing the Compact to be deemed approved.

111.    The Tribe engages in lawful Class III gaming under the Compact, and wishes to continue to do so.

112.    The Plaintiffs' representations that the Tribe's Compact is not a valid compact under IGRA has interfered with, and continues to interfere with, the Tribe's right to engage in lawful gaming under its Compact.

113.     For the reasons described above, Chairman Shotton is entitled to a declaratory judgment that the Compact is valid and in effect under IGRA.

## PRAYER FOR RELIEF

WHEREFORE, Chairman Shotton, in his official capacity on behalf of the Tribe, respectfully requests the following relief:

1.    A declaratory judgment holding:

    a.  The Tribe's Compact is valid in its entirety under IGRA, was properly deemed approved, and is in effect; or

    b.  In the alternative, that any offending provisions of the Compact may be severed, and the Tribe may continue to engage in Class III gaming under the Compact's remaining provisions.

2.    An award of attorneys' fees, costs, and any other relief as the Court, in its judgment, may deem appropriate.

//

Respectfully submitted,


Dated:  January 25, 2021                    By:      _/s/  Robert A. Rosette_____
                                                     Robert A. Rosette (D.C. Bar # 457756)
                                                     Saba Bazzazieh (D.C. Bar # 1013472)
                                                     Brett Stavin (D.C. Bar # 1029526)
                                                     ROSETTE, LLP
                                                     1100 H Street, NW, Suite 820
                                                     Washington, DC 20005
                                                     rosette@rosettelaw.com
                                                     sbazzazieh@rosettelaw.com
                                                     bstavin@rosettelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2021 I electronically filed the foregoing document using the Court's CM/ECF system, which sent notification of such filing to all counsel of record.


By:     */s/Marrianne Galli*
        Marrianne Galli