IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**Cherokee Nation**, et al.,

               Plaintiffs,

     v.

**U.S. Department of the Interior**, et al.,

              Defendants.

Case No. 1:20-cv-02167-TJK

**Memorandum in Support of
Federal Defendants' Motion to Dismiss**

JEAN E. WILLIAMS
Deputy Assistant Attorney General

KRISTOFOR R. SWANSON
MATTHEW M. MARINELLI
Natural Resources Section
Envt. & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

January 25, 2021

## TABLE OF CONTENTS

Introduction ............................................................................................. 1

Relevant Background ............................................................................. 3

    I.    Statutory and Regulatory Background ......................................... 3

    II.   Factual Background ...................................................................... 5

    III.  The Amended Complaint ............................................................ 10

Standard of Review ............................................................................. 11

Argument ............................................................................................. 13

    I.    Plaintiffs Lack Standing Because the Complaint Does Not
        Adequately Allege that Compact Approval Has Injured or
        Will Imminently Injure Plaintiffs ............................................. 14

        A.   There is No Certainly Impending Injury from
              Hypothetical Future Gaming that is Not Currently
              Authorized Under State Law .............................................. 17

        B.   Plaintiffs Cannot Base Standing on Alleged Injuries to
               the Compacting Tribes from Allegedly Improper
              Taxation or Regulation ...................................................... 23

        C.   Plaintiffs' Allegations Regarding Potential Differences
              in Gaming Revenue Payments by the Compacting
              Tribes to Oklahoma are too Speculative to Sustain
              Standing ............................................................................. 27

        D.   There is No Certainly Impending Injury from
               Speculative Future Gaming on Unbuilt Facilities on
              Unacquired Lands .............................................................. 30

    II.   The Amended Complaint Fails to State a Plausible Claim for
        Relief Against Federal Defendants ............................................. 35

        A.   IGRA Does Not Require the Secretary to Disapprove a
              Compact Where There Is an Unresolved Dispute as to
              State Authority ................................................................... 35

i

B.    When the Secretary Does Not Act, Compacts Are Deemed Approved by Statute, But Only to the Extent They Are Consistent With IGRA ...................................... 40

Conclusion ...................................................................................... 44

# TABLE OF AUTHORITIES

## Cases

*Amador County v. Jewell,*
  170 F. Supp. 3d 135 (D.D.C. 2016) ................................................................ 42

*Amador County v. U.S. Department of the Interior,*
  640 F.3d 373 (D.C. Cir. 2011) ........................................................... 41, 42

*Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1,*
  296 F. Supp. 3d 92 (D.D.C. 2017) ............................................................. 13

*\*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................... 13, 38

*Browning v. Clinton,*
  292 F.3d 235 (D.C. Cir. 2002) .................................................................. 13

*California v. Cabazon Band of Mission Indians,*
  480 U.S. 202 (1987) ................................................................... 3, 40

*Cheeks v. Fort Myer Constr. Co.,*
  722 F. Supp. 2d 93 (D.D.C. 2010) ............................................................ 25

*Cherokee Nation v. Stitt,*
  475 F. Supp. 3d 1277 (W.D. Okla. 2020) ...................................................... 6

*City of Houston v. Dep't of Hous. & Urban Dev.,*
  24 F.3d 1421 (D.C. Cir. 1994) ............................................................... 21

*\*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ................................................... 15, 21, 23, 33

*Confederated Tribes of the Grand Ronde Cmty. of Or. v. Jewell,*
  830 F.3d 552 (D.C. Cir. 2016) ............................................................. 3, 29

*Ctr. For Biological Diversity v. Dep't of Interior,*
  563 F.3d 466 (D.C. Cir. 2009) ................................................................ 15

*Ctr. for Democracy & Tech. v. Trump,*
  No. 1:20-cv-01456 (TNM), 2020 WL 7318008 (D.D.C. Dec. 11, 2020) ......... 33

*El Paso Nat. Gas Co. v. United States,*
  750 F.3d 863 (D.C. Cir. 2014) ........................................................... 43, 44

*Fernebok v. District of Columbia,*
  534 F. Supp. 2d 25 (D.D.C. 2008) ............................................................ 25

*Forest County Potawatomi Community v. United States,*
    317 F.R.D. 6 (D.D.C. April 14, 2016) ............................................................ 29

*Goodman v. FCC,*
    182 F.3d 987 (D. C. Cir. 1999) ............................................................ 24, 26

*Herbert v. Nat'l Acad. of Scis.,*
    974 F.2d 192 (D.C. Cir. 1992) ............................................................ 12

*Keepseagle v. Vilsack,*
    307 F.R.D. 233 (D.D.C. 2014).............................................................. 34

*Kickapoo Tribe of Indians v. Babbitt,*
    827 F. Supp. 37 (D.D.C. 1993) ............................................................ 39

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ............................................................ 11

*La. Envtl. Action Network v. Browner,*
    87 F.3d 1379 (D.C. Cir.1996) ............................................................ 15

*Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v.
United States,*
    259 F. Supp. 2d 783 (W.D. Wis. 2003).............................................................. 43

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton,*
    422 F.3d 490 (7th Cir. 2005) ............................................................ 28

*Langley v. Edwards,*
    872 F. Supp. 1531 (W.D. La. 1995).............................................................. 37

*\*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ............................................................ 15, 16, 19, 22, 23, 30

*Michigan v. Bay Mills Indian Cmty.,*
    572 U.S. 782 (2014) ............................................................ 3, 4, 29

*Moms Against Mercury v. FDA,*
    483 F.3d 824 (D.C. Cir. 2007) ............................................................ 12

*Murphy v. NCAA,*
    138 S. Ct. 1461 (2018) ............................................................ 22, 23

*Neitzke v. Williams,*
    490 U.S. 319 (1989) ............................................................ 13

*NTCH, Inc. v. FCC,*
    950 F.3d 871 (D.C. Cir. 2020) ............................................................ 39

iv

*Pueblo of Santa Ana v. Kelly,*
  104 F.3d 1546 (10th Cir. 1997) ............................................................. 4, 36

*Renne v. Geary,*
  501 U.S. 312 (1991) ................................................................................... 11

*Rhode Island v. Narragansett Indian Tribe,*
  No. Civ.A. 94–0619–T, 1995 WL 17017347 (D.R.I. Feb. 3, 1995) ............... 37

*Scotts Valley Band of Pomo Indians v. United States DOI,*
  No. 19-cv-1544 (ABJ), 2020 WL 5763583 (D.D.C. Sept. 28, 2020) ............. 34

*Seminole Tribe of Fla. v. Florida,*
  517 U.S. 44 (1996) ................................................................................. 4, 26

*Shipkovitz v. Sullivan,*
  No. 08-1937 (RMC), 2010 WL 11594867  (D.D.C. July 30, 2010) ............... 25

*Sickle v. Torres Advanced Enter. Solutions, LLC,*
  884 F.3d 338 (D.C. Cir. 2018) ................................................................... 12

*Simon v. E. Ky. Welfare Rights Org.,*
  426 U.S. 26 (1976) ..................................................................................... 15

*Sokaogon Chippewa Cmty. v. Babbitt,*
  214 F.3d 941 (7th Cir. 2000) ..................................................................... 34

*Sparrow v. United Air Lines, Inc.,*
  216 F.3d 1111 (D.C. Cir. 2000) ................................................................. 12

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) .......................................................................... 24, 30

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ..................................................................................... 11

*Treat v. Stitt (Treat I),*
  2020 OK 64, 473 P.3d 43 (Okla. 2020) ......................................................... 8

*Twin Rivers Paper Co. LLC v. SEC,*
  934 F.3d 607 (D.C. Cir. 2019) ................................................................... 11

*United States v. Hays,*
  515 U.S. 737 (1995) ................................................................................... 30

*United States v. Lara,*
  541 U.S. 193 (2004) ................................................................................... 40

*Vietnam Veterans of Am. & Veterans of Modern Warfare v. Shinseki*,
  599 F.3d 654 (D.C. Cir. 2010) ................................................................ 24, 35

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) ...................................................................................... 24

*Walter O. Boswell Mem'l Hosp. v. Heckler*,
  749 F.2d 788 (D.C. Cir. 1984) ...................................................................... 39

*Warren v. District of Columbia*,
  353 F.3d 36 (D.C. Cir. 2004) ......................................................................... 13

*Warth v. Seldin*,
  422 U.S. 490 (1975) ....................................................................................... 24

*Weissman v. Nat'l R.R. Passenger Corp.*,
  No. 20-cv-28 (TJK), 2020 WL 4432251 (D.D.C. July 31, 2020) ................... 12

**Statutes**

25 U.S.C. § 2701 ................................................................................................ 22

25 U.S.C. § 2702(1) ............................................................................................. 3

25 U.S.C. § 2702(2) ............................................................................................. 3

25 U.S.C. § 2703(7) ........................................................................................... 26

25 U.S.C. § 2710(d)(1) ................................................................................... 4, 40

25 U.S.C. § 2710(d)(1)(B) ...................................................................... 18, 42, 43

25 U.S.C. § 2710(d)(8)(A) ............................................................................. 4, 37

25 U.S.C. § 2710(d)(8)(C) .................................................................... 19, 20, 41

25 U.S.C. § 2719(b)(1)(A) ..................................................................... 28, 31, 32

**Regulations**

25 C.F.R. § 293.7 ......................................................................................... 36, 37

25 C.F.R. § 293.8(b) .......................................................................................... 37

25 C.F.R. pt. 293 ................................................................................................. 5

# INTRODUCTION

This is an Administrative Procedure Act case challenging the Secretary of the Interior's role in Indian gaming compacts between four Tribes and the Governor of Oklahoma.  The four compacts were deemed approved by operation of statute under the Indian Gaming Regulatory Act (IGRA) when the Secretary did not act to approve or disapprove them within forty-five days.  The Plaintiffs (four other Tribes who themselves operate gaming facilities) allege that the Secretary acted arbitrarily and contrary to law in not exercising his authority under IGRA to disapprove the compacts. Plaintiffs claim that the Governor lacked authority to enter the compacts on behalf of the State; that several provisions in the compacts are contrary IGRA; and that, as a result of the compacts being deemed approved by operation of statute, Plaintiffs now face increased competition in the gaming market in Oklahoma.

The claims against the Federal Defendants should be dismissed.  First, the Amended Complaint fails to adequately plead Article III standing because Plaintiffs allege no certainly impending injury to themselves. Plaintiffs allege that, as a result of the compacts going into effect, they face increased competition from games that are not otherwise permitted in Oklahoma, from payments that the compacts require the Compacting Tribes to make to the State, and from potential future gaming at other sites.  But

none of these alleged harms are certainly impending ones. The Amended Complaint's allegations make clear that it is, at best, highly speculative that the Compacting Tribes will conduct currently-unpermitted gaming. Any competitive advantage resulting from the Compacting Tribes' payments to the State is likewise highly speculative. Plaintiffs' challenges to allegedly illegal taxation and regulation of the Compacting Tribes fail because Plaintiffs cannot base standing on alleged injuries to the third-party Tribes who entered into compacts. And the Amended Complaint itself alleges that gaming on any future sites is far from certain.

Second, and separately, the complaint fails to state a plausible claim for relief. IGRA does not require the Secretary to disapprove a compact over an internal State dispute as to compacting authority, and the complaint does not allege that the compacting parties failed to submit to the Secretary the information that Department of the Interior regulations require to demonstrate that a compact has been "entered into." Further, when, as here, a compact goes into effect by operation of statute (rather than by affirmative Secretarial approval), the compact becomes effective only to the extent it is consistent with IGRA. Thus, Plaintiffs have no basis in law for their assertion that the Secretary acted arbitrarily by allowing provisions that are contrary to IGRA to go into effect. Federal Defendants' motion to dismiss should be granted.

Relevant Background

## I.    Statutory and Regulatory Background

The Indian Gaming Regulatory Act, or IGRA, "creates a framework for regulating gaming activity on Indian lands." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 785 (2014).  In enacting IGRA, Congress sought to establish a system that would balance the competing interests of tribal and state governments.  On the one hand, IGRA aims "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1); *Confederated Tribes of the Grand Ronde Cmty. of Or. v. Jewell*, 830 F.3d 552, 557 (D.C. Cir. 2016) ("[T]he whole point of the IGRA is to 'provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments.'" (quoting *Diamond Game Enters. v. Reno*, 230 F.3d 365, 366-67 (D.C. Cir. 2000)).  On the other hand, the statute contemplates a regulatory and supervisory role for the states and the federal government to prevent the infiltration of "organized crime and other corrupting influences." 25 U.S.C. § 2702(2).[1]

---

[1] Congress passed IGRA in response to the Supreme Court's decision in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 221–222 (1987), which had held that states lacked regulatory authority over gaming on Indian lands.  *See Bay Mills Indian Cmty.*, 572 U.S. at 794.

IGRA divides gaming into three classes.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 48 (1996).  The third of these—"Class III" gaming—is implicated here and includes casino-like games such as blackjack, roulette, and slot machines.  *See Bay Mills Indian Cmty.*, 572 U.S. at 786.  Class III gaming generally cannot occur on "Indian lands" unless it is: (1) authorized by an appropriate tribal resolution; (2) permitted in the State "for any purpose by any person, organization, or entity"; and (3) "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State."  25 U.S.C. § 2710(d)(1).  "The rationale for the compact system is that 'there is no adequate Federal regulatory system in place for Class III gaming, nor do tribes have such systems for the regulation of Class III gaming currently in place,' and thus 'a logical choice is to make use of existing State regulatory systems' through a negotiated compact."  *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1549 (10th Cir. 1997) (quoting S. Rep. No. 100–446, at 13–14, reprinted in 1988 U.S.C.C.A.N. 3071, 3083–84).

IGRA provides no role for the federal government in the compact negotiation process between tribes and states.  The Secretary of the Interior holds authority to approve or, for limited reasons, disapprove a compact to which the state and the tribe do agree.  25 U.S.C. § 2710(d)(8)(A), (B).  Congress also directed, however, that, "[i]f the Secretary does not approve or disapprove a compact . . . before the date that is 45 days after the date on

4

which the compact is submitted to the Secretary for approval, the compact

shall be considered to have been approved by the Secretary, but only to the

extent the compact is consistent with the provisions of [IGRA]." *Id.*

§ 2710(d)(8)(C).  Compacts approved by the Secretary, or deemed approved by

operation of statute when the Secretary does not act, become effective after

the Secretary publishes notice in the Federal Register.  *See id.*

§ 2710(d)(3)(B), (d)(8)(D).

Department of the Interior regulations set out the requirements for

states and Indian tribes to properly submit compacts or compact

amendments to Interior for the Secretary's review.  *See* 25 C.F.R. pt. 293.

## II.   Factual Background

As of January 2020, there were 136 Class III tribal gaming facilities in

Oklahoma.  *See* National Indian Gaming Commission, Gaming Tribe Report

(Sorted by State) 13–18 (Jan. 13, 2020) (attached as Ex. 1).  Of those 136

gaming facilities, the Plaintiff Tribes in this case—the Cherokee Nation

("Cherokee"), the Choctaw Nation ("Choctaw"), the Chickasaw Nation

("Chickasaw"), and the Citizen Potawatomi Nation ("CPN," and together

"Plaintiffs")—operate fifty-eight of them.  *See id.* at 13–15.  The Comanche

Nation ("Comanche") and the Otoe-Missouria Tribe of Indians ("Otoe-

Missouria"), whose chairmen are defendants here, operate ten in total.  *See*

*id.* at 16, 17.  The United Keetoowah Band of Cherokee Indians in Oklahoma

("United Keetoowah") and the Kialegee Tribal Town ("Kialegee"), whose

leaders are also defendants, operate none. *See id.* at 13–18.

Under Oklahoma's 2004 State-Tribal Gaming Act, tribes in Oklahoma

were offered a Model Compact for Class III gaming, which, if accepted by a

tribe, did not need further approval from the State before it could be

presented to the Secretary of the Interior for approval under IGRA. *See* Am.

Compl. ¶¶ 52, 53, 55, ECF No. 26.[2]  Each of the Plaintiff Tribes, as well as

Comanche, Otoe-Missouria, and Kialegee, entered a Model Compact, and

each compact was then approved by the Secretary of the Interior, or deemed

approved when the Secretary did not act within forty-five days. *See* Am.

Compl. ¶¶ 56, 57, 60, 62.  The State offered a supplement to the Model

Compact in 2018, which each of the Plaintiffs accepted.  Am. Compl. ¶ 68.[3]

In 2019, several Oklahoma tribes sued the Governor of Oklahoma

regarding the Model Compact's renewal provisions. *See* Am. Compl. ¶¶ 69,

73; *see Cherokee Nation v. Stitt*, 475 F. Supp. 3d 1277 (W.D. Okla. 2020), *mot.*

*to certify appeal granted,* No. CIV-19-1198-D, 2020 WL 5665799 (W.D. Okla.

---

[2] Given the current stage of proceedings, we cite to the Amended Complaint
for background purposes only.  Federal Defendants do not, at this stage,
admit any facts alleged in the Amended Complaint.

[3] The Amended Complaint alleges that United Keetoowah did not timely
enter a Model Compact.  Am. Compl. ¶ 58.  Plaintiffs also each conduct pari-
mutuel wagering on horse races under separate "Off-Track Wagering
Compacts."  Am. Compl. ¶ 51.

Sept. 23, 2020). Plaintiffs in the present case were plaintiffs in that litigation, as were Comanche and Otoe-Missouria. Am. Compl. ¶¶ 69, 73, 74. In the midst of that renewal litigation, the Governor negotiated new compacts with Comanche and Otoe-Missouria, after which those two Tribes voluntarily dismissed their claims in the renewal litigation. *See* Am. Compl. ¶¶ 75–77, 79.

On April 23, 2020, Comanche and Otoe-Missouria submitted their new compacts to the Secretary of the Interior for approval under IGRA. Am. Compl. ¶ 81. Plaintiffs and others submitted comments to the Secretary arguing that the compacts were unlawful, including because the Governor allegedly lacked authority to enter the compacts on behalf of the State. Am. Compl. ¶¶ 81, 84–90. The Secretary did not act upon the compacts within the Congressionally-mandated 45-day review period, which ended on June 7, 2020. *See* Am. Compl. ¶ 92. The Comanche and Otoe-Missouria compacts were therefore deemed approved by operation of statute "to the extent they are consistent with IGRA," and became effective on June 29, 2020, when the Secretary published notice. *See* Am. Compl. ¶ 93 (citation omitted).

Just *three days* before the end of IGRA's 45-day review period for the Comanche and Otoe-Missouria compacts, Oklahoma's legislature filed an original action in the Oklahoma Supreme Court challenging the Governor's authority to sign the two compacts on the State's behalf. *See* Am. Compl.

7

¶ 91.  On July 21, 2020—more than six weeks after the close of IGRA's 45-day review period and after the compacts had already become effective for purposes of IGRA—the Oklahoma Supreme Court ruled on the petition, which the Amended Complaint refers to as *Treat I*.  *See* Am. Compl. ¶ 96. The court held: "The tribal gaming compacts Governor Stitt entered into with the Comanche Nation and Otoe-Missouria Tribes are invalid under Oklahoma law.  The State of Oklahoma is not and cannot be legally bound by those compacts until such time as the Legislature enacts laws to allow the specific Class III gaming at issue, and in turn, allowing the Governor to negotiate additional revenue."  *Treat v. Stitt (Treat I)*, 2020 OK 64, ¶ 8, 473 P.3d 43, 45 (Okla. 2020).[4]

---

[4] We understand there to be a dispute about whether *Treat I* held that the Governor had no authority to enter the compacts at all, or that he did not have authority only to the extent the compacts cover forms of Class III gaming that are not currently authorized under state law.  *See, e.g., Treat I*, 2020 OK 64, ¶¶ 5, 7, 473 P.3d at 44–45 ("The Governor has the statutory authority to negotiate gaming compacts with Indian tribes to assure the State receives its share of revenue.  However, the Governor must negotiate the compacts within the bounds of the laws enacted by the Legislature, including the State-Tribal Gaming Act. . . . The Court must, therefore, conclude Governor Stitt exceeded his authority in entering into the tribal gaming compacts with the Comanche Nation and Otoe-Missouria Tribes that included Class III gaming prohibited by the State-Tribal Gaming Act.").  On September 14, 2020, the Oklahoma Supreme Court denied a motion for rehearing in *Treat I*.  *See* Am. Compl. ¶ 99; *Treat I*, 2020 OK 64, 473 P.3d 43.

During the pendency of *Treat I*, Governor Stitt also finalized compacts with United Keetoowah and Kialegee.  *See* Am. Compl. ¶ 101.[5]  On July 1, 2020, the two Tribes submitted the compacts to the Secretary for approval under IGRA, and Plaintiffs again submitted comments regarding the compacts' validity.  Am. Compl. ¶¶ 101, 102.  The Secretary did not act upon the compacts within the statutorily-established 45-day review period, which ended on August 15, 2020.  *See* Am. Compl. ¶ 105.  The United Keetoowah and the Kialegee compacts were therefore deemed approved by operation of statute "to the extent they are consistent with IGRA", and became effective on September 8, 2020, when the Secretary published notice.  *See* Am. Compl. ¶¶ 105, 106.

On July 14, 2020—fourteen days into IGRA's 45-day review period for the United Keetoowah and Kialagee compacts, but a week before *Treat I* was decided—Oklahoma legislators filed a separate petition with the Oklahoma Supreme Court challenging the Governor's authority to enter into the two compacts ("*Treat II*").  *See* Am. Compl. ¶ 103.  At the time of the Amended Complaint (filed on September 14), the Oklahoma Supreme Court had yet to

---

[5] United Keetoowah and Kialegee tried unsuccessfully to intervene as plaintiffs in the state court litigation regarding the Model Compact's renewal provision.  *See* Am. Compl. ¶ 100.

decide the petition.  *See* Am. Compl. ¶ 104.  It appears from the Oklahoma

Supreme Court's website that the court has still not ruled on *Treat II*.[6]

## III.   The Amended Complaint

Plaintiffs filed suit in August 2020, alleging under the Administrative

Procedure Act (APA) that the Secretary of the Interior acted arbitrarily and

contrary to law by not exercising his authority under IGRA to disapprove the

Comanche and Otoe-Missouria compacts.  *See* Compl., ECF No. 1.  Plaintiffs

amended their complaint in September 2020 to include the United

Keetoowah and Kialegee compacts.  *See* Am. Compl., ECF No. 26.

The Amended Complaint includes seven claims against the Federal

Defendants, who are the Department of the Interior, the Secretary of the

Interior (in his official capacity), and the Assistant Secretary for Indian

Affairs (in her official capacity).  *See* Am. Compl. ¶¶ 12–14, 232–64.  The

Amended Complaint also includes a claim against the Chairman of the

Business Committee of the Comanche Nation, Chairman of the Tribal

Council of the Otoe-Missouria Tribe, Chief of the United Keetoowah Band,

and Mekko of the Kialegee Tribal Town.  *See* Am. Compl. ¶¶ 16–19, 266–68.

That claim is not the subject of Federal Defendants' motion.  The Amended

---

[6] The Oklahoma Supreme Court docket for *Treat II* is available at
https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=O-118913&cmid=128488 (site last accessed January 25, 2021).

Complaint also names the Governor of Oklahoma as a defendant, but directs no claims for relief at the Governor.  *See* Am. Compl. ¶¶ 15, 232–68.

Plaintiffs seek declaratory relief and an order reversing the compacts' approval under IGRA and remanding them to the Secretary of the Interior to be disapproved.  *See* Am. Compl. at 112–14 (prayer for relief).

## STANDARD OF REVIEW

Federal Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

"The Constitution limits the 'judicial Power of the United States' to 'Cases' or 'Controversies,' U.S. Const. art. III, §§ 1-2, and the requirement of standing is 'rooted in the traditional understanding of a case or controversy.'" *Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 612 (D.C. Cir. 2019) (citation omitted).  Subject matter jurisdiction is a threshold issue, which should be addressed prior to any consideration of the merits.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998).  Federal courts presumptively lack jurisdiction "unless the contrary appears affirmatively from the record."  *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotation marks and citation omitted); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted) ("It is to be presumed that a cause lies outside this limited jurisdiction . . . , and the burden of establishing the contrary rests on the party asserting jurisdiction." (internal citations

11

omitted)).  Therefore, to survive a motion to dismiss pursuant to Rule
12(b)(1), a plaintiff bears the burden of establishing that the court has subject
matter jurisdiction over its claim.  *Moms Against Mercury v. FDA*, 483 F.3d
824, 828 (D.C. Cir. 2007).

"A court evaluating a Rule 12(b)(1) motion 'must treat the complaint's
factual allegations as true and must grant plaintiff the benefit of all
inferences that can be derived from the facts alleged.'"  *Weissman v. Nat'l
R.R. Passenger Corp.*, Civ. Action No. 20-cv-28 (TJK), 2020 WL 4432251, at
*2 (D.D.C. July 31, 2020) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d
1111, 1113 (D.C. Cir. 2000)).  "But the court need not accept the plaintiff's
legal conclusions or the inferences he draws 'if [they] are unsupported by
facts alleged in the complaint.'"  *Id.* (quoting *Williams v. Wilkie*, 320 F. Supp.
3d 191, 195 (D.D.C. 2018)).  "[W]here necessary, the court may consider the
complaint supplemented by undisputed facts evidenced in the record, or the
complaint supplemented by undisputed facts plus the court's resolution of
disputed facts."  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir.
1992).

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim or
complaint."  *Sickle v. Torres Advanced Enter. Solutions, LLC*, 884 F.3d 338,
344 (D.C. Cir. 2018) (citation omitted).  Under Rule 12(b)(6), courts determine
whether the complaint alleges "sufficient factual matter, accepted as true, to

12

state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1*, 296 F. Supp. 3d 92, 95 (D.D.C. 2017) (quoting *Iqbal*, 556 U.S. at 678).  Courts, however, need not accept as true inferences unsupported by factual allegations nor legal conclusions.  *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## ARGUMENT

The Amended Complaint should be dismissed for lack of jurisdiction and for failure to state a plausible claim for relief.  The Court lacks jurisdiction because the Amended Complaint fails to allege a certainly impending injury in fact for purposes of Article III standing.  The Amended Complaint fails to state a claim because the legal theories of Plaintiffs' case fail as a matter of law.  IGRA does not require the Secretary to disapprove a compact where there is a then-unresolved dispute as to state authority.  And, when compacts are deemed approved by operation of IGRA, they are approved only to the extent they are consistent with the statute.

13

I.      **Plaintiffs Lack Standing Because the Complaint Does Not
        Adequately Allege that Compact Approval Has Injured or
        Will Imminently Injure Plaintiffs.**

Plaintiffs lack standing because they fail to adequately allege an actual
or certainly impending injury in fact that derives from the compacts
becoming effective by operation of statute.  At most, Plaintiffs identify highly-
speculative, hypothetical injuries that could only occur if: 1) the Compacting
Tribes begin conducting gaming that, as the Amended Complaint itself
alleges, is currently not permitted under Oklahoma law and that the
Compacting Tribes' leaders have stated the Tribes will not conduct absent
State authorization; or 2) the Compacting Tribes begin gaming in casinos
that currently do not exist on land that would first need to advance through
separate statutory and regulatory process before becoming "Indian lands"
eligible for gaming under IGRA.[7]  Plaintiffs' remaining allegations are based
on allegedly illegal taxation and regulation of the Compacting Tribes (not the
Plaintiffs), or on speculative (and contradictory) projections from the
compacts' revenue sharing formulas.  Such alleged injuries cannot support
standing.

 "No principle is more fundamental to the judiciary's proper role in our
system of government than the constitutional limitation of federal-court

---

[7] Two of the Compacting Tribes, United Keetoowah and Kialegee, currently
do not operate Class III gaming facilities.

jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976).  The Supreme Court has made "clear that . . . abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III."  *Id.* at 40.

A plaintiff bears the burden of proof to establish federal jurisdiction. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992).  To meet the Article III standing requirements, Plaintiffs must allege three elements.  *Id.*  First, Plaintiffs must allege that they have suffered an "injury in fact" that is "concrete and particularized" and actual or imminent, not "conjectural" or "hypothetical." *Id.* at 560 (citations omitted).  Plaintiffs' injury must be "certainly impending" and cannot rely "on a highly attenuated chain of possibilities."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013). "[A]llegations of possible future injur[ies] are not sufficient."  *Id.* at 409 (emphasis, quotation marks and citations omitted); *Ctr. For Biological Diversity v. Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009); *La. Envtl. Action Network v. Browner*, 87 F.3d 1379, 1384 (D.C. Cir.1996) (claim that "dire consequences . . . would befall [the plaintiff] if" certain events were to transpire insufficient to "state an injury sufficiently imminent and concrete for constitutional standing").  Second, Plaintiffs must establish a causal connection between the injuries complained of and the challenged agency action.  Plaintiffs' injuries must be "fairly . . . trace[able]" to the Department

15

of the Interior's action. *Lujan*, 504 U.S. at 560–61 (alterations in original) (citations omitted). Third, Plaintiffs must show it is "likely, as opposed to merely speculative, that the injury will be addressed by a favorable decision" of the Court. *Id.* at 561 (internal quotation marks and citation omitted).

Plaintiffs base their claims on four alleged injuries:

1) alleged injuries from the Compacting Tribes conducting games that are not currently authorized under Oklahoma law and which the Compacting Tribes have explicitly stated will not be conducted absent a change in Oklahoma's law, Am. Compl. ¶¶131–53;

2) alleged injuries to the Compacting Tribes, rather than Plaintiffs, from the compacts taxing and regulating the Compacting Tribes, Am. Compl. ¶ 85 (Compacting Tribes "make concessions to the State"), *id.* ¶ 102 ("revenue sharing provisions in those Agreements were not made in exchange for a meaningful concession by the State of significant economic benefit"), *id.* ¶ 155 (Oklahoma made no "meaningful concession of significant economic benefit" to Compacting Tribes), *id.* ¶¶ 174–75 (compacts require "substantially higher" revenue payments than former compacts), ¶¶ 252–53 (compacts purportedly violate "prohibition on state taxation" by taxing Compacting Tribes if certain benchmarks met), *id.* ¶¶ 189–200 (illegal regulation of Class II gaming);

3) alleged competitive injuries from the compacts incorporating multiple revenue sharing provisions, some of which require the Compacting Tribes to share a higher percentage of their revenues than Plaintiffs, and some of which require them to share a lower percentage, Am. Compl. ¶¶ 154, 162–75; and

4) alleged competitive injuries from gaming on "*future* off-reservation trust land acquisitions for gaming purposes" by the Compacting Tribes, Am. Compl. ¶¶ 4, 201–31 (emphasis added).

As discussed below, the Amended Complaint's own allegations establish that any injuries Plaintiffs could conceivably suffer from the

Compacting Tribes' potential conduct of games that are not permitted absent changes to Oklahoma's laws (or from hypothetical gaming in casinos that could be built only if the Compacting Tribe acquire land in the future) are far too speculative to provide standing.  Nor can Plaintiffs meet Article III's case or controversy requirement by alleging that Comanche, Otoe-Missouria, United Keetoowah and Kialegee—rather than Plaintiffs—are injured by improper taxation and overregulation.  Indeed, Plaintiffs cannot sustain a lawsuit to invalidate the compacts' approval under IGRA through the guise of defending the Compacting Tribes' rights.  This is particularly so where Plaintiffs seek to vindicate the Compacting Tribes' rights over the Compacting Tribes' objections.  *See* Am. Compl. ¶ 5 (alleging that Plaintiffs "compete in the highly competitive Oklahoma gaming market" against Compacting Tribes); *id*. ¶¶ 67, 109, 128, 169.  Plaintiffs' claims against Federal Defendants must therefore be dismissed.

### A.      There is No Certainly Impending Injury from Hypothetical Future Gaming that is Not Currently Authorized Under State Law.

Plaintiffs' first alleged harm relates to the possibility of the Compacting Tribes gaining a competitive advantage by conducting gaming that is currently not permitted in Oklahoma.  Am. Compl. ¶¶ 131–53 (Otoe-Missouria and Comanche Compacts allegedly "purport to authorize" "games

17

that are not permitted under IGRA");[8] *id.* ¶¶ 245–50.  But, even on the Amended Complaint's own allegations, any such injury is far from certainly impending.  As Plaintiffs acknowledge, the games are not currently permitted by Oklahoma law, are not played in Oklahoma, and are ones which the Compacting Tribes' leaders have recognized cannot be offered in Oklahoma until the Oklahoma legislature changes Oklahoma Law.  Plaintiffs' alleged injuries from these hypothetical possibilities are far too speculative to properly allege standing.

As an initial matter, and as discussed below (*see infra* at 42–43), IGRA authorizes Class III gaming on Indian lands where, among other things, the gaming is "(B) located in a State that permits such gaming for any purpose by any person, organization, and entity."  25 U.S.C. § 2710(d)(1)(B).  The Amended Complaint, however, alleges that the gaming in question is not permitted in Oklahoma.  Am. Compl. ¶¶ 4, 109 ("offering games not permitted by IGRA").  Thus, Plaintiffs' alleged injury here is based upon the proposition—without any factual allegations to support the conclusion—that the Compacting Tribes will conduct illegal gaming.

---

[8] As discussed below, the compacts define those games, which are "Event Wagering", "House-Banked Card Games", and "House-Banked Table Games." *See, e.g.,* Comanche Compact, Part 2(A)(13), 2(A)(22-23), ECF No. 1-1 at 4, 6.

In any event, the Amended Complaint shows the speculative nature of the alleged injury.  Take, for example, event wagering.  The Amended Complaint alleges that: 1) Oklahoma law prohibits event wagering; and 2) the compacts explicitly authorize event wagering only to the extent it is authorized by law.[9]  Am. Compl. ¶¶ 3, 138.  The Amended Complaint recognizes that, rather than threaten to conduct the purportedly-harmful games, Comanche and Otoe-Missouria's Chairmen have "stated that they do not intend to conduct Event Wagering until it is lawful."  Am. Compl. ¶ 140. And the Amended Complaint does not allege any fact showing the Compacting Tribes intend to do otherwise.  In other words, the Amended Complaint itself concedes that there is no certainly impending injury from event wagering.  *See Lujan*, 504 U.S. at 564 (even "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (alteration in original) (quotation omitted)); *id.* (intentions to take actions in the future, absent concrete plans, insufficient to establish injury). The same is true with respect to house banked card games and house banked

---

[9] To the extent Plaintiffs base their claims on Interior allegedly authorizing illegal gaming, Plaintiffs fail to state a claim upon which relief can be granted because the compacts are deemed approved "only to the extent the compact is consistent with the provisions of [IGRA]."  25 U.S.C. § 2710(d)(8)(C); *see infra* at 40–44.

table games.  Am. Compl. ¶ 146.  Moreover, Plaintiffs tellingly allege that the very compact provisions that purportedly authorize illegal games are "void, even if the Secretary has approved" them.  Am. Compl. ¶¶ 48, 111; 25 U.S.C. § 2710(d)(8)(C) (each compact approved "only to the extent the compact is consistent with" IGRA).  Plaintiffs' own allegations therefore compel the conclusion that any conceivable future harm to Plaintiffs is highly speculative.

While the Court need not look beyond the Amended Complaint's contradictory allegations regarding speculative future harms, the compacts themselves confirm that alleged injuries from not-yet-approved gaming by the Compacting Tribes are too speculative to support standing.  The Otoe-Missouria and Comanche Compacts permit only "Covered Games," a term defined in the compacts.  Otoe-Missouria Compact Part 3(A), ECF No. 1-2 at 9.  Covered Games are limited to games that have been approved by Oklahoma's State Compliance Agency:

> [A]ll Gaming Machines, House-banked Card Games, Nonhouse-Banked Card Games, House-banked Table Games, Nonhouse-banked Table Games, and Event Wagering, which are conducted in accordance with the Standards, as applicable, if the operation of such game by the Tribe would require a Compact and *if such game has been approved by the SCA.*

Comanche Compact Part 2(A)(7), ECF No. 1-1 at 4 (emphasis added).  The Compacts' definition of "Event Wagering" imposes an additional hurdle by

20

explicitly limiting wagers on sporting and similar events "to the extent such wagers are authorized by law."  Comanche Compact Part 2(A)(13), ECF No. 1-1 at 4.

In sum, the Compacts only allow the types of games that Plaintiffs allege will cause them harm if those games are authorized by Oklahoma's laws and approved by Oklahoma's compliance agency.  Plaintiffs cannot challenge the Secretary's action based on the Compacting Tribes hypothetically commencing gaming at some time in the future that is explicitly disclaimed by Tribal leadership and not permitted by the compacts or by Oklahoma law.  *Amnesty Int'l USA*, 568 U.S. at 409; *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1429 n.6 (D.C. Cir. 1994) ("[R]equests for declaratory relief which aim to prevent future illegal acts often will implicate standing concerns.").

The Amended Complaint is even more speculative in alleging harms based upon the compacts providing that "[a]t some future time, the state may license up to five (5) non-tribal Event Wagering locations" or conduct iLottery.  Am. Compl. ¶¶ 136, 182–88.  The alleged harms necessarily require that Oklahoma take some additional, highly-attenuated action.  Plaintiffs do not allege that Oklahoma law currently permits the State to conduct iLottery

21

or Event Wagering, and so any hypothetical harm from a future legislative change is too speculative to support standing.[10]

Moreover, any speculative future injuries that might flow from Oklahoma itself conducting new games are not "fairly . . . trace[able]" to the Department of the Interior's action.  *Lujan*, 504 U.S. at 560–61 (alterations in original) (citations omitted).  The compacts grant Oklahoma no new authority.  Plaintiffs are incorrect that state lotteries violate IGRA and that Oklahoma could not authorize lotteries prior to the compacts. Am. Compl. ¶¶ 158–59, 184.  IGRA does not restrict states from establishing lotteries or event wagering.  *See generally* 25 U.S.C. §§ 2701–21; *see also* Oklahoma Lottery, https://www.lottery.ok.gov/ (Oklahoma already conducts lottery games) (last visited Jan. 22, 2021); *Murphy v. NCAA*, 138 S. Ct. 1461, 1478 (2018) ("prohibiting state authorization of sports gambling—violates the anticommandeering rule").  Thus, because Oklahoma already possessed the right to authorize iLottery or event wagering, the compacts becoming deemed approved by operation of statute did not injure Plaintiffs.

Rather than permit Oklahoma to authorize certain types of gaming, the compacts obtained concessions that restrict Oklahoma's already-extant

_____

[10] The compacts define "iLottery", like the other challenged games, in a manner that makes its conduct "subject to applicable law."  Comanche Compact Part 2(A)(25), ECF No. 1-1 at 7.

gaming authorities.  Comanche Compact Part 2(A)(25), ECF No. 1-1 at 7

(iLottery "may be conducted by the Oklahoma Lottery Commission, subject to

applicable law" but "shall not include games . . . which simulate Covered

Games").  And the Compacts restrict Oklahoma's potential event wagering

by, among other things, limiting Oklahoma to five non-tribal locations.  *Id.* at

Part 2(A)(13)(b), ECF No. 1-1 at 5.  If anything, Plaintiffs received a

competitive *benefit* from the concessions.

In sum, the Amended Complaint's allegations only show that any

conceivable injury from event wagering, house banked card and table games,

and iLottery cannot occur unless and until: 1) Oklahoma law permits the

games; 2) Oklahoma's State Compliance Agency approves the currently-

unauthorized gaming; 3) the Compacting Tribes take steps to conduct those

games in unidentified, possibly-unbuilt facilities; and 4) people travel to those

facilities to play the new games.  Simply put, any harm from unauthorized

gaming at unlicensed, unidentified facilities is neither actual nor imminent.

Plaintiffs fall far short of alleging a concrete, particularized, actual injury.

*Lujan,* 504 U.S. at 560.  *Amnesty Int'l USA*, 568 U.S. at 409-10.

### B.   Plaintiffs Cannot Base Standing on Alleged Injuries to the Compacting Tribes from Allegedly Improper Taxation or Regulation.

Plaintiffs cannot establish standing to challenge compacts negotiated

between the Compacting Tribes and Oklahoma based on alleged injuries to

the Compacting Tribes.  Plaintiffs allege that that the Compacts allow

Oklahoma to illegally tax and regulate the Compacting Tribes.  It would turn

Article III's case or controversy requirement on its head to permit Plaintiffs

to use purported injuries to the Compacting Tribes to invalidate Compacts

that the Compacting Tribes negotiated and do not wish invalidated.

Plaintiffs lack standing to "vindicate" the Compacting Tribes interests.

It is well-established that "one can not have standing in federal court

by asserting an injury to someone else."  *Vietnam Veterans of Am. & Veterans*

*of Modern Warfare v. Shinseki*, 599 F.3d 654, 662 (D.C. Cir. 2010).  *See also,*

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("For an injury to be

'particularized,' it 'must affect the plaintiff in a personal and individual

way.'") (quoting *Lujan*, 504 U.S. at 560 n.1); *Vt. Agency of Nat. Res. v. United*

*States ex rel. Stevens*, 529 U.S. 765, 772 (2000) ("interest unrelated to injury

in fact is insufficient to give a plaintiff standing"), *abrogated on other grounds*

*by Cook Cnty. v. United States ex rel. Chandler*, 538 U.S. 119 (2003); *Warth v.*

*Seldin*, 422 U.S. 490, 499 (1975) ("plaintiff generally must assert his own

legal rights and interests, and cannot rest his claim to relief on the legal

rights or interests of third parties").  Plaintiffs lack standing to challenge

alleged injuries to parties that are able to protect their own rights.  *Goodman*

*v. FCC*, 182 F.3d 987, 992 (D. C. Cir. 1999) (dismissing claims by plaintiff

who "does not represent the parties who sustained the injury of which he

24

complains, nor is there anything preventing the parties who were injured *from themselves protecting* their rights" (emphasis added)); *Cheeks v. Fort Myer Constr. Co.*, 722 F. Supp. 2d 93, 108 (D.D.C. 2010) (third party may establish third party standing only if third party's ability to protect own interests is hindered); *Shipkovitz v. Sullivan*, No. 08-1937 (RMC), 2010 WL 11594867, at *3–4  (D.D.C. July 30, 2010) ("Mr. Shipkovitz has no standing to sue for the benefit of the only party theoretically harmed by this business practice . . . .").

Plaintiffs contend that the compacts impose an illegal tax on Compacting Tribes.  Am. Compl. ¶¶ 85, 102, 155, 174-75, 181, 251-56.  But case law is clear that a plaintiff lacks standing to challenge the taxation of others, particularly alleged competitors.  *Fernebok v. District of Columbia*, 534 F. Supp. 2d 25, 28 (D.D.C. 2008) ("[P]laintiffs must be challenging their actual tax liability as assessed, because otherwise they would not have standing to bring this action and no case or controversy would be presented.").  Thus, Plaintiffs cannot maintain Count Five even if they are correct that the "Agreements violate IGRA's prohibition on state taxation by seeking to impose revenue sharing obligations without offering a meaningful concession of significant economic benefit to the Comanche Nation [or] Otoe-Missouria Tribe . . . ."  Am. Compl. ¶ 252.  Plaintiffs lack standing to maintain a claim based on a purported injury to the Compacting Tribes from

25

illegal taxation.  This is particularly true here because Compacting Tribes are not only unhindered in protecting their own interests, the Compacting Tribes sought to have the compacts go into effect under IGRA.  *See Goodman*, 182 F.3d at 992.

The Amended Complaint likewise does not, and cannot, allege an injury from the Compacts' allegedly illegal "regulat[ion of] Class II gaming."  Am. Compl. ¶¶ 189–200, 258.[11]  Even if Plaintiffs are correct that the Compacting Tribes negotiated a poor deal with Oklahoma, Plaintiffs cannot establish jurisdiction based on overregulation injuring their competitors.  Plaintiffs' allegation that the Compacts "limit the conduct of Class II gaming" by Compacting Tribes "in order to increase the amount of revenue paid to the State for the conduct of Class III gaming" is difficult to comprehend as a basis for standing.  *Id*. ¶ 259.  Plaintiffs' allegation appears to be that their competitors agreed to regulations that result in the State obtaining an illegal share of the Compacting Tribes' revenues.  But Plaintiffs are not injured if the Compacting Tribes are regulated by Oklahoma in a manner that might violate IGRA.

---

[11] IGRA defines "Class II gaming" to generally include bingo and certain types of nonbanked card games.  25 U.S.C. § 2703(7); *Seminole Tribe*, 517 U.S. at 48 n.1.

26

**C.    Plaintiffs' Allegations Regarding Potential Differences in Gaming Revenue Payments by the Compacting Tribes to Oklahoma are too Speculative to Sustain Standing.**

After first complaining that the Compacts require the Compacting Tribes to pay too much revenue to Oklahoma without obtaining a meaningful concession, Am. Compl. ¶¶ 174–75 (compacts require "substantially higher" revenue payments than former compacts), Plaintiffs attempt to reverse course and claim that Comanche and Otoe-Missouria "will pay significantly less in exclusivity payments" than under their former compacts.  Am. Compl. ¶¶ 129, 163.  Plaintiffs cannot have it both ways.

Plaintiffs' allegation that the Compacting Tribes will save "hundreds of thousands of dollars a year," Am. Compl. ¶ 163 (citation omitted), is based on speculation about total gaming revenues and the payments to the State that could result therefrom.  *Compare* Am. Compl. ¶ 154 (Model Compact provisions) *with id.* ¶¶ 162–175 (provision in the new compacts).  Revenue sharing payments are based on numerous factors that may vary from year-to-year, including total revenue and the types of gaming from which that revenue derives.  *See, e.g.,* Am. Compl. ¶¶ 154, 162.  Indeed, some of the new compacts' revenue sharing provisions relate to gaming that the Compacting Tribes are not yet authorized to conduct under State law, or to hypothetical future gaming in casinos that presently do not exist.  *See* Am. Compl. ¶¶ 164, 166–67.  The "if this, then that" nature of the revenue sharing provisions

27

makes the actual payments under both the Model Compacts and the new

compacts *per se* speculative.  And the Amended Complaint provides no

factual allegations to support its contention that the new compacts change

"competitive conditions" in a manner that "clearly amounts to a concrete

injury."  Am. Compl. ¶ 129 (internal citation omitted).

Further, the two cases on which Plaintiffs appear to rely in support of

standing based on "competitive injury" are inapposite.  *See* Am. Compl. ¶ 129.

In *Lac Du Flambeau Band v. Norton*, the court found that the Lac Du

Flambeau Band had standing to challenge a compact approved by operation

of statute between the Ho-Chunk Nation and Wisconsin.  422 F.3d 490, 494,

501–02 (7th Cir. 2005).  The compact there required that Wisconsin "shall not

concur" in a determination that gaming on off-reservation trust lands by

another tribe would be in the best interest of the community under 25 U.S.C.

§ 2719(b)(1)(A) if Ho-Chunk notified the state that the new gaming would

substantially reduce Ho-Chunk's revenues, unless Wisconsin indemnified Ho-

Chunk.  422 F.3d at 494.  Unlike here, the Ho-Chunk compact gave Ho-

Chunk the "anti-competitive" power to direct Wisconsin's objection to other

tribes' applications to game on trust lands.  *Id*. at 501.  Indeed, as discussed

below, Oklahoma's agreement to not object to certain future decisions under

Section 2719(b)(1)(A) neither binds Plaintiffs nor puts Plaintiffs at any

competitive disadvantage.

Likewise, in *Forest County Potawatomi Community v. United States*, this Court held that the Menominee Indian Tribe of Wisconsin had standing to intervene in a challenge to Interior's disapproval of a discrete compact amendment chosen by an arbitrator due to a "50-mile non-competition zone." 317 F.R.D. 6, 12 (D.D.C. April 14, 2016) (citation omitted).  The non-competition provision would have impeded Menominee's efforts to obtain state concurrence by requiring the state to "compensate Potawatomi for any lost revenue" from a future Menominee casino.  *Id*.

The compacts at issue in this case, by contrast, impose no anti-competitive burdens, much less similar burdens, on Plaintiffs.  *Lac Du Flambeau* and *Forest County Potawatomi* stand for the unremarkable proposition that tribes have standing to challenge compacts that impose anti-competitive conditions aimed at frustrating IGRA's purpose of promoting tribal economic development for all tribes.  *See Confederated Tribes of the Grand Ronde Cmty.,* 830 F.3d at 557.  Plaintiffs allege no such injury here. Even if Plaintiffs' contradictory allegations may be read to allege injury based on Compacting Tribes paying less revenue to Oklahoma, the Amended Complaint still fails to articulate how that speculative outcome harms Plaintiffs in any plausible way.

Plaintiffs' suggestion that IGRA prohibits the mere existence of non-identical compacts or revenue sharing provisions is simply incorrect.  *Bay*

29

*Mills Indian Cmty.*, 572 U.S. at 797 ("Michigan—like any State—could have insisted on a different deal (and indeed may do so now for the future, because the current compact has expired and remains in effect only until the parties negotiate a new one . . . .)").  First, nothing in IGRA supports Plaintiffs' position.  Second, Plaintiffs' suggestion necessarily implies that tribes must always negotiate together since that is presumably the only way all tribes would arrive at identical compacts.  Again, nothing in IGRA supports such a sweeping position.  Plaintiffs have not established that they are injured by the possibility that different tribes may negotiate different compacts with different revenue sharing provisions.[12]

### D. There is No Certainly Impending Injury from Speculative Future Gaming on Unbuilt Facilities on Unacquired Lands.

Finally, Plaintiffs cannot base standing on hypothetical competitive harms from potential future gaming conducted on land that may in the future be acquired by the United States for a Compacting Tribe's benefit and

---

[12] Counts One through Three also make the bare allegation, untethered to any alleged harm, that the Compacts are illegal and that Interior was required to disapprove the Compacts.  Am. Compl. ¶¶ 232–44.  Such generalized grievances that Government actions are illegal do not establish standing.  *Spokeo,* 136 S. Ct. at 1550 (failure to provide statutorily required information does not establish harm absent injury); *Lujan,* 504 U.S. at 560–61; *United States v. Hays*, 515 U.S. 737, 743 (1995) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing.").

deemed to be "Indian lands" under IGRA.  Plaintiffs claim that the compacts require Oklahoma's Governor to concur in "*future* off-reservation trust land acquisitions for gaming purposes" including land within the reservations or former reservations Plaintiff Tribes.  Am. Compl. ¶¶ 4, 201–31 (emphasis added).  The Amended Complaint's own allegations illustrate that the alleged harms are far too speculative to support standing.

As Plaintiffs allege, Class III gaming is lawful only on "Indian lands." *Id*. ¶ 201.  Tribes may have land placed into trust status, a necessary precondition for gaming, through processes governed by statutes and the Interior Department's regulations.  *See id*. ¶ 202.  One of the exceptions to IGRA's general prohibition on gaming on lands acquired after IGRA's passage is that tribes can game on newly acquired trust lands if the

> Secretary, after consultation with the Indian tribe and appropriate State and local officials, including officials of other nearby Indian tribes, determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination.

25 U.S.C. § 2719(b)(1)(A); Am. Compl. ¶ 202.  The Tribes do not allege that the compacts permit the Secretary to bypass consultation with "other nearby Indian tribes" prior to taking land into trust for Compacting Tribes under 25 U.S.C. § 2719(b)(1)(A).

31

The compacts, at most, may remove a single potential impediment to authorizing gaming on new lands that may be acquired in trust—the governor's concurrence with a favorable two-part determination by the Secretary. The compacts do not place land into trust, but instead recognize that possible future gaming on unidentified lands that may be acquired is "subject to the land being taken into trust pursuant to 25 U.S.C. 2719(b)(1)(A)."  Otoe-Missouria Compact Part J(2), ECF No. 1-2 at 15; Comanche Compact Part J(2), ECF No. 1-1 at 15; United Keetoowah Band Compact Part K, ECF No. 28-1 at 12; Kialegee Compact Part K, ECF No. 28-2 at 12.  The compact provisions addressing the process for how the Governor, or a future governor, may respond to a favorable two-part determination for certain possible future trust acquisitions do not bind Plaintiffs or impact Plaintiffs' alleged rights.  Indeed, Plaintiffs highlight the highly speculative nature of future gaming on these lands in alleging that "Federal regulations . . . prohibit one tribe from having land taken into trust . . . within a second tribe's reservation or former reservation in Oklahoma unless the second tribe consents in writing to the trust acquisition."  Am. Compl. ¶¶ 30, 202. Plaintiffs further allege that Compacting Tribes may not immediately game on any land Compacting Tribes may acquire outside of Compacting Tribes' reservations prior to completing a multi-step trust acquisition process. Am.

32

Compl. ¶¶ 203, 221, 225.  Thus, the Amended Complaint pleads itself out of Court—it alleges that Plaintiffs are unharmed by the State binding itself.

Indeed, Plaintiffs allege that the Governor's concurrence in off-reservation land-into-trust acquisitions is "*of illusory value* because the Chickasaw Nation and CPN can object to the acquisition under federal regulations."  Am. Compl. ¶ 85 (emphasis added).  Plaintiffs' own allegations therefore illustrate that any conceivable injury they might suffer is highly speculative because Plaintiffs retain the ability to object to land acquisition that is a necessary predicate to any future casino.  This type of highly conjectural, possible future injury is insufficient to support standing. *Amnesty Int'l USA*, 568 U.S. at 409-10; *Ctr. for Democracy & Tech. v. Trump*, No. 1:20-cv-01456 (TNM), 2020 WL 7318008 at *6 (D.D.C. Dec. 11, 2020) ("To be sure, the government might issue regulations that CDT does not like. But it is just as possible that it will not. 'Article III standing requires more than *the possibility* of potentially adverse regulation'" (citation omitted)); *Am. Ass'n of Bioanalysts v. Shalala*, No. 99-CV-00649 (TFH), 2000 U.S. Dist. LEXIS 2603, at *6-7 (D.D.C. Mar. 1, 2000) (Plaintiffs lack standing due to lack of direct injury where agency has not made relevant decision and "it is impossible to determine what effect, if any," unmade decision might have).

As this Court found in a prior case brought by one of these same Plaintiff Tribes, the possibility that the Tribe might be harmed based on a

33

chain of possibilities does not create the necessary "concrete injury-in-fact."
*Keepseagle v. Vilsack*, 307 F.R.D. 233, 240 (D.D.C. 2014).  Indeed, this Court
also recently held that the Yocha Dehe Wintun Nation could not intervene in
the Scotts Valley Band of Pomo Indians' challenge to Interior's determination
that particular land was not "Indian land" under IGRA because Plaintiffs
"cannot show that the harm it fears is imminent or 'certainly impending and
immediate,' . . . or even, that there is a 'substantial risk' that it will come
about" and cannot establish causation "where there are a series of steps with
multiple decision makers standing between [a tribe] and the proposed
development."  *Scotts Valley Band of Pomo Indians v. United States DOI*, No.
19-cv-1544 (ABJ), 2020 WL 5763583, at *6 (D.D.C. Sept. 28, 2020) (internal
citations omitted), *reconsideration denied,* No. 19-cv-1544 (ABJ), 2020 WL
8182061 (D.D.C. Dec. 4, 2020), *and appeal filed,* No. 21-50009 (D.C. Cir. Jan.
15, 2021); *see also Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 947
(7th Cir. 2000) ("any detrimental impact from the proposed Four Feathers
casino on the St. Croix reservation's economy is pure speculation at this
point.").  Plaintiffs here likewise lack standing to maintain suit on such
highly speculative, hypothetical harms.[13]

---

[13] To the extent that Plaintiffs purport to challenge "illusory promises" to
concur in future land-into trust determinations because the Compacts did not
sufficiently benefit Compacting Tribes, Am. Compl. ¶ 227, Plaintiffs fail to
identify any conceivable harm to themselves.  Plaintiffs likewise lack

In sum, the Amended Complaint fails to allege any certainly impending injury in fact that derives from the four compacts being deemed approved by operation of IGRA. The Amended Complaint should therefore be dismissed for lack of jurisdiction.

## II.    The Amended Complaint Fails to State a Plausible Claim for Relief Against Federal Defendants.

Even if the Amended Complaint had adequately pled Article III standing, the Amended Complaint would still need to be dismissed under Rule 12(b)(6) because it fails to state a plausible claim for relief.

### A.    IGRA Does Not Require the Secretary to Disapprove a Compact Where There Is an Unresolved Dispute as to State Authority.

Counts One, Two, and Three should be dismissed because, based upon the facts alleged in the Amended Complaint, the Secretary was not required to disapprove the compacts. Count One alleges that the Secretary acted arbitrarily and contrary to 25 C.F.R. § 293.7 in allowing the compacts to be deemed approved under IGRA because the Governor of Oklahoma lacked the authority to enter into the compacts on the State's behalf. Am. Compl.

---

standing to "protect" Kialegee from an agreement that Plaintiffs contend illegally "gives the State a veto power over tribal gaming and the effectiveness of an existing IGRA compact." Am. Compl. ¶ 224. Plaintiffs are not the proper parties to challenge a compact that purportedly harms the Compacting Tribes by providing an illusory promise in exchange for the Compacting Tribes' revenue. *Vietnam Veterans of Am.,* 599 F.3d at 662.

¶¶ 232–35.  Count Two alleges that the Secretary acted arbitrarily and contrary to IGRA by not disapproving the compacts over the alleged lacked of authority.  Am. Compl. ¶¶ 236–40.  And Count Three alleges that the Secretary acted arbitrarily and contrary to IGRA because the compacts were not "entered into" by the State due to the Governor's alleged lack of authority.  Am. Compl. ¶¶ 241–44.  All three counts fail to state a plausible claim for relief.

First, Counts One through Three rest upon an incorrect legal assumption.  IGRA does not require the Secretary to resolve a dispute about gubernatorial authority, nor to disapprove a compact because such a dispute exists.  The Tenth Circuit has concluded that "Congress did not intend to force the Secretary to make extensive inquiry into state law to determine whether the person or entity signing the compact for the state in fact had the authority to do so."  *Pueblo of Santa Ana*, 104 F.3d at 1557; *accord Detroit Int'l Bridge Co. v. Gov't of Canada*, 883 F.3d 895, 900 (D.C. Cir. 2018) (federal government not required to look into state law where statutory text does not require it).  Federal district courts have similarly concluded that IGRA does not require the Secretary to determine questions of state authority.  *See Langley v. Edwards*, 872 F. Supp. 1531, 1535 (W.D. La. 1995), *aff'd sub nom. Langley v. Dardenne,* 77 F.3d 479 (5th Cir. 1996) (per curiam); *Rhode Island v. Narragansett Indian Tribe*, No. Civ.A. 94–0619–T, 1995 WL 17017347 at

36

*2 (D.R.I. Feb. 3, 1995) ("[I]t is patently unreasonable to expect that potentially complex questions of that nature can be adequately addressed during the 45 day review period mandated by IGRA.").

Instead, IGRA says only that "[t]he Secretary is authorized to approve any Tribal-State compact entered into between [the] Indian tribe and [the] State governing gaming on Indian lands of such Indian tribe." 25 U.S.C. § 2710(d)(8)(A); *see also* 25 C.F.R. § 293.7 ("The Indian tribe or State should submit the compact or amendment after it has been legally entered into by both parties."). For purposes of determining that a compact has been "entered into," Department of the Interior regulations require that any compact submission include: (1) "[a] tribal resolution or other document . . . that certifies that the tribe has approved the compact or amendment in accordance with applicable tribal law;" and (2) "[c]ertification from the Governor or other representative of the State that he or she is authorized under State law to enter into the compact or amendment." 25 C.F.R. § 293.8(b), (c).

The Amended Complaint does not allege that any of the four compacts lacked a tribal or gubernatorial certification. *See* Am. Compl. ¶¶ 3, 81, 82, 101, 112. Thus, the Amended Complaint fails to make sufficient factual allegations which, if taken as true, could show that the compacts were not

"entered into" under IGRA regulations and that, as a result, should have been disapproved.  *See Iqbal*, 556 U.S. at 678.

Second, the Amended Complaint acknowledges that the dispute over the Governor's authority had not been resolved by the close of IGRA's 45-day compact review period.  The Comanche and Otoe-Missouria compacts were submitted to the Secretary on April 23, 2020, meaning the 45-day review period closed on June 7, 2020.  *See* Am. Compl. ¶ 81.  But the Oklahoma Supreme Court did not issue its decision in *Treat I* until more than a month later, on July 21.  Am. Compl. ¶ 96.  Similarly, the United Keetoowah and Kialagee compacts were submitted to the Secretary on July 1, 2020, meaning the 45-day review period closed on August 15, 2020.  *See* Am. Compl. ¶ 101. But when Plaintiffs filed their Amended Complaint on September 14, 2020, the Oklahoma Supreme Court had still not resolved the challenge to the Governor's authority to enter into those compacts.  Am. Compl. ¶ 104.

Further, the Secretary did not have the luxury of waiting for the then-pending state court proceedings to conclude.  This Court has previously held that the Secretary does not have the authority to toll the start of the forty-five day clock for review of a compact.  *Kickapoo Tribe of Indians v. Babbitt*, 827 F. Supp. 37, 44 & n.12 (D.D.C. 1993), *rev'd and remanded on other grounds*, 43 F.3d 1491 (D.C. Cir. 1995).

38

There may be a question regarding the extent to which the Comanche and Otoe-Missouria compacts remain valid today in light of the later-issued Oklahoma Supreme Court ruling.  The Oklahoma Supreme Court's ruling with respect to United Keetoowah and Kialegee compacts could raise similar questions.  Those questions, however, relate to the compacts' present-day validity (in whole or in part) and would have little to do with Plaintiffs' claims against Federal Defendants under the APA.  *See* Am. Compl. ¶ 20 (citing 5 U.S.C. § 702).  The APA claims would be reviewed based upon the administrative record.  And the administrative record could only contain information available to the Secretary during the statutorily-mandated 45-day review period; post-decisional information—like *Treat I* and the still undecided challenge to the Governor's authority for the other two compacts— would not be relevant to the question before the Court.  *See NTCH, Inc. v. FCC*, 950 F.3d 871, 881 (D.C. Cir. 2020) (per curiam), *cert. denied,* No. 20-410, 2021 WL 78115 (U.S. Jan. 11, 2021); *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).[14]

---

[14] The Oklahoma Supreme Court's conclusions are of course controlling for questions of *State law*.  IGRA, however, is silent concerning the circumstances, if any, under which a compact that "take[s] effect" under IGRA may thereafter become ineffective as a matter of *federal law*, including for the limited purposes of satisfying one of the three conditions in 25 U.S.C. § 2710(d)(1) for Class III gaming.  Because Congress has plenary authority over Indian affairs (*United States v. Lara*, 541 U.S. 193, 200 (2004)), a state has no inherent sovereign power to regulate gaming on Indian lands within

IGRA does not require the Secretary to resolve state law disputes within the forty-five-day period that Congress set forth for compact review (let alone the even shorter time periods that would have been required by the facts here).  And the Amended Complaint does not allege that the compacts, as submitted to the Secretary, lacked tribal and gubernatorial certifications. Counts One, Two, and Three therefore fail to state a claim.

> **B.    When the Secretary Does Not Act, Compacts Are Deemed Approved by Statute, But Only to the Extent They Are Consistent With IGRA.**

Counts Four through Seven similarly fail, as a matter of law, to plead a plausible claim for relief.  Counts Four through Seven assert that, because certain provisions in each of the four compacts are allegedly contrary to IGRA, the Secretary acted arbitrarily and contrary to law by allowing the compacts to become effective.  Am. Compl. ¶¶ 245–65.  The Amended Complaint, however, has pled itself right out of court.

---

its borders.  *See Cabazon Band*, 480 U.S. at 221–22.  Congress nevertheless chose to afford the states an opportunity, through the compacting process, to play a role in determining the circumstances under which such gaming will be permitted.  But the compacting process is entirely a creature of federal law in an area in which the states have no authority in the absence of IGRA. Thus, there is no substantial infringement on state sovereignty if a compact entered into by the governor of a state remains "in effect" for purposes of IGRA despite a subsequent determination that the governor lacked authority to enter into the compact as a matter of state law.

IGRA plainly states that "[i]f the Secretary does not approve or disapprove a compact . . . before the date that is 45 days after the date on which the compact is submitted to the Secretary for approval, the compact shall be considered to have been approved by the Secretary, *but only to the extent the compact is consistent with the provisions of this chapter*."  25 U.S.C. § 2710(d)(8)(C) (emphasis added).  The Amended Complaint itself states that "a compact approved by the Secretary's inaction is considered to have been approved only to the extent that it is consistent with IGRA."  Am. Compl. ¶¶ 3, 111.  Thus, if Plaintiffs are correct that certain compact provisions are contrary to IGRA, then, under Plaintiffs' own theory, those provisions were not actually deemed approved.  As a result, the Secretary could not have made the allegedly unlawful approvals that form the basis of Counts Four through Seven.

The D.C. Circuit's decision in *Amador County v. U.S. Department of the Interior*, 640 F.3d 373 (D.C. Cir. 2011), does not call for a different conclusion. *Amador County* involved the threshold question of whether the Secretary's decision not to act upon a compact within forty-five days was reviewable under the APA.  *See id.* at 380.  The D.C. Circuit concluded that allowing a compact to be deemed approved by operation of IGRA constituted reviewable final agency action.  *See id.* at 380–83.  But the question of whether a private

41

right of action exists under the APA is distinct from the question of a whether the Amended Complaint here has pled a plausible claim for relief.

The D.C. Circuit did state that IGRA obligates the Secretary to disapprove (rather than not act upon) a compact that violates provisions of IGRA. *See id.* at 381, 382. But the statement is dictum with respect to Plaintiffs' claims here. *Amador County* did not involve a claim that a specific compact provision violated IGRA; rather, the County argued that the Secretary lacked the authority to approve *any* compact because the land in question was not "Indian lands" under IGRA. *See id.* at 377; *see also Amador Cnty. v. Jewell*, 170 F. Supp. 3d 135, 140 (D.D.C. 2016) (resolving the case after remand, stating the sole question was whether the land constituted "Indian land"), *aff'd*, 707 F. App'x 720 (D.C. Cir. 2017) (per curiam).

Counts Four and Seven also fail to state a claim for other reasons. Count Four alleges that the Secretary acted arbitrarily because the Comanche and Otoe-Missouria compacts "authorize" gaming that is not otherwise permitted in Oklahoma, contrary to 25 U.S.C. § 2710(d)(1)(B). Am. Compl. ¶ 247. But IGRA authorizes Class III gaming on Indian lands where the tribe has an approved ordinance and the gaming is "(B) located in a State that permits such gaming for any purpose by any person, organization, and entity; *and* (C) conducted in conformance with a Tribal-State compact . . . ." 25 U.S.C. § 2710(d)(1)(B), (C) (emphasis added). The requirements in

subparagraphs (d)(1)(B) and (d)(1)(C) are conjunctive.  The Amended

Complaint acknowledges that the requirements are separate.  *See* Am.

Compl. ¶¶ 32, 131.  Having an approved tribal-state compact under (d)(1)(C)

does not authorize a tribe to conduct gaming activities that would otherwise

be contrary to the limitation in (d)(1)(B).  Thus, Count Four fails to a state a

claim that the Secretary unlawfully "authorized" otherwise impermissible

gaming.

Count Seven alleges that the Secretary acted contrary to trust

responsibilities owed to Plaintiffs, in violation of 25 U.S.C.

§ 2710(d)(8)(B)(iii).  *See* Am. Comp. ¶ 263.  To state a claim for breach of

trust, however, a tribe must identify a statute or regulation that imposes an

enforceable trust obligation.  *El Paso Nat. Gas Co. v. United States*, 750 F.3d

863, 892–95 (D.C. Cir. 2014).  For breach of trust purposes, IGRA is the only

statute the Amended Complaint identifies.  *See* Am. Compl. ¶¶ 5, 45, 263.

But IGRA "does not create a fiduciary duty; it is a regulatory scheme that

balances the competing interests of the states, the federal government and

Indian tribes."  *Lac Courte Oreilles Band of Lake Superior Chippewa Indians*

*of Wisconsin v. United States*, 259 F. Supp. 2d 783, 790 (W.D. Wis. 2003),

*aff'd,* 367 F.3d 650 (7th Cir. 2004).  Thus, "the Tribe[s] ha[ve] not identified a

substantive source of law establishing specific fiduciary duties," and Count

43

Seven fails to state a claim.  *El Paso Nat. Gas*, 750 F.3d at 892 (emphasis added).

Counts Four through Seven each fail to allege a plausible claim for relief and should therefore be dismissed under Rule 12(b)(6).

CONCLUSION

The Amended Complaint fails to allege a certainly impending injury in fact from the compacts becoming approved by operation of statute.  Further, because the Amended Complaint's legal theories are incorrect as a matter of law, it fails to state a plausible claim for relief.  The Amended Complaint's claims against Federal Defendants should be dismissed.

January 25, 2021

JEAN E. WILLIAMS
Deputy Assistant Attorney General

 _s/ Kristofor R. Swanson_____
KRISTOFOR R. SWANSON
(Colo. Bar No. 39378)
Senior Attorney

 __s/ Matthew M. Marinelli_____
MATTHEW M. MARINELLI
Trial Attorney

Natural Resources Section
Envt. & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

44

Tel: (202) 305-0248
Tel: (202) 305-0293
Fax: (202) 305-0506
kristofor.swanson@usdoj.gov
matthew.marinelli@usdoj.gov

45