**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE CHEROKEE NATION, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED STATES DEPARTMENT OF )<br>THE INTERIOR, *et al.*, )<br>)<br>Defendants. )<br>) | No. 1:20-cv-02167 (TJK) |

**PLAINTIFF NATIONS' NOTICE OF SUPPLEMENTAL AUTHORITIES**

Plaintiffs Cherokee Nation, Chickasaw Nation, Choctaw Nation, and Citizen Potawatomi Nation (collectively "Plaintiff Nations") submit the following supplemental authorities, which support arguments advanced prior to the issuance of these decisions. *See* ECF No. 72, Pl. Nations' Mem. Opp'n Mot. Dismiss Fed. Defs. & Def. Nelson ("Pls. Opp'n Mots. Dismiss"); ECF No. 57, Pl. Nations' Opp'n to Defs. Joe Bunch & Brian Givens' Mot. to Dismiss.

**A.** ***Bosse v. State*, 2021 OK CR 3, Ex. 1, *Hogner v. State*, 2021 OK CR 4, Ex. 2, *Sizemore v. State*, 2021 OK CR 6, Ex. 3, *Spears v. State*, 2021 OK CR 7, Ex. 4.**

In *Bosse*, *Hogner*,[1] *Spears*, and *Sizemore*, the Oklahoma Court of Criminal Appeals, the State court of last resort in criminal cases, held that the Chickasaw, Cherokee, and Choctaw Nations' Reservations, respectively, were set aside for those Nations by treaty, were never disestablished by Congress, and exist to this day within the boundaries established by their treaties.

---

[1] Plaintiff Nations previously submitted copies of the decisions in *Bosse* and *Hogner* as Exhibits 1 and 2 to their March 16 Motion for Extension of Time to File Reply in Support of Motion to Strike, ECF Nos. 84-1, 84-2. On March 19, the Oklahoma court corrected a scrivener's error in Judge Lewis's separate opinion in *Bosse*; the corrected published decision is attached here as Exhibit 1.

1

*Bosse*, 2021 OK CR 3, ¶¶ 9-12; *Hogner*, 2021 OK CR 4, ¶¶ 8, 18;[2] *Sizemore*, 2021 OK CR 6 ¶¶ 10-16; *Spears*, 2021 OK CR 7, ¶¶ 11-16. The *Bosse* court further held that Congress had not conferred jurisdiction over the prosecution of crimes in Indian country on Oklahoma, *Bosse*, 2021 OK CR 3, ¶ 27,[3] and that "federal and tribal governments have jurisdiction over crimes committed by or against Indians in Indian Country, and state jurisdiction over those crimes is preempted by federal law." *Id.* at ¶ 28.[4] Similarly, the court held that the State lacked jurisdiction to prosecute an Indian

---

[2] The *Bosse* court applied the principles set forth in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), which upheld the continuing existence of the Creek Reservation, *id.* at 2459-74. The court recognized that "'[e]ach tribe's treaties must be considered on their own terms….' *McGirt*, 140 S. Ct. at 2479[,]" and explained that "[t]he treaties concerning the Five Tribes which were resettled in Oklahoma in the mid-1800s (the Muscogee Creek, Cherokee, Chickasaw, Choctaw, and Seminole) have significantly similar provisions; indeed, several of the same treaties applied to more than one of those tribes. It is in that context that we review Petitioner's claim." *Bosse*, 2021 OK CR 3, ¶ 5. Similarly, the principles of *McGirt* were relied on to uphold the continuing existence of the Cherokee and Choctaw Reservations in *Hogner*, 2021 OK CR 4, ¶ 18, *Sizemore*, 2021 OK CR 6, ¶ 16, and *Spears*, 2021 OK CR 7, ¶ 16.

[3] As the Supreme Court found in *McGirt*, "[s]tate courts generally have no jurisdiction to try Indians for conduct committed in 'Indian country,'" 140 S. Ct. at 2459 (citing *Negonsott v. Samuels*, 507 U.S. 99, 102-03 (1993)), which 18 U.S.C. § 1151 defines "to include, among other things, 'all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation.'" *Id.* (quoting 18 U.S.C. § 1151(a)). Accordingly, the Cherokee, Chickasaw, and Choctaw Nations' reservations are "Indian country" under federal law, and are also "Indian lands" under IGRA, which defines that term to include "all lands within the limits of any Indian reservation; . . ." 25 U.S.C. § 2703(4)(a).

[4] On March 31, 2021, the State filed a Motion for Leave to File Petition for Rehearing in *Bosse*, *available at* https://bit.ly/3sPTDBM, and an attached proposed Petition, *see* Exhibit 5. On the same day, the court stayed issuance of the mandate "until this court issues a decision on Respondent's Motion for Leave to File Petition for Rehearing." *Bosse*, Order Staying Issuance of Mandate (Mar. 31, 2021), *available at* https://bit.ly/39Cbp3O. The State does not seek rehearing with regard to the court's holding that the Chickasaw Reservation continues to exist, explaining in its petition that it did not challenge the existence of the Reservation in the case because to do so would "contradict binding Supreme Court authority" namely *McGirt*. State's Petition for Rehearing at 1-2. The State seeks rehearing only on its arguments that the State has concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians, *id.* at 3-7, and on the applicability of procedural bars or waiver principles to Indian country jurisdictional claims, *id.* at 7-21. (The Petitioner in *Bosse* on April 1 filed an Objection and Motion to Strike the State's

for crimes committed on the Cherokee Reservation in *Hogner*, 2021 OK CR 4, ¶ 18, and in *Spears*, 2021 OK CR 7, ¶ 16, and on the Choctaw Reservation in *Sizemore,* 2021 OK CR 6, ¶ 16.

      1.      The *Bosse* court's determination that the Chickasaw Reservation continues to exist within the boundaries established by the Chickasaw Nation's Treaties, within which the Chickasaw Nation holds rights of self-government, *Bosse*, 2021 OK CR 3, ¶¶ 8(2)-(5), 9-12, establishes that the future concurrence provisions of the Comanche Agreement impose an injury in fact on the Chickasaw Nation by violating the Chickasaw Nation's jurisdictional integrity and sovereignty over its own Reservation, Pls. Opp'n Mots. Dismiss at 33-34 (citing First Am. & Suppl. Compl. ¶¶ 4, 263, ECF No. 26 ("Compl.")). The future concurrence provisions do so by purporting to authorize the Comanche Nation to "establish and operate…the Grady County Facility and the Love County Facility…subject to the land being taken in trust pursuant to 25 U.S.C. § 2719(b)(1)(A)," Comanche Agreement Part 4.J.2, and by purporting to give the Governor of Oklahoma's concurrence in the acquisition of land within Grady and Love Counties by the Comanche Nation, *id.* Part 4.J.2(a). Love County is entirely within the Chickasaw Reservation, as is a portion of Grady County. Compl. ¶ 207. Furthermore, the Comanche Nation has already purchased land in Grady County that is within the Chickasaw Reservation and satisfies the requirements of the future concurrence provisions, Pls. Opp'n Mots. Dismiss at 33-34. Defendant Governor Stitt has no power under IGRA to authorize the Comanche Nation to acquire land for Class III gaming purposes on the Chickasaw Reservation. IGRA only authorizes the "Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, [to] request the State in which such lands are located to enter into negotiations

---

Petition for Rehearing. The Petition, Objection, and Motion to Strike remain pending. *See* Docket, *Bosse*, *available at* https://bit.ly/3fClwJO.)

for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities," Compl. ¶ 34 (quoting 25 U.S.C. § 2710(d)(3)(A)), and the Comanche Nation has no jurisdiction over the Chickasaw Reservation.[5]  Accordingly, the future concurrence provisions of the Agreement between the Defendant Governor Stitt and Defendant Chairman Nelson, and the Secretary's no-action approval of that Agreement, "threaten th[e Chickasaw Nation's] jurisdictional integrity and sovereignty," Compl. ¶¶ 4, *see id.* ¶ 263, which constitutes an injury in fact.  *Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d 457 (2d Cir. 2013) ("actual infringements on a tribe's sovereignty constitute a concrete injury sufficient to confer standing" because "[t]his injury, . . . implicates 'the substantive interest which Congress has sought to protect [in] tribal self-government.'" (quoting *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 469 n.7 (1976)); *Mescalero Apache Tribe v. New Mexico*, 630 F.2d 724, 727 (10th Cir. 1980) ("[w]hen one sovereign entity is alleged to have usurped the authority lawfully belonging to another, the injured sovereign must have standing to challenge the usurpation."), *vacated*, 630 F.2d 724 (1981), *opinion reinstated*, 677 F.2d 55 (10 Cir. 1982), *aff'd* 462 U.S. 324 (1983); *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1242 (10th Cir. 2001) (Tribe had standing to challenge state's refusal to recognize tribal vehicle titling and registration laws because that refusal interfered with tribal self-government.); *Okla. Dep't of Env'tl Quality v. EPA*, 740 F.3d 185, 189-90 (D.C. Cir. 2014) (the "divest[iture of Oklahoma's] regulatory authority over areas

---

[5] Nor does the Defendant Governor Stitt have authority to agree to such terms under other federal law.  Oklahoma has never been authorized to exercise civil jurisdiction over the activities of Indians or Indian tribes in Indian country under Public Law 280.  28 U.S.C. § 1360; *see* 18 U.S.C. § 1162; 25 U.S.C. § 1321-1326; *Okla. Tax Comm'n v. Sac & Fox Nation*, 508 U.S. 114, 125 (1993) (recognizing that Congress gave Oklahoma "the option of assuming, criminal and civil jurisdiction 'in the areas of *Indian country* situated within such State.'  25 U.S.C. §§ 1321(a), 1322(a)[,]" and that it did not do so).

otherwise within [its] purview" is an injury in fact) (second alteration in original) (internal quotation mark omitted).[6]

2. The Oklahoma Court of Criminal Appeals' holdings that the State has no jurisdiction over crimes committed by Indians in Indian country, *Bosse,* 2021 OK CR 3, ¶ 28;[7] *Hogner* 2021 OK CR 4, ¶ 18, *Sizemore*, 2021 OK CR 6 ¶ 16, *Spears*, 2021 OK CR 7, ¶ 16, also support Plaintiff Nations' argument that "[t]he unusually large number [of] Indians living on Plaintiff Nations' Reservation[s], and the unusually large size of those reservations compared to other tribal jurisdiction[s] in Oklahoma, place a disproportionate burden on the Plaintiff Nations, which they require gaming revenues to address."  Pls. Opp'n Mots. Dismiss at 4; *see* Pl. Nations' Opp'n to Defs. Joe Bunch & Brian Givens's Mot. to Dismiss at 8; Compl. ¶ 70.  Under federal law, Indian tribes have inherent sovereign authority to exercise criminal jurisdiction over all Indians on the Reservation.  25 U.S.C. § 1301(2) (defining "powers of self-government" to include "the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians").

---

[6] The Secretary and Defendant Chairman Nelson urge that the Plaintiff Nations argue that a procedural injury obviates the need to establish an injury in fact.  Reply Br. in Supp. of Fed. Defs'. Mot. to Dismiss at 3-4, ECF No. 82; Def. Nelson's Reply in Supp. Mot. to Dismiss at 6-8, ECF No. 81.  They are wrong.  *See* Pls. Opp'n Mots. Dismiss at 10, 25 (setting out standing requirements), 26-41 (establishing injuries in fact).  The Plaintiff Nations simply showed that the normal standards of redressability and immediacy are relaxed when a procedural injury has been properly pled, *see* Pls. Opp'n Mots. Dismiss at 13-14 (discussing *Food & Water Watch v. USDA*, 325 F. Supp. 3d 39, 53 (D.D.C. 2018)); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 n.7.  As *Food & Water* squarely holds, a plaintiff alleging a procedural injury must also establish an injury in fact.  *Id.* at 53-54.  Plaintiffs have done so here.

[7] The State has petitioned for rehearing with respect to that issue, as explained *supra* at n.4.

B.     *New Jersey v. EPA*, 989 F.3d 1038 (D.C. Cir. 2021), Ex. 6.

In *New Jersey*, the District of Columbia Circuit upheld the State of New Jersey's standing to challenge EPA's revision of the rule governing "the Clean Air Act's new source review ('NSR') program for preconstruction permitting of stationary sources of air pollution." *New Jersey*, 989 F.3d at 1042. The opinion supports several arguments made by Plaintiff Nations.

1.     The court's holding in determining standing that "the court must be careful not to decide the questions on the merits for or against the plaintiffs, and must therefore assume on the merits the plaintiffs would be successful in their claims," *id.* at 1045 (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975)), supports Plaintiff Nations' argument on that issue, Pls. Opp'n Mots. Dismiss at 7, and their opposition to Defendants' reliance on merits arguments to attack Plaintiff Nations' standing. *See id.* at 18, 20-22, 29 n.29.

2.     The court further held that even though "the [EPA] Rule itself does not formally regulate petitioner, it directly implicates petitioner's ability to comply with its statutory obligations in administering the NSR program," and on that basis applied the rule that "[s]tanding is usually self-evident when the petitioner is an object of the challenged government action," *New Jersey*, 989 F.3d at 1045 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)). The *New Jersey* court's holding supports the application of the same rule in this case, in which "the challenged government action," *id.*, namely the Secretary's no-action approval of the Comanche and KTT Agreements, "directly implicates," *id.*, "the Chickasaw Nation's and Citizen Potawatomi Nation's jurisdictional integrity and sovereignty" because the future concurrence provisions of the Comanche and KTT Agreements "specifically apply to off-reservation trust land acquisitions by the signatory Tribes within Chickasaw and Citizen Potawatomi territory," Compl. ¶¶ 4; *see id.* ¶¶ 86, 263. In addition, with respect to the Chickasaw Nation, the *Bosse* decision establishes that

the Comanche Agreement directly implicates the "jurisdictional integrity and sovereignty" of the Chickasaw Reservation.  *See supra* at 3-5.

      3.      The court's ruling "that the exacerbated administrative costs and burdens imposed by the [EPA] Rule on petitioner constitute a concrete and particularized injury," *New Jersey*, 989 F.3d at 1045 (citation omitted), supports the Plaintiff Nations' argument that the "anticipatory business and financial planning" necessary to address the threat imposed on the Plaintiff Nations by the future concurrence provisions of the Agreements is an injury in fact.  Pls. Opp'n Mots. Dismiss at 36.

      4.      The court further held that "[a] petitioner alleging future injuries 'can establish standing by satisfying *either* the "certainly impending" test or the "substantial risk" test.'"  *New Jersey*, 989 F.3d at 1048 (quoting *Attias v. Carefirst, Inc.*, 865 F.3d 620, 626-27 (D.C. Cir. 2017) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014))).  That holding supports the Plaintiff Nations' argument that "concrete evidence substantiating a significant risk" of harm establishes an injury in fact, and that the future concurrence provisions of the Agreements satisfy that standard.  Pls. Opp'n Mots. Dismiss at 35-36 (quoting *In re Idaho Conservation League*, 811 F.3d 502, 509 (D.C. Cir. 2016)); *see Attias*, 865 F.3d at 627 (citing and quoting *Idaho Conservation League*, 811 F.3d at 509, as one of several cases decided after *Susan B. Anthony* that "upheld claims of standing based on allegations of a 'substantial risk' of future injury").  Both the "certainly impending" and "substantial risk" tests are satisfied here for the reasons shown *supra* at 3-5, namely the future concurrence provisions of the Comanche Agreement impose an injury in fact on the Chickasaw Nation by violating the Chickasaw Nation's jurisdictional integrity and sovereignty over its own Reservation.

5. The court's decision establishes that the Plaintiff Nations have suffered an injury in fact because the Secretary's no-action approval "makes [Plaintiff Nations'] 'task of complying with [IGRA] more difficult and onerous,'" *New Jersey*, 989 F.3d at 1046 (quoting *id.* at 1057 (Walker, J., dissenting) (quoting *West Virginia v. EPA*, 362 F.3d 861, 868 (D.C. Cir. 2004)) (cleaned up)). IGRA only allows a tribe to conduct Class III gaming on lands over which it has jurisdiction. 25 U.S.C. § 2710(d)(3)(A). Yet the Comanche Nation relies on the Secretary's action to assert the right to conduct gaming at locations on the Chickasaw Reservation, Pls. Opp'n Mots. Dismiss 33-34 (quoting Compl. ¶¶ 207-09), and has already purchased land within the Chickasaw Reservation at one of those locations. *Id.* (citing EFC No. 72-6, Decl. of Jared Easterling & Attach. A ("Easterling Decl.")). The Plaintiff Nations resisted the Secretary's approval of these provisions, Compl. ¶¶ 83-87, but to no avail, *id.* at 92-93, which has required the Chickasaw Nation to seek relief here and to monitor the situation itself, Pls. Opp'n Mots. Dismiss at 33-34 (citing Easterling Decl.). Whether the Secretary would honor the Chickasaw Nation's objection to an on-Reservation acquisition by the Comanche is also uncertain, as shown by the Secretary's express position that the outcome of such an objection is uncertain. *See* Mem. Supp. Fed. Defs. Mot. to Dismiss at 33; *Okla. Dep't of Env't Quality*, 740 F.3d at 190 (EPA's failure to state that it would take administrative action it claimed would avoid plaintiff's injury shows that injury is not speculative). "The possibility of an alternative remedy, of uncertain availability and effect, does not render [Plaintiff Nations'] injury self-inflicted," *Okla. Dep't of Env't Quality*, 740 F.3d at 190, and the Plaintiff Nations therefore have standing in this case.

//
//
//
//

167025-1

Respectfully submitted,

Dated: April 5, 2021         By:   */s/ Frank S. Holleman*
                                   Frank S. Holleman, D.C. Bar # 1011376
                                   Sonosky, Chambers, Sachse,
                                      Endreson & Perry, LLP
                                   1425 K Street, NW, Suite 600
                                   Washington DC 20005
                                   Phone no.: 202-682-0240
                                   Fax no.: 202-682-0249
                                   E-mail:  fholleman@sonosky.com

                                   Colin Cloud Hampson, D.C. Bar # 448481
                                   Sonosky, Chambers, Sachse,
                                      Endreson & Perry, LLP
                                   145 Willow Road, Suite 200
                                   Bonita, CA 91902
                                   Phone no.: 619-267-1306
                                   Fax no.: 619-267-1388
                                   E-mail:  champson@sonoskysd.com

                                   Lead Counsel for the Cherokee, Chickasaw,
                                   Choctaw, and Citizen Potawatomi Nations

                                   Sara Hill, OK Bar # 20072, *pro hac vice*
                                   P.O. Box 1533
                                   Tahlequah, OK 74465
                                   Counsel for Cherokee Nation
                                   Phone no.: 918-207-3836
                                   Fax no.: 918-458-6142
                                   E-mail: sara-hill@cherokee.org

                                   Stephen Greetham, OK Bar # 21510, *pro hac vice*
                                   4001 N. Lincoln Blvd
                                   Oklahoma City, OK 73105
                                   Counsel for Chickasaw Nation
                                   Phone no. 580-272-5236
                                   E-mail: stephen.greetham@chickasaw.net

                                   *Additional Counsel on Following Page*

9

>Bradley Mallett, OK Bar # 15810, *pro hac vice*
>P.O. Box 1210
>Durant, OK 74702
>Counsel for Choctaw Nation
>Phone no.: 580-380-3024
>E-mail: bmallett@choctawnation.com
>
>Gregory M. Quinlan, NM Bar # 4450, CO Bar # 21605, *pro hac vice*
>George J Wright, OK Bar # 21873, *pro hac vice*
>1601 S Cooper Dr
>Shawnee, OK 74801
>Counsel for Citizen Potawatomi Nation
>Phone no. 405-275-3121
>Email: george.wright@potawatomi.org
>
>*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2021, I electronically filed the above and foregoing document and attachments with the Clerk of Court via the ECF System for filing.

*/s/ Frank S. Holleman*
Frank S. Holleman
