**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE CHEROKEE NATION, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02167 (TJK) |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| THE INTERIOR, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
COMPEL PRODUCTION OF DOCUMENTS NOT INCLUDED IN ADMINISTRATIVE
RECORD AS PRODUCED**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................... 1

    A.     Proceedings in This Action. .................................................................... 1

III.   LEGAL STANDARD ........................................................................................ 4

IV.    ARGUMENT ..................................................................................................... 7

    A.     All Three Criteria for Supplementation are Satisfied. ............................ 7

    B.     The Deliberative Process Privilege Does Not Apply in these
        Circumstances. ...................................................................................... 13

        1.     The Agreements were Submitted to Federal Defendants to
            Advance Defendant Governor Stitt's Strategy to Secure a
            Proprietary Interest in Tribal Gaming in Oklahoma. ................. 15

        2.     The Administrative Record Shows the Secretary Knew the
            Agreements Were Invalid, and That He Acted in Bad Faith
            and Improperly by Allowing the Agreements to Go into
            Effect. ...................................................................................... 16

        3.     Plaintiff Nations' Causes of Action are Aimed at the
            Defendant Secretary's Subjective Motivations and
            Government Malfeasance. .......................................................... 21

    C.     The Plaintiff Nations Are Entitled to Production of All Documents
        Improperly Withheld, or a Privilege Log. ............................................. 22

V.     CONCLUSION ................................................................................................ 24

# TABLE OF AUTHORITIES

## CASES

*Am. Wildlands v. Kempthorne*, 530 F.3d 991 (D.C. Cir. 2008) ...................................................7

*Amador County v. Salazar*, 640 F.3d 373 (D.C. Cir. 2011) .............................................. 3, 9-10, 19

*Asarco, Inc. v. U.S. EPA*, 616 F.2d 1153 (9th Cir. 1980) .............................................11

*Bank of Dearborn v. Saxon*, 244 F. Supp. 394 (E.D. Mich. 1965),
   aff'd sub nom. *Bank of Dearborn v. Mfrs. Nat'l Bank of Detroit*,
   377 F.2d 496 (6th Cir. 1967) ......................................................................6, 14, 22

*Black v. Sheraton Corp. of Am.*, 564 F.2d 531 (D.C. Cir. 1977) .................................................14

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) ...........................................11

*Califano v. Sanders*, 430 U.S. 99 (1977) ...........................................................................4

*Camp v. Pitts*, 411 U.S. 138 (1973) .................................................................................12

*Canadian Ass'n of Petrol. Producers v. FERC*, 254 F.3d 289 (D.C. Cir. 2001) ...........................11

*Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318 (D.D.C. 1966) .................14, 22

*Cherokee Nation v. Stitt*, 475 F. Supp. 3d 1277 (W.D. Okla. 2020) .............................................16

*Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) .................................4, 12, 13

*Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*,
   96 F.R.D. 619 (D.D.C. 1983) ...............................................................................6

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) ...........................13

*Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019) ...............................................4, 7, 11, 23

\* *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015) ..............................5, 7, 9, 11

*Doe ex rel. Doe v. District of Columbia*, 230 F.R.D. 47 (D.D.C. 2005) .......................................13

*Doraiswamy v. Sec'y of Labor*, 555 F.2d 832 (D.C. Cir. 1976) .................................................12

*Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275 (D.C. Cir. 1981) ...........................................11, 12

*Fund for Animals v. Williams*, 391 F. Supp. 2d 191 (D.D.C. 2005) ...........................................5

*Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44 (D.C. Cir. 2013) .................................................4

*In re Franklin Nat'l Bank Secs. Litig.*, 478 F. Supp. 577 (E.D.N.Y. 1979) ...............................6, 14

\* *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) .........................................................5-6, 21, 23

*In re Subpoena*, 967 F.2d 630 (D.C. Cir. 1992) .....................................................6, 13-14

\* *In re Subpoena Duces Tecum*, 156 F.3d 1279 (D.C. Cir. 1998) ........................................... *passim*

\* *In re Treat*, 2020 OK AG 8, 2020 WL 2304499 (Okla. A.G. May 5. 2020) ...........8, 14, 17, 18, 19

*Judicial Watch, Inc. v. FDA*, 449 F.3d 141 (D.C. Cir. 2006) .......................................................13

*Keating v. Edmondson*, 37 P.3d 882, 2001 OK 110 .......................................................................14

*Kickapoo Tribe of Indians v. Babbitt*, 827 F. Supp. 37 (D.D.C. 1993),
  *rev'd on other grounds*, 43 F.3d 1491 (D.C. Cir. 1995) ....................................10, 16

*Marcum v. Salazar*, 751 F. Supp. 2d 74 (D.D.C. 2010) ....................................4, 5, 23, 24

*Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ........................................................................................................11

*Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Hum. Servs.*,
  631 F. Supp. 2d 23 (D.D.C. 2009) ............................................................................5, 9

*New Life Evangelistic Ctr., Inc. v. Sebelius*, 753 F. Supp. 2d 103 (D.D.C. 2010) ........11

*New York v. Salazar*, 701 F. Supp. 2d 224 (N.D.N.Y. 2010) ....................................7, 23

*Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73 (D.D.C. 2018) ....................................5, 7, 23

*Oceana, Inc. v. Ross*, 920 F.3d 855 (D.C. Cir. 2019) ....................................4, 5, 8, 13

*PPL Wallingford Energy LLC v. FERC*, 419 F.3d 1194 (D.C. Cir. 2005) ........... 10-11

*Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997) ..............................10, 16

*Rosee v. Bd. of Trade of City of Chi.*, 36 F.R.D. 684 (N.D. Ill. 1965)....................14, 22

*Sokaogon Chippewa Cmty. v. Babbitt*, 961 F. Supp. 1276 (W.D. Wis. 1997) ................7

\* *Stand Up for Cal.! v. U.S. Dep't of Interior*,
  315 F. Supp. 3d 289 (D.D.C. 2018) ............................................................... *passim*

*State ex rel. York v. Turpen*, 681 P.2d 763 (Okla. 1984) ................................... 14, 17-18

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867 (1st Cir. 1995) ................6

*Treat v. Stitt*, 2020 OK 64, 473 P.3d 43........................................................................15, 18

*Treat v. Stitt*, 2021 OK 3, 481 P.3d 240 ...........................................................................21

*Union Savings Bank of Patchogue v. Saxon*, 209 F. Supp. 319 (D.D.C. 1962)............12

*V. E. B. Carl Zeiss, Jena v. Clark*, 384 F.2d 979
  (D.C. Cir. 1967) (per curiam) ........................................................................................14

*Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788 (D.C. Cir. 1984) .................4

## STATUTES AND RULES

25 U.S.C.

    § 2710(b)(2)(A)..........................................................................................................22

    § 2710(b)(3)(B) ..........................................................................................................10

    § 2710(d)(1)(A)(ii) .....................................................................................................22

    § 2710(d)(8)(A) ..........................................................................................................10

    § 2710(d)(8)(B) ..........................................................................................................10

    § 2710(d)(8)(B)(i) ......................................................................................................10

§ 2710(d)(8)(C) ..............................................................................................10

Local Rule 7(a) ..................................................................................................1

Local Rule 7(n)(1) .............................................................................................1

Local Rule 7(n)(2) .............................................................................................1

Okla. Const. art. VI

§ 8 ...........................................................................................................15

§ 11 .........................................................................................................15

Okla. Stat. tit. 3A

§§ 261-282 .............................................................................................15

§§ 280-281 .............................................................................................15

Okla. Stat. tit. 74

§ 18b(A)(18) ..........................................................................................14

§ 1221(C)(1)-(2) .....................................................................................15

§ 1222(A) ...............................................................................................15

## OTHER AUTHORITIES

85 Fed. Reg. 38,919 (June 29, 2020) ...............................................................2

85 Fed. Reg. 55,472 (Sept. 8, 2020) ...............................................................21

American Heritage Dictionary (5th ed. 2018) ................................................22

U.S. Gov't Accountability Off., *GAO-15-355, Indian Gaming: Regulation and Oversight by the Federal Government, States, and Tribes* (2015) ................... 8-9

Webster's Third New International Dictionary (2002)....................................22

## I.      INTRODUCTION

Pursuant to the Court's Minute Order of January 3, 2023 and Local Rule 7(a), Plaintiffs Cherokee Nation, Chickasaw Nation, Choctaw Nation of Oklahoma, and Citizen Potawatomi Nation ("Plaintiff Nations") respectfully request that the Court order the Defendants United States Department of the Interior, Secretary of the Interior Deb Haaland, and Assistant Secretary-Indian Affairs Bryan Newland (collectively, "Federal Defendants")[1] to complete the administrative record by producing the recommendation that the Office of Indian Gaming ("OIG") provided to Defendant Secretary on the Comanche and Otoe-Missouria Agreements on or before June 1, 2020, and also to produce other documents that they have withheld as deliberative and pre-decisional or on any other ground, or to provide a privilege log describing the documents withheld and the basis for withholding them.  This relief is justified by Defendant Secretary's bad faith and improper conduct in allowing the no action approvals of the Agreements to go into effect, as we now show.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

**A.      Proceedings in This Action.**

Plaintiff Nations have filed Administrative Procedure Act ("APA") challenges to Defendant Secretary's no action approvals of two agreements, the Comanche Nation Agreement, ECF No. 104, Ex. 1; Administrative Record ("AR#")[2] AR2-AR34, and the Otoe-Missouria Tribe Agreement, ECF No. 104, Ex. 2, AR35-AR68 (collectively, "Agreements"), that purport to be

---

[1] References to Defendant Secretary or Defendant Assistant Secretary include those defendants' predecessors in office.

[2] Although Local Rule 7(n)(1) only requires production of an appendix with portions of the administrative record for dispositive motions, Plaintiff Nations believe that such an appendix would be useful in the resolution of this motion, and intend to work with opposing counsel to develop an appendix and provide it to the Court consistent with the process described in Local Rule 7(n)(2) after the reply memorandum on this motion is filed.

Indian Gaming Regulatory Act ("IGRA") compacts.[3]   The Otoe-Missouria Tribe and the Comanche Nation submitted the Agreements to the Secretary for approval under IGRA.   *See* AR1, AR155-156.   Extensive comments detailing the invalidity and legality of those agreements were then submitted to the Secretary, including comments from the Oklahoma Attorney General enclosing an official Attorney General Opinion "explaining why the compacts had not been validly entered into by Oklahoma" and explicitly stating that under state law his opinion bound Defendant Governor Stitt absent a contrary ruling of a state court.   Mem. Op. at 8 (citing Second Am. & Supp'd Compl. ¶¶ 82-90, ECF No. 104 ("Compl.")); *see* AR518-528.   Nevertheless, Defendant Secretary approved the Agreements by inaction, without making any administrative findings or issuing a decision document. *See* Mem. Op. at 8 (citing 85 Fed. Reg. 38,919 (June 29, 2020)).

Plaintiff Nations assert in their APA claims that Defendant Secretary violated IGRA by considering and allowing the Agreements to go into effect because they were not "entered into" by the State as required by IGRA, and also that the Defendant Secretary violated IGRA by allowing the Agreements to go into effect despite the fact that their substantive terms are contrary to IGRA. *See* Mem. Op. at 10-11.   Federal Defendants and Defendant Chairman Woommavovah moved to dismiss the APA claims on standing grounds and, in the case of Federal Defendants, for failure to state a claim. *Id.* at 12.   The Court denied the motions as to the claims related to the Otoe-Missouria and Comanche Agreements.   Mem. Op. at 16, 34, 44.[4]   The Court found Plaintiff Nations' allegations established standing with respect to the claims challenging the no-action approvals of

---

[3] Plaintiff Nations also seek declaratory relief against Defendants Governor of Oklahoma and Chairmen of the Otoe-Missouria Tribe and Comanche Nation, not implicated by this motion. *See* Memorandum Opinion and Order at 10-11, ECF No. 157 ("Mem. Op.") (citing Compl. ¶¶ 12-19, 266-68).

[4] The Court granted the Federal Defendants' motion to dismiss on standing grounds as to Plaintiff Nations' claims regarding agreements submitted by two other tribes and disposed of other pending motions on grounds not relevant here. *Id.* at 1, 40-44.

the Comanche and Otoe-Missouria Agreements.  *Id.* at 34.  The Court held that under *Amador County v. Salazar*, 640 F.3d 373, 381 (D.C. Cir. 2011), the Secretary was obligated to determine whether the Agreements were validly "entered into" under state law during the forty-five-day review period.  Mem. Op. at 35-36.  The Court also rejected Federal Defendants' assertion that there was a dispute as to whether the Agreements were validly "entered into" under state law because the Attorney General's "official legal opinion to the Secretary explaining that the Governor lacked authority to enter into these compacts under Oklahoma law" is "legally binding on all state officials whom it affects until it is overruled judicially," including the Governor.  *Id.* at 36.  "Thus, any state-law dispute between the Governor and others about whether the compacts were validly 'entered into' was resolved—at least for the time being and for the Secretary's purposes—during the forty-five-day review period."  *Id.*

The Court then set a schedule for production of the administrative record, including a schedule for informal resolution of disputes between the parties.  Minute Order of Jan. 3, 2023. Pursuant to that Minute Order, on March 2, 2023, the Federal Defendants gave notice of lodging of the administrative record and served it on the parties.  ECF No. 164.  The administrative record shows that the Office of Indian Gaming ("OIG") prepared a "recommendation" regarding the Agreements that was submitted to the Secretary's Office, AR2124.  Plaintiff Nations' counsel requested that OIG's recommendation be included in the administrative record, *see* Ex. A, Letter from Colin C. Hampson and Frank S. Holleman to Matthew Marinelli (Mar. 23, 2023).  In response, counsel for the Federal Defendants confirmed that Interior "identified a document that might be considered OIG's recommendation to the Secretary" but refused to provide it, expressing the view that "an OIG recommendation is the type of 'predecisional and deliberative document' that is 'not part of the administrative record.'"  Ex. B, Letter from Matthew Marinelli to Colin C.

Hampson at 2 (Mar. 29, 2023) (quoting *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019)). Federal Defendants subsequently supplemented the administrative record by adding one email and two attachments to that email, omitting the OIG recommendation.[5]

### III.   LEGAL STANDARD

The legal standards that apply to this motion are well settled.   "[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'"   *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013)) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (Under the APA, judicial review of agency action is "to be based on the full administrative record that was before the Secretary at the time he made his decision.").   To allow the court to conduct such review, "[i]t is the agency's responsibility to compile for the court all information it considered either directly or indirectly."   *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010) (citation omitted); *see also Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2574 (2019).   "[T]he reasonableness of the agency's action is [then] judged in accordance with its stated reasons."   *In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279 (D.C. Cir. 1998).

The Court may order the record to be supplemented after the agency provides the purported administrative record, where

> (1) the agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the district court needed to supplement the record with background information in order to determine whether the agency considered all of

---

[5]  In preparing this motion, counsel for Plaintiff Nations further determined that comments submitted by Plaintiff Citizen Potawatomi Nation to the Defendant Secretary, Defendant Assistant Secretary, and OIG were not included in the administrative record.  They are currently seeking to resolve that issue informally with counsel for Federal Defendants.

the relevant factors; or (3) the agency failed to explain administrative action so as
to frustrate judicial review.

*Stand Up for Cal.! v. U.S. Dep't of Interior*, 315 F. Supp. 3d 289, 293 (D.D.C. 2018) (quoting *Dist.
Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015)).  "A plaintiff must provide
'concrete evidence' and 'identify reasonable, non-speculative grounds for its belief that the
documents were considered by the agency and not included in the record.'"  *Id.* (quoting *Marcum*,
751 F. Supp. 2d at 78; *accord Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78-79 (D.D.C. 2018).

In compiling the record, an agency may generally exclude predecisional and deliberative
documents because "the actual subjective motivation of agency decisionmakers is immaterial as a
matter of law."  *In re Subpoena Duces Tecum*, 156 F.3d at 1279-80 (emphasis added); *accord
Oceana, Inc.*, 920 F.3d at 865 (citing *In re Subpoena Duces Tecum*, 156 F.3d at 1279).  That
exclusion is based on the principle that "deliberative intra-agency records ordinarily are
privileged," *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005) (citation
omitted); *accord Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Hum. Servs.*, 631 F.
Supp. 2d 23, 27 (D.D.C. 2009) (citations omitted).  The privilege exists in order to "'prevent injury
to the quality of agency decisions' by allowing government officials freedom to debate alternative
approaches in private," *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).  However, when
"the cause of action is directed at the agency's subjective motivation," "the deliberative process
privilege is unavailable."  *In re Subpoena Duces Tecum*, 156 F.3d at 1280.  In addition, the
privilege can be overcome by "a sufficient showing of need," which is determined "flexibly on a
case-by-case, ad hoc basis."  *In re Sealed Case*, 121 F.3d at 737.  "For example, where there is
reason to believe the documents sought may shed light on government misconduct, 'the
[deliberative process] privilege is routinely denied,' on the grounds that shielding internal
government deliberations in this context does not serve 'the public's interest in honest, effective

government.'"  *Id.* at 738 (quoting *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867,

885 (1st Cir. 1995)); *see Texaco P.R.*, 60 F.3d at 885 (citing *In re Franklin Nat'l Bank Secs. Litig.*,

478 F. Supp. 577, 582 (E.D.N.Y. 1979); *Bank of Dearborn v. Saxon*, 244 F. Supp. 394, 401-03

(E.D. Mich. 1965), *aff'd sub nom. Bank of Dearborn v. Mfrs. Nat'l Bank of Detroit*, 377 F.2d 496

(6th Cir. 1967)).[6]  For that reason, the privilege is not available and predecisional, deliberative

documents can be included in the record when there is a showing of bad faith or improper behavior

by the government.  *See In re Subpoena Duces Tecum*, 156 F.3d at 1279-80; *Stand up for Cal.!*,

315 F. Supp. 3d at 296-98.

 A plaintiff seeking production of documents withheld from the administrative record need

only make a *prima* facie showing of bad faith or improper behavior, which may be established

from the circumstances as a whole.  *Stand Up for Cal.!*, 315 F. Supp. 3d at 293, 296 (even if each

individual fact or piece of evidence "is not dispositive standing alone," the circumstances may "all

together establish a *prima facie* case"); *see Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank*

*Bd.*, 96 F.R.D. 619, 621 (D.D.C. 1983) (plaintiff need not prove, on the existing evidence, that

improper behavior or bad faith conduct occurred; rather, the plaintiff must show "grounds to

*suspect* bad faith or improper behavior not apparent from the administrative record" (emphasis

added) (citations omitted)).  In determining whether a *prima facie* case of bad faith or improper

behavior has been shown, "courts 'should not overlook plausible, competing inferences that might

be drawn from the evidence presented,' and [] even if 'events of which plaintiffs complain could

be considered innocent in and of themselves . . . their combination [may] raise[] substantial

---

[6] *In re Sealed Case* described the inquiry more generally as "taking into account factors such as
'the relevance of the evidence,' 'the availability of other evidence,' 'the seriousness of the
litigation,' 'the role of the government,' and the 'possibility of future timidity by government
employees.'"  121 F.3d at 737-38 (quoting *In re Subpoena*, 967 F.2d 630, 634 (D.C. Cir. 1992)).

suspicion.'" *Stand Up for Cal.!*, 315 F. Supp. 3d at 298 (quoting *Sokaogon Chippewa Cmty. v. Babbitt*, 961 F. Supp. 1276, 1281, 1286 (W.D. Wis. 1997)) (second alteration in original).

Where the plaintiff has made a sufficient showing of bad faith or improper behavior, the court may order production of documents withheld from the administrative record as predecisional and deliberative. *New York v. Salazar*, 701 F. Supp. 2d 224, 244 (N.D.N.Y. 2010); *see also Dep't of Commerce*, 139 S. Ct. at 2573-74 (upholding district court's order compelling agency to complete administrative record). Or a court may order the agency to produce a privilege log showing all documents that were withheld on that basis, in order to determine whether the documents are actually predecisional and deliberative. *E.g.*, *Stand Up for Cal.!*, 315 F. Supp. 3d at 298-99.

## IV.   ARGUMENT

### A.   All Three Criteria for Supplementation are Satisfied.

The D.C. Circuit has identified three circumstances in which a court may order that an administrative record be supplemented. *See supra* at 4-5; *Dist. Hosp. Partners*, 786 F.3d at 55 (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)); *Stand Up for Cal.!*, 315 F. Supp. 3d at 293. Each exists here. As to all three, Plaintiff Nations have "'put forth concrete evidence' and 'identif[ied] reasonable, non-speculative grounds for [their] belief that the documents were considered by the agency and not included in the record.'" *Oceana, Inc.*, 290 F. Supp. 3d at 78-79 (citation omitted).

First, the limited administrative record already produced by the Federal Defendants shows that OIG prepared a recommendation that was considered by Defendant Secretary and that Federal Defendants deliberately did not include it in the record. The administrative record contains a June 1, 2020 email from the Director of OIG to a Cherokee Nation official, confirming that a recommendation had been provided to the Secretary, AR2124, but does not include the

recommendation itself.  And counsel for Federal Defendants admitted such a document exists. After inquiry from counsel for Plaintiff Nations, opposing counsel confirmed that Interior "identified a document that might be considered OIG's recommendation to the Secretary" but declined to include it in the administrative record.  Ex. B at 2 (quoting *Oceana, Inc.*, 920 F.3d at 865).

That the OIG recommendation exists and was provided to the Defendant Secretary is also consistent with OIG's review process, as set forth in a Government Accountability Office ("GAO") report.  In accordance with OIG's review process, that recommendation would have been developed as the Department received comments and other materials on the invalidity of the Agreements, including the Attorney General's opinion *In re Treat*, 2020 OK AG 8, 2020 WL 2304499 (Okla. A.G. May 5. 2020).  After receiving the Agreements, OIG's standard procedure would have been to "conduct an initial review of compacts to ensure that all necessary information was included" and then to "develop[] a draft briefing memo identifying any potentially problematic areas for Interior's Office of the Solicitor's review."  U.S. Gov't Accountability Office, *GAO-15-355, Indian Gaming: Regulation and Oversight by the Federal Government, States, and Tribes* 15 (2015), https://www.gao.gov/assets/gao-15-355.pdf ("GAO Rep.")  As part of that initial review, within ten days of receiving the compact package—the proposed compact and any material submitted with it—OIG would have reviewed "the package for completeness, and request[ed] additional information from the tribe or state, as needed."  *Id.* at 17.  Once the Solicitor's Office receives the compact, draft briefing memo, and any supporting documentation, from OIG, it then conducts a legal review within an additional ten-day period, which includes "ensur[ing] that compacts do not violate: (1) IGRA; (2) any federal laws that do not relate to jurisdiction over gaming on Indian lands; or (3) the trust obligation of the United States to Indians."  *Id.* at 15. After

the Solicitor's Office conducts its legal review of materials provided by OIG, the OIG "finalizes its analysis and submits a recommendation to the Assistant Secretary of Indian Affairs who makes a final decision on whether to approve the compact." *Id.*

The substantial and compelling evidence before OIG that the Agreements had not been "entered into" under state law and that they contained provisions that were contrary to IGRA strongly supports the inference that OIG's recommendation was adverse to Defendant Secretary's decision to allow the Agreements to go into effect through inaction.  So Plaintiff Nations have a concrete, reasonable, and non-speculative basis for saying that "the agency deliberately . . . excluded documents that may have been adverse to its decision." *Stand Up for Cal.!*, 315 F. Supp. 3d at  293 (quoting *Dist. Hosp. Partners*, 786 F.3d at 55).  And although Federal Defendants may take the position that the OIG recommendation was not "excluded," because it is a predecisional and deliberative document that is not part of the record in the first instance, that is only true where there has been no "showing of bad faith or improper behavior" by the agency decisionmaker. *See Nat'l Ass'n of Chain Drug Stores.*, 631 F. Supp. 2d at 27 (quoting *In re Subpoena Duces Tecum*, 156 F.3d at 1279).  As shown *infra* § IV.B.2, Federal Defendants engaged in bad faith and improper behavior, so the privilege does not apply, and the OIG recommendation should be included in the administrative record.

As to the second and third circumstances justifying supplementation, Defendant Secretary's failure to provide any rationale for his decisions both makes it impossible for this Court "to determine whether the agency considered all of the relevant factors" and "frustrates judicial review," *Dist. Hosp. Partners*, 786 F.3d at 55, which makes it necessary to include the OIG recommendation and the documents related to its development (which the GAO Report shows also exist).  For example, the record contains no indication whether the Secretary considered, as the

D.C. Circuit held in *Amador County*, that "the Secretary must . . . disapprove a compact if it would violate any of the three limitations in [25 U.S.C. § 2710(d)(8)(B)], and those limitations provide the 'law to apply'" in an APA challenge.  640 F.3d at 381.[7]  Those limitations include that a compact must be disapproved if it violates any provision of IGRA.  25 U.S.C. § 2710(d)(8)(B)(i); *Amador County*, 640 F.3d at 380-81.  Further, under IGRA, tribal Class III gaming can only be conducted pursuant to a compact that has been "entered into" by the State where the gaming is located.  25 U.S.C. § 2710(b)(3)(B), (d)(8)(A).  And "[s]tate law governs whether the state has 'legally entered into' the compact. . . .  If a compact has not been legally entered into under state law, it is 'invalid' under IGRA."  Mem. Op. at 4 (citing *Kickapoo Tribe of Indians v. Babbitt*, 827 F. Supp. 37, 46 (D.D.C. 1993), *rev'd on other grounds*, 43 F.3d 1491 (D.C. Cir. 1995); *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1555, 1559 (10th Cir. 1997)).  The comments before Defendant Secretary raised myriad substantive violations of IGRA and demonstrated that the State had not "entered into" the Agreements, *see* Mem. Op. at 11; *infra* at 16-19.  These violations of law are the basis of Plaintiff Nations' APA claims that Defendant Secretary's consideration of the Agreements and his decisions to allow the Agreements to go into effect without an opinion were "arbitrary, capricious, and contrary to law."  Compl. ¶¶ 3-4, 124-125, 185, 232-265.

Defendant Secretary's decisions to allow the Agreements to go into effect and to do so without a decisional document are squarely within the scope of the Court's review, and the lack of a decision will frustrate the Court's review.  In order to survive APA review, "an agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.  An agency's failure to respond

---

[7] And 25 U.S.C. § 2710(d)(8)(C), "which governs approval by inaction, includes no exemption from this obligation to disapprove illegal compacts."  640 F.3d at 381.

meaningfully to objections raised by a party renders its decision arbitrary and capricious." *PPL Wallingford Energy LLC v. FERC*, 419 F.3d 1194, 1198 (D.C. Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); and *Canadian Ass'n of Petrol. Producers v. FERC*, 254 F.3d 289, 299 (D.C. Cir. 2001)) (quotation marks omitted).  "[I]n order to permit meaningful judicial review," so that a court can evaluate whether the agency complied with the APA, "an agency must 'disclose the basis' of its action," by "offer[ing] genuine justifications for important decisions." *Dep't of Commerce*, 139 S. Ct. at 2573, 2575-76 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167-69 (1962)). And "[a]gency action must generally be affirmed on the grounds originally stated by the agency; a reviewing court may not attempt to supply 'a reasoned basis for the agency's action that the agency itself has not given.'" *New Life Evangelistic Ctr., Inc. v. Sebelius*, 753 F. Supp. 2d 103, 112 (D.D.C. 2010) (quoting *Motor Vehicles Mfrs. Ass'n*, 463 U.S. at 43).  A court cannot "adequately discharge its duty to engage in a 'substantial inquiry' if it [is] required to 'take the agency's word that it considered all relevant matters.'" *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981) (quoting *Asarco, Inc. v. U.S. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980)).

Therefore, supplementation with the OIG recommendation and related documents is required so this Court may determine whether "the agency considered all of the relevant factors," which is impossible to do on the current record, because "the agency failed to explain administrative action so as to frustrate judicial review," by failing to provide decisions on his improper no-action approvals. *See Stand Up for Cal.!*, 315 F. Supp. 3d at  293 (quoting *Dist. Hosp. Partners*, 786 F.3d at 55).  Defendant Secretary's no-action approvals are phantoms, impervious to review without further documentation.  As the current administrative record provides no such documentation, it is impossible to determine whether, and if so how, Defendant

Secretary *actually* considered the information put before him by Plaintiff Nations and the Oklahoma Attorney General and attempted to resolve the issues they raised.  Instead, Federal Defendants' counsel asks the Court to "take [their] word" that those Defendants considered all relevant questions in making the challenged decisions.  But the Court's determination must be based on more than that—it must be based on information about what the agency actually concluded, not what the agency's counsel says to keep that information secret.

Although Plaintiff Nations only seek supplementation to stop Federal Defendants from stonewalling this Court, the law provides a number of potential remedies.  "When the record is inadequate, a court may 'obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary.'"  *Costle*, 657 F.2d at 285 (quoting *Camp v. Pitts*, 411 U.S. 138, 143 (1973), and citing *Doraiswamy v. Sec'y of Labor*, 555 F.2d 832, 842-43 (D.C. Cir. 1976)); *see Overton Park*, 401 U.S. at 420 ("[S]ince the bare record may not disclose the factors that were considered or the Secretary's construction of the evidence it may be necessary for the District Court to require some explanation in order to determine if the Secretary acted within the scope of his authority and if the Secretary's action was justifiable under the applicable standard."); *Union Savings Bank of Patchogue v. Saxon*, 209 F. Supp. 319, 319-20 (D.D.C. 1962) (allowing limited discovery into how agency decisionmaker decided to approve issuance of a bank certificate, allegedly in violation of federal law, based on allegations of improper favorable treatment of that bank).  "The new materials should be merely explanatory of the original record and should contain no new rationalizations."  *Costle*, 657 F.2d at 285 (citation omitted).

The need for such an inquiry might be avoided here by the production of the OIG recommendation and the documents OIG used to develop it, as the OIG recommendation should

12

have included an analysis relevant to the Secretary's no-action approvals of the Agreements, and the Court must review that analysis in order to evaluate the Secretary's decisions. As the recommendation was produced before a decision was reached, it would by necessity be "merely explanatory of the original record" and "contain no new rationalizations." And, if the OIG recommendation is contrary to the Defendant Secretary's decisions to allow the Agreements to go into effect by inaction, that will both inform the Court of the scope of the materials put before the agency decisionmakers which they were to consider, and help the Court evaluate the reasonableness of those decisions.

## B.    The Deliberative Process Privilege Does Not Apply in these Circumstances.

Counsel for Federal Defendants has taken the position that OIG recommendations are predecisional and deliberative.[8] *Supra* at 3-4. Although Federal Defendants have not specifically asserted the deliberative process privilege as to the OIG recommendation in this case, nor made a proper showing that the privilege applies, *see Doe ex rel. Doe v. District of Columbia*, 230 F.R.D. 47, 51 (D.D.C. 2005), they may try do so in response to this motion. Therefore, we explain why the privilege does not apply to predecisional or deliberative documents in this case.

The government cannot withhold documents on the basis of the deliberative process privilege where there is "a strong showing of bad faith or improper behavior," *Overton Park*, 401 U.S. at 420; *Oceana, Inc.*, 920 F.3d at 865, which is shown when the evidence as a whole establishes a *prima facie* case for bad faith, *Stand Up for Cal.!*, 315 F. Supp. 3d at 296; *see In re Subpoena*, 967 F.2d at 634 ("the privilege may be overridden where necessary to . . . 'shed light

---

[8] "[A] document [is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

on alleged government malfeasance'" (quoting *In re Franklin*, 478 F. Supp. at 582)).   Such improper behavior by federal officials includes, *inter alia*, using the federal administrative process to circumvent state law requirements and authorize competition with a plaintiff's business that would otherwise be contrary to state law, *see Saxon*, 244 F. Supp. at 400-03, or colluding with private parties to use federal authority to interfere with a plaintiff's ability to engage in business, *see Rosee v. Bd. of Trade of City of Chi.*, 36 F.R.D. 684, 689-90 (N.D. Ill. 1965); *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 329 & n.47 (D.D.C. 1966) (citing *Saxon* and *Rosee* as examples of "governmental misconduct"), *aff'd sub nom V. E. B. Carl Zeiss, Jena v. Clark*, 384 F.2d 979 (D.C. Cir. 1967) (per curiam) (adopting district court opinion); *Black v. Sheraton Corp. of Am.*, 564 F.2d 531, 547 (D.C. Cir. 1977) (citing *Rosee* as illustrating the "generally sound" principle that "executive privilege cannot be used to shield official misconduct").

The administrative record produced to date demonstrates that Defendant Secretary acted in bad faith and behaved improperly by allowing the Comanche and Otoe-Missouria Agreements to go into effect by inaction without offering any explanation, after being informed, during the forty-five-day review period, "that the Governor lacked authority to entered into the[ Comanche and Otoe-Missouria Agreements] under Oklahoma law," Mem. Op. at 36 (citing Compl.  ¶¶ 88-90 (citing *In re Treat*)), by "an official legal opinion from the state Attorney General [that] is legally binding on all state officials whom its affects until it is judicially overruled," including the Governor of Oklahoma, *id.* (citing Okla. Stat. tit. 74, § 18b(A)(18); *State ex rel. York v. Turpen*, 681 P.2d 763, 765 (Okla. 1984); and *Keating v. Edmondson*, 37 P.3d 882, 885 & n.8, 2001 OK 110, ¶ 4 & n.8), and that the Agreements were invalid under IGRA on multiple grounds, as shown by the comments submitted by the Plaintiff Nations, *see* AR415-439, 591-601, 759-783, 1051-1054, 1490, 2094-2097, 2133-2144.   As Plaintiff Nations have alleged, Compl. ¶¶ 108-09,

Defendant Secretary did so as part of his complicity in Defendant Governor Stitt's strategy, contrary to state and federal law, to gain control over the tribal gaming market in Oklahoma. Therefore, if Federal Defendants were now to assert that the OIG recommendation in this case is protected as a predecisional and deliberative document, that would not justify withholding it from the administrative record.

1.      **The Agreements were Submitted to Federal Defendants to Advance Defendant Governor Stitt's Strategy to Secure a Proprietary Interest in Tribal Gaming in Oklahoma.**

Class III gaming by Indian tribes in Oklahoma may be authorized only by one of two means. The first is the Model Compact the State offered to Indian tribes in Oklahoma pursuant to the State Tribal Gaming Act ("STGA"), Okla. Stat. tit. 3A, §§ 261-282. Tribes enter into the compact by signing it and submitting it to the Secretary of the Interior for approval. Okla. Stat. tit. 3A, § 280-81; Mem. Op. at 5. Second, the Governor may negotiate individual compacts with Indian tribes that only go into effect if they are also approved by the State Legislature's Joint Committee on State-Tribal Relations and comport with the STGA. Okla. Stat. tit. 74, §§ 1221(C)(1)-(2), 1222(A); *see Treat v. Stitt* ("*Treat I*"), 2020 OK 64, ¶ 5, 473 P.3d 43, 44-45 (holding that the Joint Committee's authority is also constrained by the STGA); Mem. Op. at 5-6; Compl. ¶¶ 118-19.

The Governor of Oklahoma cannot contravene these legislative requirements. Under the Oklahoma Constitution, the Governor's role is to faithfully execute the law as enacted by the Legislature and the people. *Treat I*, 2020 OK 64, ¶ 4, 473 P.3d at 44 (citing Okla. Const. art. VI, §§ 8, 11); *accord* Compl. ¶ 115. And under the State's laws, the Governor does not have independent authority to cause the State to "enter into" a compact that differs from the Model Compact in the STGA. Furthermore, as IGRA requires that a compact have been "entered into" by the state, and state law governs whether the state has legally entered into a compact, any

purported compact he signs without legislative approval is therefore not a "compact" under IGRA.
*See Kickapoo Tribe*, 827 F. Supp. at 46; *Kelly*, 104 F.3d at 1557-59.

Despite these state and federal laws, Defendant Governor Stitt arrogated to himself the
power to control IGRA gaming in Oklahoma.  He first attempted to sew chaos by asserting that all
the Oklahoma gaming tribes' compacts would terminate at the beginning of 2020.  *See* Compl.
¶ 69.[9]  The Governor then sought to exploit a situation he had manufactured by negotiating
compacts on his own, without the approval of the State Legislature, under which he would
determine the games that may be played, the revenue sharing that must be paid for those games,
the limits to be imposed on Class II gaming which does not generate revenue sharing payments to
the State, and the revenue sharing payments for any renewal term, which he pegged to the "market
value" of the right to conduct gaming.  Compl. ¶ 107.  Defendant Governor Stitt signed the
Comanche and Otoe-Missouria Agreements in furtherance of that strategy.  *See id.*

2.     **The Administrative Record Shows the Secretary Knew the Agreements Were
Invalid, and That He Acted in Bad Faith and Improperly by Allowing the
Agreements to Go into Effect.**

On April 23, 2020, the Defendants Governor Stitt, Chairman Shotton, and Chairman
Woommavovah submitted the Comanche and Otoe-Missouria Agreements to the Secretary of the
Interior for review pursuant to IGRA.  AR1 (Email from Office of Indian Gaming staff stating the
Agreements had been received and the approval date was June 7, forty-five days after April 23
(April 23, 2020)); *see* AR156 (Email from counsel to Otoe-Missouria Tribe and Comanche Nation,
stating that he mailed copies of the Agreements to the Office of Indian Gaming on April 22 (April

---

[9] That effort failed after the Plaintiff Nations and other intervenor tribes successfully demonstrated
in *Cherokee Nation v. Stitt*, 475 F. Supp. 3d 1277 (W.D. Okla. 2020), that their Class III Compacts
automatically renewed and remained in full force in effect until January 1, 2035.  Compl. ¶ 69
(also citing *Cherokee Nation*, 475 F. Supp. 3d at 1283).

28, 2020)).   Thereafter, three of the four Plaintiff Nations submitted comments to Federal Defendants "setting forth their positions on why those compacts were invalid under IGRA," Mem. Op. at 8 (citing Compl. ¶¶ 83-88); *see* AR233-258;[10] AR415-439, 591-601, 759-783, 1051-1054, 1490, 2094-2097, 2133-2144.   Federal Defendants further knew that the leaders of both houses of the Oklahoma Legislature had informed Defendant Governor Stitt on April 22 that his actions violated state law. AR705-708 (email to Defendant Assistant Secretary and OIG Director from Oklahoma House of Representatives staff, forwarding April 22, 2020 letter from Legislative Leaders).   And the Federal Defendants were informed of the invalidity of Defendant Governor Stitt's strategy, and its negative impacts on Indian tribes in Oklahoma, by other comments from other tribes.   *See* AR100-106 (comments from Quapaw Nation); AR720-737 (comments from Wichita & Affiliated Tribes); AR450-451 (comments from Oklahoma Indian Gaming Association); AR803-807 (comments from Seminole Nation of Oklahoma).   So Defendant Governor Stitt's strategy was plain from the beginning.

In any event, the review process should have ended shortly after it began, as on May 5, 2020, the Oklahoma Attorney General issued a decision that was binding on the Governor, finding that the Governor lacked authority to sign the Agreements on behalf of the State.   *See In re Treat*. The Attorney General sent his opinion to Defendant Secretary on the same day.

The binding authority of *In re Treat* was immediately clear: In his cover letter accompanying his opinion, the Attorney General explained that

> [i]n issuing the attached Opinion on the permissibility of the Governor's actions under state law, I act in a quasi-judicial capacity and 'state officers are bound by

---

[10] The Chickasaw Nation's comments, submitted on April 30, 2020, took the position that it was not the Secretary's obligation to resolve disputes of state law over the validity of the Defendant Governor Stitt's actions, AR235—but those issues were resolved days later by *In re Treat*, which was issued and provided to the Federal Defendants on May 5, 2020, AR518.

these Attorney General opinions until relieved of that duty' by the courts of Oklahoma. *State ex rel. York v. Turpen*, 681 P.2d 763, 767 (Okla. 1984).

AR518 (Letter from Mike Hunter, Att'y Gen. of Okla., to David Bernhardt, Sec'y of Interior (May 5, 2020)); *accord* AR607-608 (Cherokee Nation comments to Defendant Assistant Secretary explaining binding effect of Oklahoma Attorney General opinion).[11]

There is also no doubt that *In re Treat* was submitted and known to the Defendants Secretary and Assistant Secretary-Indian Affairs. The Attorney General emailed his cover letter and *In re Treat* to Defendant Assistant Secretary, Senior Counselor to Defendant Secretary John Tahsuda, and OIG Director Paula Hart. AR493 (Email forwarding email from Attorney General Mike Hunter (May 5, 2020). Defendant Secretary's staff quickly provided it directly to him. AR529 (Email from John Tahsuda, Secretary's Senior Counsel, forwarding Attorney General Mike Hunter's email to Richard Cardinale, Interior Off. of Solicitor, and copying Defendant Secretary David L. Bernhardt). OIG ensured that the Attorney General's Opinion was "forward[ed] to all compact reviewers," AR493, and attorneys in the Solicitor's Office were aware of it and sought to discuss it internally the very next day, AR590 (Email from Andrew S. Caulum, Office of Solicitor, Dep't of Interior, to Troy Woodward, BIA (May 6, 2020)).[12] The Attorney General's Opinion was followed up by the Oklahoma Senate President *Pro Tempore* and Speaker of the Oklahoma House of Representatives, who filed an original action, challenging the Governor's signature of the Agreements, resulting in the opinion in *Treat I*. The last entry in the administrative record is an email response of June 4, 2020, from Defendant Secretary's Senior

---

[11] The Oklahoma Supreme Court later came to the same conclusion, holding that "the Governor must negotiate the compacts within the bounds of the laws enacted by the Legislature," and he had not done so when he signed the Agreements. *Treat I*, 2020 OK 64, ¶ 5; Compl. ¶ 96.

[12] Although the Comanche Nation and Otoe-Missouria Tribe responded to the legal reasoning of *In re Treat* after the initial OIG and Interior Solicitor review periods, they never contested that the Attorney General's conclusion was binding on state officials. *See* AR695-704.

Counselor upon learning about the President *Pro Tempore*'s and Speaker's filing: "Saw that.  The fun continues."  AR2638 (Email from John Tahsuda, Senior Counselor to Sec'y of Interior, to Matthew Kelly, BIA, and Mark A. Cruz, Office of Interior Solicitor (June 4, 2020)).

In sum, it is clear that the Defendant Secretary knew about the binding decision in *In re Treat*—indeed, the *only* emails in the administrative record sent directly to the Defendant Secretary were emails forwarding the Attorney General's email, cover letter explaining the binding nature of Oklahoma Attorney General opinions, and *In re Treat*.  Defendant Assistant Secretary was clearly aware of it as well because it was transmitted directly to her and her staff.  Because the Agreements were not "entered into" by the State, they were inconsistent with IGRA and could not be allowed to go into effect by inaction.  *See Amador County*, 640 F.3d at 381.  Indeed, the law is clear that the Secretary is obligated to "determine whether a compact submitted for review complies with IGRA during the forty-five-day review period because [he or] she has an affirmative duty to disapprove any compacts that do not comply with IGRA before that period expires."  Mem. Op. at 35.  And, in light of *In re Treat*, "any state-law dispute between the Governor and others about whether the [Agreements] were validly 'entered into' was resolved—at least for the time being and for the Secretary's purposes—during the forty-five-day review period."  *Id.* at 36.

What's more, the record shows the OIG and Interior Solicitor staff appreciated the importance of the validity or invalidity of the Agreements to Oklahoma tribal gaming.  Interior officials and staff were aware of the substantial opposition to the Agreements from Oklahoma tribes, AR100-106, AR720-737, AR233-258, AR450-451, the leaders of the Oklahoma Legislature, AR705-708 and the Oklahoma Attorney General, AR493, AR506-516—which in the last case was legally binding.  Before the forty-five day approval period ended, Interior officials knew that state executive officials who would have to implement state obligations under the

19

Agreements if they were valid were bound by *In re Treat*'s conclusion that the Agreements were *not* validly entered into under state law, and a decision from the Secretary allowing the Agreements to go into effect by inaction without opinion would force them into a difficult, if not impossible legal position.  Interior further knew before the end of the forty-five-day period that the Legislative leaders were initiating litigation in the Oklahoma Supreme Court, whose consideration of the issues would have been informed by a secretarial decision on the Agreements, and whose decision would affect future compacting in Oklahoma.  Mem. Op. at 8 (citing Compl. ¶91); *see* AR2526 (Letter from V. Glenn Coffee, Glenn Coffee & Assocs., to David Bernhardt, Sec'y of Interior (June 4, 2020) ("Coffee Letter"), enclosing initial filings in *Treat I*, AR2527-51); AR2525 (Email string showing Coffee Letter and enclosures were sent to Defendant Assistant Secretary, Senior Counsel John Tahsuda, and OIG Director Paula Hart, and that OIG Director Hart instructed the Coffee Letter and enclosures to be circulated to OIG staff and suggested internal discussion).[13]  The OIG Director sought guidance from the Interior Solicitor's office before even forwarding a press inquiry about the Agreements within the Interior Department, as "this issue [is] very controversial."  AR691.  That controversy presumably was the continuing "fun" to which Defendant Secretary's Senior Counselor referred toward the end of the forty-five-day review period.  AR2638.

And yet, despite knowledge of *In re Treat* and the law under which that decision was binding on the Governor, despite the Secretary's affirmative duty under IGRA, and despite the significance and importance of the Federal Defendants' position and views on the Agreements, the Defendant Secretary never issued any opinion, letter, or other ruling addressing whether the

---

[13] If that were not enough, Interior received hundreds of boilerplate public comment emails on the Agreements, apparently part of a coordinated government relations strategy, *see, e.g.*, AR1004-1013, which the OIG Director personally reviewed, *see e.g.*, AR2070-2071 (Emails from OIG Director stating she was not sure if comments came from real people based on the senders' email addresses).

Defendant Governor Stitt had authority to enter into the Comanche and Otoe-Missouria Agreements.  Instead, he allowed them to go into effect by inaction.  The result was that the Defendant Governor Stitt continued to claim the Agreements were valid in the face of a binding determination by the Attorney General, and eventually the Oklahoma Supreme Court, that his actions were illegal.  Defendant Governor Stitt went on to sign additional agreements in furtherance of his strategy, *see* Compl. ¶ 101, which the Secretary again allowed to go into effect without opinion, *id.* ¶ 106 (citing 85 Fed. Reg. 55,472 (Sept. 8, 2020)), and which the Oklahoma Supreme Court again determined had not been signed consistent with state law, *Treat v. Stitt* ("*Treat II*"), 2021 OK 3, 481 P.3d 240, *see* Compl. ¶ 231.i.

### 3. Plaintiff Nations' Causes of Action are Aimed at the Defendant Secretary's Subjective Motivations and Government Malfeasance.

The privilege for deliberative process material does not apply in "circumstances in which the cause of action is directed at the agency's subjective motivation," *In re Subpoena Duces Tecum*, 156 F.3d at 1280, and is "routinely denied" "where there is reason to believe the documents sought may shed light on government misconduct," *In re Sealed Case*, 121 F.3d at 738.  Both circumstances are present here, where Federal Defendants acted to circumvent state law requirements to give Defendant Governor Stitt illegal control over tribal gaming in Oklahoma.

Defendant Secretary intentionally violated federal law by considering and failing to disapprove the Agreements, which were not validly "entered into" by the State, Compl. ¶¶ 233-35, 242-43, and which contained substantive provisions that violate IGRA, Compl. ¶¶ 247-49, 252-55, 258-60, 263-64.  Defendant Secretary's actions were intentional because he knew that the Agreements were not validly "entered into" and substantively violated IGRA before he made his no-action approval decisions, as he was so informed by Plaintiff Nations and others, as the administrative record shows and as Plaintiff Nations had earlier alleged. *See supra* at 17.  And as

Plaintiff Nations have further alleged, these actions demonstrate Defendant Secretary's complicity in Defendant Governor Stitt's illegal strategy, Compl. ¶¶ 108-09; *see* Webster's Third New International Dictionary 465 (2002) (defining "complicity" as "association or participation in or as if in guilt"); American Heritage Dictionary 378 (5th ed. 2018) (defining "complicit" as "[a]ssociated with or participating in a questionable act or a crime"), by which Defendant Governor Stitt sought to gain a proprietary interest in IGRA gaming in Oklahoma, which is contrary to IGRA. Compl. ¶¶ 107-109; *see* 25 U.S.C. § 2710(b)(2)(A), (d)(1)(A)(ii).  This is the sort of government misconduct or malfeasance which precludes Federal Defendants from invoking the privilege.  *See, e.g.*, *Saxon*, 244 F. Supp. at 402; *Rosee*, 36 F.R.D. at 689-90; *see also Carl Zeiss*, 40 F.R.D. at 329 & n.47.  And it necessarily implicates Defendant Secretary's subjective motivation.

Because Plaintiff Nations have alleged misconduct by a government official, i.e. that Defendant Secretary is complicit in the Governor's strategy to violate IGRA, Federal Defendants cannot shield deliberative materials from inclusion in the administrative record.  Review of these documents is necessary to verify Defendant Secretary's complicity and confirm that his actions were arbitrary and capricious.

## C.  The Plaintiff Nations Are Entitled to Production of All Documents Improperly Withheld, or a Privilege Log.

The Defendant Secretary's decisions not to disapprove the Agreements, which he knew violated IGRA, despite his mandatory obligation to do so, and his decisions not to issue an opinion or decision on the Agreements, despite their clear invalidity and their obvious implications for the Governor's influence over the conduct of tribal gaming in Oklahoma, demonstrates his complicity in the Governor's strategy to gain control over tribal gaming in Oklahoma.  As that strategy is contrary to IGRA, *see supra* at 22, this complicity constitutes bad faith.

Plaintiff Nations are therefore entitled to an order compelling Federal Defendants to produce any documents they have withheld from the administrative record based on the claim that those documents are deliberative and predecisional, including the OIG recommendation.  As discussed above, the government may only withhold deliberative or predecisional documents "*absent* a showing of bad faith or improper behavior."  *Oceana, Inc.*, 920 F.3d at 865 (emphasis added); *see also In re Subpoena Duces Tecum*, 156 F.3d at 1279-80; *cf. In re Sealed Case*, 121 F.3d at 737-38 (deliberative process privilege is "routinely denied" in various types of litigation "where there is reason to believe the documents sought may shed light on government misconduct" (citation omitted)).  Plaintiff Nations make precisely such a *prima facie* showing here.  They are therefore entitled to production of the documents the Federal Defendants considered in deciding whether to allow the Agreements to go into effect but have withheld as deliberative or predecisional.  *See, e.g.*, *Salazar*, 701 F. Supp. 2d at 244 (directing the Department "to produce to the plaintiffs all documents that were withheld from the administrative record solely on the basis of the deliberative process privilege" after finding plaintiffs had adequately shown improper political influence); *cf. Marcum*, 751 F. Supp. 2d at 78 ("If an agency did not include materials that were part of its record, whether by design or accident, then supplementation is appropriate." (citation omitted)); *see also Dep't of Commerce*, 139 S. Ct. at 2574 (upholding district court's order compelling completion of administrative record).

Even if this Court chooses not to order production of the documents themselves, at a minimum Plaintiff Nations are entitled to the production of a privilege log identifying all documents that the Department withheld on the basis that they are deliberative and predecisional.  This would allow the Court to evaluate whether the documents were properly withheld and order the production of documents that are not in fact protected.  In order to effectuate that review, the

privilege log should also identify any other basis on which Federal Defendants withheld documents.  Production of a privilege log is a common first element of discovery in cases where the plaintiff has made a *prima facie* showing of bad faith or improper behavior, as is the case here.  *See, e.g.*, *Stand Up for Cal.!*, 315 F. Supp. 3d at 292, 294, 298 (ordering production of a privilege log despite denying other related requests); *Salazar*, 701 F. Supp. 2d at 244 (ordering direct production of documents and production of a privilege log covering any documents not produced).

## V.    CONCLUSION

Plaintiff Nations meet all three of the bases for supplementation identified by the D.C. Circuit in *District Hospital Partners*, as cited by *Stand Up for California!*, to justify inclusion of the OIG recommendation in the record.  Counsel for Federal Defendants have expressly stated that they have excluded the OIG recommendation.  It is clear that document may have been adverse to the Defendant Secretary's decision, informed as it was by *In re Treat* and copious comments on the invalidity of the Agreements submitted by state and tribal leaders.  And because the Secretary did not issue a decision on the no-action approvals, this court will "need[] to supplement the record with background information in order to determine whether the agency considered all of the relevant factors," and the agency necessarily "failed to explain administrative action so as to frustrate judicial review."  *See Stand Up for Cal.!*, 315 F. Supp. 3d at 293.

Additionally, given the Federal Defendants' bad faith and improper behavior in the decision-making process, the Court should order the production of any documents the Federal Defendants have withheld on the basis that they are deliberative and predecisional.  In the alternative, Federal Defendants should be compelled to provide a privilege log, describing the other documents that they withheld from the administrative record on the basis of the deliberative process privilege, and any other privileges on which they have relied to withhold the identified documents.

Respectfully submitted,

Dated: April 14, 2023              By:   */s/ Frank S. Holleman*

Colin Cloud Hampson, D.C. Bar # 448481
Frank S. Holleman, D.C. Bar #1011376
Sonosky, Chambers, Sachse,
   Endreson & Perry, LLP
145 Willow Road, Suite 200
Bonita, CA 91902
Tel: 619-267-1306
E-mail:   champson@sonoskysd.com
         fholleman@sonosky.com

Lead Counsel for the Cherokee, Chickasaw,
   Choctaw, and Citizen Potawatomi Nations

Sara Hill, OK Bar # 20072, *pro hac vice*
P.O. Box 1533
Tahlequah, OK 74465
Counsel for Cherokee Nation
Tel: 918-207-3836
E-mail:   sara-hill@cherokee.org

Stephen Greetham, OK Bar # 21510, *pro hac vice*
Greetham Law, P.L.L.C.
512 N. Broadway Ave., Suite 205
Oklahoma City, OK 73102
Tel: 580-399-6989
E-mail:   sgreetham@greethamlaw.net

Meredith Turpin, OK Bar # 22690, *pro hac vice*
Office of Executive Council
2021 Arlington St.
Ada, OK 74820
Tel: 580-272-5748
E-mail:   meredith.turpin@chickasaw.net

Brian Danker, OK Bar # 16639, *pro hac vice*
P.O. Box 1210
Durant, OK 74702
Counsel for Choctaw Nation
Tel: 580-380-3024
E-mail:   bdanker@choctawnation.com

*Additional Counsel on Following Page*

25

Gregory M. Quinlan, NM Bar # 4450, CO Bar
   #21605, *pro hac vice*
Shawnee, OK 74801
Counsel for Citizen Potawatomi Nation
Tel: 405-275-3121
Email:    gquinlan@potawatomi.org

*Attorneys for Plaintiff Nations*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2023, I electronically filed the above and foregoing document with the Clerk of Court via the ECF System for filing and caused it to be e-mailed to the Plaintiff's e-mail address listed in his signature on the complaint.

*/s/ Frank S. Holleman*
Frank S. Holleman