UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CHEROKEE NATION et al.,  )<br>  )<br>    *Plaintiffs,*  )<br>  )<br>v.  )<br>  )<br>UNITED STATES DEPARTMENT  )<br>OF THE INTERIOR et al.,  )<br>  )<br>    *Defendants.*  ) | Civil Action No. 20-2167 (TJK) |

**OKLAHOMA ATTORNEY GENERAL'S RESPONSE AND OBJECTION TO
DEFENDANT GOVERNOR J. KEVIN STITT'S MOTION TO STRIKE OR
OTHERWISE REFUSE TO RECOGNIZE NOTICES OF APPEARANCE
FILED BY GENTNER F. DRUMMOND AND GARRY M. GASKINS, II**

Oklahoma Attorney General Gentner F. Drummond hereby submits on behalf of the People of the State of Oklahoma his Response and Objection to *Defendant Governor J. Kevin Stitt's Motion to Strike or Otherwise Refuse to Recognize Notices of Appearance Filed by Gentner F. Drummond and Garry M. Gaskins, II* (the "Governor's Motion").

As explained in his Entry of Appearance, the Oklahoma Attorney General was compelled to take the extraordinary action of assuming control of Oklahoma's interests in this litigation to put an end to the Governor's betrayal of his duty to "cause the laws of the State to be faithfully executed" and prevent the Governor's continued evisceration of Oklahoma's Tenth Amendment rights. Oklahoma law clearly and unambiguously permits the Oklahoma Attorney General to "take and assume control of the prosecution or defense of the state's interest" in litigation. OKLA. STAT. ANN. tit. 74, § 18b(A)(3). Accordingly, the Governor's Motion should be overruled and denied.

**A.    Oklahoma State Law Controls Who Has the Ultimate Authority to Speak for the State of Oklahoma in This Case.**

As a preliminary matter, the Governor does not dispute or disavow his prior admission to this Court that the State of Oklahoma and not the Governor, personally, is the real party in interest in this

1

case. ECF No. 110 at 1. Thus, the question presented in this matter is not who gets to represent the Governor's own political interests in this case, but who gets to speak on behalf of the people of the State of Oklahoma in this Court.

Additionally, the Governor does not dispute that this Court must consult Oklahoma law to determine who gets to speak for the people of Oklahoma in this case. *See Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). As a result, Oklahoma law is dispositive on this issue.

**B.     The Governor Lacks Authority to Retain Legal Counsel on Behalf of the State in This Case.**

The Governor's statutory authority to retain counsel on behalf of the State is limited to efforts "to protect the rights or interests of the state . . . ." OKLA. STAT. ANN. tit. 74, § 6. This Court's prior Memorandum Opinion and Order of November 23, 2023 (ECF No. 157) establishes that the Governor is not seeking to protect the rights or interests of Oklahoma in this case. Specifically, this Court found that:

> [T]he Oklahoma Attorney General submitted a letter and official legal opinion to the Secretary explaining that the Governor lacked authority to enter into these compacts under Oklahoma law. *See* ECF No. 104 ¶¶ 88–90 (citing *In re Treat*, 2020 OK AG 8, 2020 WL 2304499 (Okla. A.G. May 5, 2020)). In Oklahoma, an official legal opinion from the state Attorney General such as this is legally binding on all state officials whom it affects until it is overruled judicially. *See State ex rel. York v. Turpen*, 681 P.2d 763, 765 (Okla. 1984); Okla. Stat. tit. 74, § 18b(A)(18). These officials include the Governor of Oklahoma. *See Keating v. Edmondson*, 37 P.3d 882, 885 & n.8 (Okla. 2001). Thus, any state-law dispute between the Governor and others about whether the compacts were validly 'entered into' was resolved . . . .

*Id.* at 36.

Likewise, this Court has recognized that the Oklahoma Supreme Court in *Treat v. Stitt*, 2020 OK 64, 473 P.3d 43 and *Treat v. Stitt*, 2021 OK 3, 481 P.3d 240 confirmed that the Governor lacked authority under Oklahoma law to enter into the subject compacts. ECF No. 157 at pp. 8–9. Therefore, there is no question that the subject compacts violate Oklahoma law.

This would normally be the end of the story. After being told by the final arbiter of Oklahoma law that he had no authority to execute the subject compacts, one would expect an Oklahoma Governor to follow Oklahoma law and seek to withdraw the subject compacts, or at a minimum, refrain from attempting to enforce them. However, the Governor failed to honor the binding precedent and live up to his constitutional obligations to "cause the laws of the State to be faithfully executed . . . ." OKLA. CONST. art. VI, § 8. Instead, in an unprecedented betrayal of Oklahoma's sovereignty, the Governor inexplicably aligned himself with the federal government in this case in seeking to use federal law to force Oklahoma to honor illegal compacts that unquestionably violate Oklahoma law. As such, until the Attorney General assumed control of the litigation, the State of Oklahoma was represented by a party refusing to defend State law.

The Governor is clearly not seeking "to protect the rights or interests of the state" when he asks this Court to disregard Oklahoma law and binding precedent of the Oklahoma Supreme Court. Consequently, the Governor lacks authority to retain counsel to represent the State in this matter pursuant to OKLA. STAT. ANN. tit. 74, § 6. This compels the action by the Oklahoma Attorney General to take and assume control of the State's defense in this case.

**C.     Even if the Governor Were Faithfully Representing the Interests of Oklahoma in This Case, The Oklahoma Attorney General Has the Express Power to Take and Assume Control of the State's Interests in This Litigation.**

Oklahoma law clearly and unambiguously states that the Oklahoma Attorney General's authority is supreme when Oklahoma's political leaders disagree over the strategy or positions to take in litigation. Specifically, Oklahoma law states that the Oklahoma Attorney General has the duty "[t]o initiate or appear in any action in which the interests of the state or the people of the state are at issue . . . and . . . **if the Attorney General deems it advisable and to the best interest of the state, <u>take and assume control of the prosecution or defense of the state's interest therein</u>**." OKLA. STAT. ANN. tit. 74, § 18b(A)(3) (emphasis added). The Oklahoma Supreme Court has also broadly

3

interpreted the Oklahoma Attorney General's power to take control of litigation: "The Attorney General, by statute, 74 O.S.1971 s 18 is the Chief Law Officer of the State. In the absence of explicit legislative or constitutional expression to the contrary, **he possesses complete dominion over every litigation in which he properly appears in the interest of the State, whether or not there is a relator** or some other nominal party." *State ex rel. Derryberry v. Kerr-McGee Corp.*, 1973 OK 132, ¶ 20, 516 P.2d 813, 818 (emphasis added).[1] Thus, the Oklahoma Attorney General can assume control of litigation involving the State if he deems it advisable. Once he assumes control of the litigation, he has "complete dominion" over the State's interest in the litigation. Therefore, the Oklahoma Attorney General clearly has authority to assume control of the State's prosecution and defense of this litigation.

D.  **OKLA. STAT. ANN. tit. 74, § 18c Has No Relevance to This Dispute.**

In the Governor's Motion, the Governor takes selective quotes from OKLA. STAT. ANN. tit. 74, § 18c to suggest that his ability to retain legal counsel somehow supersedes the Oklahoma Attorney General's ability to take control of litigation. This is a misrepresentation of law. In support of this position, the Governor seems to rely on subsection A of Section 18c.[2] However, this subsection simply starts with the general instruction: "Except as otherwise provided by this subsection, no state officer, board or commission shall have authority to employ or appoint attorneys to advise or represent said officer, board or commission in any matter." OKLA. STAT. ANN. tit. 74, § 18c(A)(1). As a result, this subsection simply discusses which state officers, boards and commissions have authority to retain legal counsel without obtaining the permission of the Attorney General. Therefore, in light of the fact that a governor has statutory authority to retain legal counsel in OKLA. STAT. ANN. tit. 74, § 6, it makes

---

[1] It should be noted that the Attorney General's power was expanded in 1995. Consequently, if anything, the Oklahoma Attorney General's power in litigation is even broader today.
[2] The Governor incorrectly references "Okla. Stat. tit. 74, § 18c(4)(a)," which does not exist. It appears he is referring to OKLA. STAT. ANN. tit. 74, § 18c**(A)**(4)(a).

sense that a governor is identified in Section 18c(A) as one of the parties permitted to retain legal counsel.

Regardless, the ability to retain legal counsel is different than the ability "to take and assume control" of the litigation. Under the current framework, the Governor has the statutory authority to retain counsel. *See* OKLA. STAT. ANN. tit. 74, § 6.[3] However, "[i]n the absence of explicit legislative or constitutional expression to the contrary, [the Oklahoma Attorney General] possesses complete dominion over every litigation in which he properly appears in the interest of the State . . . ." *State ex rel. Derryberry*, 1973 OK 132, ¶ 20. There is no explicit legislative or constitutional expression that the Oklahoma Governor has the power to supersede the Oklahoma Attorney General's complete dominion over litigation. Just the opposite, Oklahoma law clearly and unambiguously states that the Attorney General has the power and duty to "take and assume control of the prosecution or defense of the state's interest" in litigation. OKLA. STAT. ANN. tit. 74, § 18b(A)(3). Consequently, while the Governor is free to retain legal counsel, if the Attorney General concludes it is in the best interests of the State, he has the express power and duty to take and assume control of the State's interests in the litigation (even if the Governor has previously retained legal counsel).

Accordingly, the Governor's authority to retain counsel has no effect on the Attorney General's unilateral authority to assume control of the State's interests in this or any other litigation. Therefore, OKLA. STAT. ANN. tit. 74, § 18c does not in any way give the Governor license to overrule the Attorney General's "complete dominion" in litigation involving the interests of the State.

---

[3] As explained above, the Governor has abdicated the right to use OKLA. STAT. ANN. tit. 74, § 6 to retain counsel for the State because he is not seeking to "to protect the rights or interests of the state . . . ." *Id.*

5

### E. The Governor's Ability to Request the Attorney General Enter Litigation Does Not Mean the Governor Can Overrule the Attorney General in Litigation Involving the Interests of the State.

The Governor suggests the fact that he can request the Attorney General enter an appearance in litigation somehow means he can overrule the Attorney General in the litigation. This is not supported by the statutes. Again, once the Attorney General enters an appearance in litigation, he can take and assume control of the litigation "if the Attorney General deems it advisable and to the best interest of the state." OKLA. STAT. ANN. tit. 74, § 18b(A)(3). As a result, the discretion to take and assume control of the litigation is solely vested in the Attorney General. Accordingly, the Governor has no ability to control the Attorney General in the litigation after the Attorney General enters an appearance. At that point, the discretion to take and assume control of the litigation, i.e., be the final decisionmaker on strategy and positions of the State, is solely with the Attorney General. After all, the Attorney General is representing the interests of the People of Oklahoma, not the Governor's interests. Therefore, the Governor's ability to request the Attorney General enter an appearance in litigation does not change the fact that the power of the Attorney General is supreme in the context of litigation.

### F. The Governor Does Not Have a Constitutional Power to Overrule the Attorney General in Litigation.

The Governor suggests that the Oklahoma Constitution's reference to the Governor having "Supreme Executive power" somehow means that he can overrule the Attorney General—Oklahoma's "chief law officer," OKLA. STAT. ANN. tit. 74, § 18—in litigation. Nevertheless, Oklahoma does not have a unitary executive. Instead, the Oklahoma Constitution provides that: "The Executive authority of the state shall be vested in a Governor . . . Attorney General . . . and other officers provided by law and this Constitution . . . and shall perform such duties as may be designated in this Constitution or prescribed by law." OKLA. CONST. art. VI, § 1(A). As explained above, Oklahoma law prescribes that the Attorney General is the officer with discretion to "take and assume control of"

litigation involving the interests of the State. OKLA. STAT. ANN. tit. 74, § 18b(A)(3). Therefore, the power of the Attorney General is supreme in litigation involving the interests of the State.

**G.     The Attorney General Was Requested to Represent the Interests of the State in This Case by the Oklahoma House of Representatives and the Oklahoma Senate. Nevertheless, the Validity of Such Requests Is Ultimately Not Dispositive in Resolving the Governor's Motion.**

The Governor also questions the requests by the Oklahoma House of Representatives and Oklahoma Senate for the Attorney General to represent the State in this case. Specifically, the Governor suggests that they are only requests by one member of each body. Nevertheless, the disputed letters are from the Speaker of the Oklahoma House of Representative and the President Pro Tempore of the Oklahoma Senate, which both have authority to request the Attorney General represent the State on behalf of their bodies.

The Oklahoma Constitution permits both bodies of the Legislature to determine the rules of their proceedings. OKLA. CONST. art. V, § 30. On January 3, 2023, the Oklahoma House of Representatives adopted its House Rules for the Fifty-Ninth Oklahoma Legislature (2023–2024).[4] Oklahoma House Rule 1.6 states: "The Speaker may authorize or engage legal counsel on behalf of the House . . . when the Speaker determines that such action would be in the best interest of the House of Representatives." Therefore, the Speaker of the House clearly had authority to request the Attorney General represent the State on behalf of the House of Representatives.

Likewise, on January 3, 2023, the Oklahoma Senate adopted its Senate Rules for the Fifty-Ninth Oklahoma Legislature (2023–2024).[5] While there is no specific Senate Rule addressing the retention of legal counsel, Senate Rule 2.4(A) broadly permits the President Pro Tempore to "prescribe all policies not otherwise provided by law or by the rules." This appears broad enough to permit the

---

[4] The House Rules are publicly available at: https://dgbf0g52sf9l0.cloudfront.net/House_Rules_59th_Oklahoma_Legislature_2023_2024_49464075f1.pdf?updated_at=2023-02-28T23:08:02.268Z.

[5] The Senate Rules are publicly available at: https://oksenate.gov/senate-rules#l-rule-2-4.

President Pro Tempore to engage the Attorney General in this litigation on behalf of the Oklahoma Senate. Accordingly, both the Oklahoma House of Representatives and Oklahoma Senate have properly requested the Attorney General to assume control of this litigation.

Regardless, since the revisions to OKLA. STAT. ANN. tit. 74, § 18b(A)(3) in 1995, the Oklahoma Attorney General has the power "[t]o initiate or appear in any action in which the interests of the state or the people of the state are at issue" without him being requested by the Governor or the Legislature. *Id.* Therefore, it is ultimately not relevant whether the Attorney General's involvement in this case was properly requested by the Oklahoma House of Representatives or Oklahoma Senate.

**H.     Striking the Oklahoma Attorney General's and Oklahoma Solicitor General's Appearances Is Improper.**

As authority for striking the Oklahoma Attorney General's and Oklahoma Solicitor General's appearances in this case, the Governor cites cases where an attorney's appearance was not authorized by law—*Conseil Alain Aboudaram, S.A. v. De Groote*, 2006 WL 8448120, at *2 (D.D.C. Mar. 8, 2006)— or the where court determined there was an irreconcilable conflict of interest—*Wapato Heritage, LLC v. Evans*, 2011 WL 4498965, at *2 (E.D. Wash. Sept. 27, 2011). These scenarios are not applicable here.

The real party in interest in this case is the State of Oklahoma because the Governor was sued in his official capacity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [a]s such, it is no different from a suit against the State itself.") (citations omitted); *see also* ECF No. 110 at 1. Oklahoma law no longer requires the Governor's or Legislature's permission for the Attorney General to enter an appearance for the State of Oklahoma. *State, ex rel., Pruitt v. Steidley*, 2015 OK CR 6, ¶ 15, 349 P.3d 554, 558. Therefore, the Oklahoma Attorney General's and his Solicitor General's appearances are authorized by law and by their client, the real party in interest— the State of Oklahoma. Accordingly, there are no grounds to strike the Oklahoma Attorney General's and Oklahoma Solicitor General's entries of appearance.

**I.     There Is No Further Need for the Governor's Involvement in This Case.**

The Governor, in his Motion, complains about his lot—being a named defendant here—but he invited this civil action. As previously discussed, the Governor was informed by a prior Oklahoma Attorney General that he had no authority to enter the subject gaming compacts. 2020 OK AG 8, 2020 WL 2304499 (Okla. A.G. May 5, 2020). This was subsequently confirmed by the Oklahoma Supreme Court in two published opinions. *Treat v. Stitt*, 2020 OK 64, 473 P.3d 43 and *Treat v. Stitt*, 2021 OK 3, 481 P.3d 240. This would normally be the end of the story. Nevertheless, in an unprecedented betrayal of Oklahoma's sovereignty, the Governor inexplicably aligned himself with the federal government in seeking to use federal law to force Oklahoma to honor illegal compacts that unquestionably violate Oklahoma law. Therefore, the Governor has no one but himself to blame for his current predicament.

Rest assured, the Attorney General, on behalf of the State of Oklahoma, intends to right the wrongs committed by the Governor in this case. On this point, there is no further need for the Governor's involvement in this case. Consequently, the Oklahoma Attorney General intends to honor the Governor's wish to not be sued in this case and seek to have the Oklahoma Attorney General formally substituted to represent the interests of the State of Oklahoma in this case.

## CONCLUSION

WHEREFORE, Oklahoma Attorney General Gentner F. Drummond respectfully requests that the Court overrule and deny *Defendant Governor J. Kevin Stitt's Motion to Strike or Otherwise Refuse to Recognize Notices of Appearance Filed by Gentner F. Drummond and Garry M. Gaskins, II*.

*s/ Garry M. Gaskins, II*
GENTNER F. DRUMMOND, OBA #16645
   *Attorney General*
GARRY M. GASKINS, II, OBA #20212
   *Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF OKLAHOMA
313 NE 21st Street
Oklahoma City, OK 73105
(405) 521-3921
(405) 522-4534 (fax)
garry.gaskins@oag.ok.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of August, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants with entries of appearance filed of record.

*s/ Garry M. Gaskins, II*
