UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
------------------------------------------------------ x
THE CHEROKEE NATION, et al.,                           :
                                                       :
                    Plaintiffs,                        :
                                                       :
          v.                                           :   No. 1:20-cv-02167 (TJK)
                                                       :
U.S. DEPARTMENT OF THE                                 :
INTERIOR, et al.,                                      :
                                                       :
                    Defendants.                        :
                                                       :
                                                       :
------------------------------------------------------ x
```

**DEFENDANT GOVERNOR J. KEVIN STITT'S REPLY IN SUPPORT OF MOTION TO STRIKE OR OTHERWISE REFUSE TO RECOGNIZE NOTICES OF APPEARANCE**

The Attorney General's opposition (ECF No. 179) is as much a polemic as a legal pleading. The Attorney General obviously believes it to be in his political interest to side with the Plaintiff Tribes and criticize the Governor, but his rhetoric belongs in Oklahoma electoral circles, not this Court. Cutting through that rhetoric, the Attorney General's legal argument appears to be that (i) the Governor's undisputed statutory authority to employ counsel does not apply in this case; and (ii) even if it does, the Attorney General has the authority to unilaterally override the Governor's actions in court. He is wrong on both points.

First, the Attorney General concedes (at 2, 5) that the Governor unambiguously has authority under Oklahoma law "to employ counsel to protect the rights or interests of the state in any action or proceeding." Okla. Stat. tit. 74, § 6. But the Attorney General claims that authority does not apply in this case because he does not believe the Governor is "seeking 'to protect the rights or interests of the state.'" Opp. 3. That is irrelevant: nothing in the statute contemplates any role for the Attorney General (or anyone else other than the Governor) in determining "the rights or interests of the state" before the Governor may use his "power to employ counsel" and

provide "direction" to that counsel as to how to proceed. Instead, the statute leaves that judgment with the Governor in the exercise of his "Supreme Executive power" and fulfillment of his duty to "cause the laws of the State to be faithfully executed." Okla. Const. art. VI, §§ 2, 8.

Second, the Attorney General contends (at 3-4) that, even if the Governor can employ counsel in this case, the Attorney General has superior authority under Okla. Stat. tit. 74, § 18b(A)(3) to "take and assume control" of this litigation. For several reasons, that argument is just as wrong. As the Governor explained (ECF No. 178 at 3-4), while Oklahoma courts have sensibly read Section 18b to authorize the Attorney General to take over litigation from *subservient* officers like district attorneys, no court has suggested that it somehow authorizes the Attorney General to override the *Governor*, the State's highest executive officer. The Attorney General does not respond to this basic point. That common-sense reading is confirmed elsewhere in Section 18b, which makes clear that the Governor's choice of counsel prevails by requiring the Attorney General to "appear at the request of the Governor." Okla. Stat. tit. 74, § 18b(A)(3). Numerous other provisions outlining the Attorney General's authority use similar language, again confirming that the Governor has the ultimate authority to direct the Attorney General in litigation, not the other way around. *See, e.g.*, Okla. Stat. tit. 74 § 18b(A)(6), (10); *id.* § 18e; *id.* § 18f.

Section 18c likewise makes clear that the Attorney General's litigation authority does not override the Governor's. Section 18c(A)(4)(a) expressly carves out from the "legal duties . . . vested in the Attorney General" the Governor's "authority to employ special counsel to protect the rights or interest of the state as provided in Section 6 of this title." Okla. Stat. tit 74, § 18c(A)(4)(a). The whole point of the carveout is to protect the Governor's right to hire counsel to represent the State when he—not the Attorney General—believes it to be in Oklahoma's interests. The Attorney General tries to downplay Section 18c, contending that the "general instruction" at the beginning of the provision shows that it "simply discusses which state officers, boards and commissions have

authority to retain legal counsel without obtaining the permission of the Attorney General." Opp. 4 (citing Okla. Stat. tit. 74, § 18c(A)(1)). But the Attorney General does not explain why the statute would expressly protect the Governor's authority to retain legal counsel if the Attorney General could override that decision under Section 18b and displace the Governor's chosen counsel.

The Attorney General relies primarily on *State ex rel. Derryberry* v. *Kerr-McGee Corp.*, 516 P.2d 813 (Okla. 1973). In particular, the Attorney General points to *Derryberry*'s general statement that "[i]n the absence of explicit legislative or constitutional expression to the contrary," the Oklahoma Attorney General "possesses complete dominion over every litigation in which he properly appears in the interest of the State, whether or not there is a relator or some other nominal party." *Id*. at 818. But *Derryberry* did not involve an Attorney General trying to usurp litigation authority from a Governor. Instead, a newly elected Attorney General challenged a settlement reached by his predecessor, and the Oklahoma Supreme Court rejected that challenge and held that the predecessor Attorney General "had the authority to settle and compromise the case," *id.* at 819—a fact pattern that makes *Derryberry*'s language unsurprising.

In any event, *Derryberry*'s language does not support the Attorney General's position for several reasons. For one thing, the entire question here is whether the Attorney General can "*properly* appear[] in the interest of the State" where the Governor already has appeared through his chosen counsel and is prosecuting the case. *Derryberry*, 516 P.2d at 818 (emphasis added). And of course the Attorney General is not trying to take over litigation from a "relator or some other nominal party," but rather from Oklahoma's Chief Executive Officer. Moreover, there is "explicit legislative or constitutional" support for the Governor's authority. *See* Okla. Stat. tit. 74, § 18c(A)(4)(a); *see also* Okla. Const. art. VI, § 2; *Ex parte Kelly*, 146 P. 444, 446 (Okla. 1915) (the Governor "is vested by law with the supreme executive authority, and clothed with the power

of executing the laws"); *State* v. *Hudson*, 279 P. 921, 922 (Okla. Crim. App. 1929) ("The Governor is the highest executive authority of the state.").[*]

At bottom, there is no basis in Oklahoma statutory or case law for the Attorney General to take over the representation of the Governor in order to abandon his defense. That would leave the Governor with counsel he affirmatively does not want, and it would leave this Court without any counsel who would present a defense on behalf of the Governor. The federal defendants and the Governor presented somewhat different arguments in their Rule 12 motions. Ensuring that the parties present the full range of arguments on summary judgment could be of material assistance to the Court in resolving this case. If the Attorney General wishes to share his view of the merits of this case with the Court, he is free to seek leave to file an amicus brief in support of the Plaintiff Tribes. But the Court should reject his effort to insert himself into this case on behalf of the Governor, who has his own statutory authority and his own chosen counsel.

---

[*] Within the first few decades after statehood, Oklahoma courts recognized that "[t]he Governor is the highest executive authority of the state" and "the Legislature . . . has delegated to him the power" to employ counsel in any action or proceeding "as a means of carrying out his executive functions." *Hudson*, 279 P. at 922.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ Jeffrey B. Wall |
| Phillip G. Whaley | Jeffrey B. Wall |
| RYAN WHALEY | Judson O. Littleton |
| 400 North Walnut Avenue | Zoe A. Jacoby |
| Oklahoma City, OK 73104 | SULLIVAN & CROMWELL LLP |
|  | 1700 New York Avenue, N.W., Suite 700 |
|  | Washington, D.C. 20006 |
|  | (202) 956-7500 |
|  | Austin P. Mayron (*admitted pro hac vice*) |
|  | SULLIVAN & CROMWELL LLP |
|  | 125 Broad Street |
|  | New York, New York  10004 |
|  | (212) 558-4000 |

*Attorneys for Defendant Governor J. Kevin Stitt*

August 17, 2023