**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE CHEROKEE NATION et al.,

      *Plaintiffs*,

  v.

UNITED STATES DEPARTMENT OF THE
INTERIOR et al.,

      *Defendants*.

Civil Action No. 20-2167 (TJK)

<u>**MEMORANDUM OPINION & ORDER**</u>

     This case is about the validity of certain tribal-gaming compacts governed by the Indian Gaming Regulatory Act. But before the parties could get to litigating the merits, a dispute broke out over who may properly represent the State of Oklahoma. Until now, Governor J. Kevin Stitt—sued in his official capacity, which makes Oklahoma the real party in interest—has been represented by retained counsel. Now, Oklahoma's Attorney General, Gentner F. Drummond, seeks to assert his authority to "take and assume control" of the defense of the state's interests, as he argues an Oklahoma statute permits. He has also moved to certify the question of whether he may do so to the Oklahoma Supreme Court. Regrettably, despite the further delay this will cause in resolving the case, for the reasons explained below the Court will do so on its own initiative.

**I.      Background**

     The Court assumes familiarity with the background of this case and summarizes it only briefly. Plaintiffs are four Native American tribes that each operate casinos in Oklahoma. They sued in August 2020, seeking to invalidate tribal-gaming compacts entered into by Governor Stitt with four other Native American tribes, which were then approved by the inaction of the U.S. Secretary of the Department of the Interior under the Indian Gaming Regulatory Act, 25 U.S.C. §

2701 *et seq*.  Plaintiffs sued three sets of defendants: (1) the Department of the Interior (and related federal officials there); (2) Governor Stitt, in his official capacity; and (3) the leaders of the tribes who entered into the compacts with Governor Stitt.  Plaintiffs assert, among other things, that Governor Stitt violated Oklahoma law when he entered into the compacts.  ECF No. 104 ¶¶ 2–3.  Even before the suit was filed, Attorney General Drummond's predecessor expressed the view in a legal opinion that Governor Stitt did not have the authority to enter into two of the compacts.  *Id*. ¶ 89.

In late November 2022, the Court resolved the Department of the Interior's motion to dismiss, granted Plaintiffs' motion to dismiss a counterclaim, and denied various other motions.  *See* ECF No. 157.  The Court set a briefing schedule to govern the production of the administrative record and summary judgment briefing.  *See* Minute Order of Jan. 3, 2023.  In April 2023, Plaintiffs moved to compel the Department of the Interior to complete the administrative record by producing certain documents, which the parties briefed over the course of a few months.

Not long after, in July 2023, Attorney General Drummond sought to notice his appearance on behalf of Governor Stitt.  Until then, Governor Stitt had been represented by retained private counsel.  But in a five-page notice of appearance, Attorney General Drummond explained that because the State of Oklahoma is the real party in interest, and because Governor Stitt, through his retained counsel, has "inexplicably abrogated his constitutional duties in this case," he was exercising his statutory authority "to take and assume control of the defense of the State's interests in this case" as provided by Oklahoma law.  *See* ECF No. 176 at 1, 3; Okla. Stat. tit. 74, § 18b(A)(3).  Attorney General Drummond also represented that the Oklahoma Supreme Court had "clearly and unambiguously" already ruled that "the Governor had no authority to unilaterally execute the compacts at issue in this case"—citing *Treat v. Stitt,* 473 P.3d 43 (Okla. 2020) and *Treat v. Stitt*, 481

P.3d 240 (Okla. 2021)—and so continuing to defend them violated his "constitutional duty to faithfully execute Oklahoma law." ECF No. 176 at 3. Attorney General Drummond also attached to his filing letters from the Speaker of the Oklahoma House of Representatives and the President Pro Tempore of the Oklahoma Senate, purporting to request on behalf of their bodies that he intervene in this case. *See* ECF Nos. 176-1, 176-2.

In response, Governor Stitt, through his private counsel, moved to strike Attorney General Drummond's appearance, as well as that of Oklahoma's Solicitor General, who also sought to enter his appearance "[a]t the request of the Oklahoma Attorney General." ECF No. 177. Governor Stitt accused Attorney General Drummond of trying to "hijack" the case for political purposes. ECF No. 178 at 3. According to Governor Stitt, Attorney General Drummond lacks the statutory authority to act as he suggests, and his attempt to do so violates the Oklahoma Constitution as well. *Id.* Further, Governor Stitt argued, Attorney General Drummond's reliance on the Speaker's and President Pro Tempore's letters is misplaced, because those legislative bodies may not authorize Attorney General Drummond's actions, and even if they could, letters from individual legislators would not do the trick. *Id.* at 4.

About a month after briefing on Governor Stitt's motion to strike was complete, Attorney General Drummond moved to certify the question of whether he may "take and assume control" of the defense of the state's interests in this case to the Oklahoma Supreme Court, in part, because there is no controlling state case law on the matter. ECF No. 183. Governor Stitt opposed the motion, arguing that the Attorney General lacks standing to file it, and even if he had standing, certification is inappropriate. *See* ECF No. 186.

## II.    Legal Standards

A federal court may only certify a question to a state court "to the extent authorized by state law." *In re Vitamins Antitrust Litig.*, No. 99-mc-197 (TFH), 2000 WL 1524912, at *1 (D.D.C.

July 14, 2000).  The relevant Oklahoma statute provides:  "The Supreme Court and the Court of Criminal Appeals may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state."  Okla. Stat. tit. 20, § 1602.  The Oklahoma Supreme Court has confirmed that it has the power to answer such questions.  *See White Star Petroleum, LLC v. MUFG Union Bank, N.A.*, 480 P.3d 887, 889 (Okla. 2020) ("This Court is vested with discretionary authority to review questions of law certified to it by a court of the United States, so long as (1) the answer would be dispositive of an issue in pending litigation in the certifying court; and (2) there is no established and controlling law on the subject matter.").  The certified question need not be "dispositive of the cause"; rather, "[a]ll that is required for [the Oklahoma Supreme Court] to answer a certified question is that the response be determinative of a single issue in the cause and that no controlling state law exist."  *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 392 P.3d 262, 266 (Okla. 2017).

If certification is authorized by state law, the Court must then determine whether certification is proper under federal law.  The Supreme Court has recognized that certification "does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism."  *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).  But the process "is not without its costs," including imposition of time and resources on the state court, and additional delay and expenditure for the parties.  *In re Vitamins Antitrust Litig.*, 2000 WL 1524912, at *1 (quotation omitted).  Ultimately, however, the decision to certify "rests with the sound discretion of the court."  *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C. Cir. 1988) (citing *Lehman Bros.*, 416 U.S. at 391).  In considering whether certification is appropriate, the D.C. Circuit has identified

4

the same key threshold question as Oklahoma law, recognizing that "[t]he most important consid-
eration . . . is whether the reviewing court finds itself genuinely uncertain about a question of state
law that is vital to a correct disposition of the case before it."  *Id.* at 426.  A court should also
consider whether the "case is one of extreme public importance in which the [relevant state] has a
substantial interest."  *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 564 (D.C. Cir. 1993)
(internal quotations omitted).  Finally, courts disfavor certification if the party seeking certification
is the party that first chose to litigate in the federal forum.  *See Metz v. BAE Sys. Tech. Sols. &
Servs. Inc.*, 774 F.3d 18, 24 (D.C. Cir. 2014).

## III.   Analysis

As explained below, the question of Oklahoma law presented by this dispute between Gov-
ernor Stitt and Attorney General Drummond meets all the criteria for certification to the Oklahoma
Supreme Court.  The Court need not consider whether Attorney General Drummond has standing
to move for such certification because the Court has the power to do so on its own initiative, which
it will exercise.  *State Farm Mut. Auto. Ins. Co. v. Fisher*, 609 F.3d 1051, 1058 (10th Cir. 2010).

### A.   Whether the Attorney General Can "Take and Assume Control" of the De-
fense of Oklahoma's Interests in this Case is an Unsettled and Genuinely Un-
certain Question of Oklahoma State Law

To begin, the question of whether Attorney General Drummond can enter his appearance
and "take and assume control" of the defense of Oklahoma's interests in this case is a question of
state law.  The Supreme Court has explained that "a State must be able to designate agents to
represent it in federal court."  *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951
(2019) (internal quotation omitted).  Although Governor Stitt is the named defendant, he is sued
in his official capacity, making Oklahoma the real party in interest.  *See Will v. Michigan Dep't of
State Police*, 491 U.S. 58, 71 (1989).  And Governor Stitt conceded as much in his Answer to the
Second Amended and Supplemental Complaint.  ECF No. 110 at 2 (referring to the State of

Oklahoma as "the real party in interest"). Thus, Oklahoma law controls who may properly represent Oklahoma's interests in this case.

The next question is whether there is "established and controlling law on the subject matter," *White Star Petroleum, LLC.*, 480 P.3d at 889, and whether the Court is "genuinely uncertain" about the right answer, *Tidler*, 851 F.2d at 426. By statute, Attorney General Drummond is "the chief law officer of the state." Okla. Stat. tit. 74, § 18b(A). He asserts that the statute so designating him also gives him the authority to assume control of the defense of the state's interests in this litigation. Under that law, the Attorney General has the power "[t]o initiate or appear in any action in which the interests of the state or the people of the state are at issue . . . and when so appearing in any such cause or proceeding, the Attorney General may, if the Attorney General deems it advisable and to the best interest of the state, take and assume control of the prosecution or defense of the state's interest therein." *Id.* § 18b(A)(3). Thus, a plain reading of this statute appears to support Attorney General Drummond's position. On the other hand, Governor Stitt offers some statutory support for his contrary view. He points to a nearby provision that prohibits state officers from retaining their own attorneys to represent them—and vests all "legal duties" of those officers in the Attorney General—while also providing the Governor with the "authority to employ special counsel to protect the rights or interest of the state" as set forth elsewhere.[1] *Id.* § 18c(A)(1), (4). According to Governor Stitt, this provision excludes his appointed counsel from being subject to the Attorney General's otherwise sweeping "legal duties," including his statutory power to assume control of litigation involving the state's interests. Attorney General Drummond responds, in part, by arguing that the statutory language on which he relies is broader because it permits him to "take

---

[1] Oklahoma Statute Title 74 § 6 provides that the Governor "shall have power to employ counsel to protect the rights or interests of the state in any action or proceeding, civil or criminal, which has been, or is about to be commenced . . . ."

and assume control" of litigation involving the state's interests, while that relied on by Governor Stitt only allows him to hire counsel.  All in all, in the Court's view, the statutory scheme alone provides no established and controlling law that resolves the dispute.

Nor is there any established and controlling case law interpreting these statutes that clears things up.  Attorney General Drummond cites *State ex rel. Pruitt v. Steidley*, a case in which the Oklahoma Court of Criminal Appeals—the highest court in the State of Oklahoma with appellate jurisdiction in criminal cases—interpreted § 18b(A)(3) to allow the Attorney General to take and assume control over a local criminal prosecution.  349 P.3d 554, 558 (Okla. Crim. App., 2015). But as Governor Stitt points out, there, the Attorney General sought to displace a state official whose role that court called "subservient" to the Attorney General's—a district attorney—rather than the Governor.  *Id*.  And while Attorney General Drummond also cites seemingly helpful language from an Oklahoma Supreme Court case that he "possesses complete dominion over every litigation in which he properly appears in the interest of the State," *State ex rel. Derryberry v. Kerr-McGee Corp*., 516 P.2d 813, 818 (Okla. 1973), that line bypasses the key issue here: whether he may properly appear here in the first place.

The parties' dispute also presents an issue of how to construe the Oklahoma Constitution, and the uncertainty on this aspect of the dispute underscores the Court's conclusion that there is no established and controlling law resolving it.  Governor Stitt argues that, even if the statutory scheme *does* authorize the Attorney General to appear and assume control of this litigation, any such authority would violate the Oklahoma Constitution, which grants him "Supreme Executive power."  Okla. Const. art. VI, § 2.  According to Governor Stitt, the Oklahoma Constitution does not permit inferior executive officers, such as the Attorney General, to overrule him on decisions that exercise that executive power.  ECF No. 186 at 2.  Attorney General Drummond counters that

while the Oklahoma Constitution vests the Governor with "Supreme Executive power," it does not vest in him *exclusive* executive *authority*; instead, it provides that "Executive authority of the state shall be vested" in several different state offices, including the Attorney General.  Okla. Const. art. VI, § 1(A).  And it requires these officers to "perform such duties as may be designated in this Constitution or prescribed by law."  *Id.*

Governor Stitt's argument has some commonsense appeal, given the Oklahoma Constitution's use of the word "Supreme" to describe his executive power.  On the other hand, that same document permits the state legislature to "prescribe by law" the duties of the Attorney General, which it has by allowing him to "take and assume control" of the defense of the state's interests in litigation.  And taken to its logical conclusion, Governor Stitt's position would mean that there is *no* sphere in which the Attorney General—an independently elected constitutional officer—may act to prosecute or defend the interests of the state against the wishes of the Governor.  Whatever "Supreme Executive power" means under the Oklahoma Constitution, the Court is skeptical that it sweeps that broadly.  In any event, the parties have brought to the Court's attention no case in which any Oklahoma court has addressed whether, under the Oklahoma Constitution, the Attorney General has a sphere of responsibility in which he may act independently from the Governor, and if so, the contours of that sphere.

For these reasons, the Court finds that there is no established and controlling law about whether, under these Oklahoma statutes and the Oklahoma Constitution, Attorney General Drummond may take and assume control of the defense of the state's interests in this case over the objection of Governor Stitt, and the Court is genuinely uncertain about whether he may do so.[2]

_____

[2] Attorney General Drummond makes another argument he claims relates to this legal question, but in the Court's view, the argument does not contribute to whether the question is unsettled

B.      Whether the Attorney General Can "Take and Assume Control" of the Defense of Oklahoma's Interests is Dispositive of a Vital Issue in this Case

Not every question of state law is a candidate for certification—it must also resolve a vital issue in the case.  The question of who properly represents Oklahoma in this case is such a question.  Governor Stitt argues that the question over his representation is not "vital to the disposition of the case" because—however that issue comes out—it will not "resolve this litigation."  ECF No. 186 at 4.  That may be true, but it gets the standard wrong.  Although earlier D.C. Circuit opinions used the "vital to the disposition of the case" language, *Tidler*, 851 F.2d at 426, later opinions clarified that the standard only requires that the state law issue be "a dispositive question" in the case,[3] *Dial A Car, Inc. v. Transportation, Inc.*, 132 F.3d 743, 746 (D.C. Cir. 1998).  That aligns with Oklahoma law, which unambiguously allows certification for any question that "may be determinative of an *issue* in pending litigation in the certifying court."  Okla. Stat. tit. 20, § 1602 (emphasis added); *Siloam Springs Hotel, LLC*, 392 P.3d at 266 ("All that is required for us

---

or whether the Court is uncertain about it.  Attorney General Drummond also purports to proceed at the request of the "Legislature, or either branch thereof," as authorized under § 18b(A)(3).  And he points to the letters on behalf of the Speaker of the Oklahoma House of Representatives and the President Pro Tempore of the Oklahoma Senate requesting that he assume the defense of Oklahoma's interests in this case.  But he cites no persuasive authority that these individual legislators have the power to make such a request on behalf of their bodies.  Generally, letters from individual legislators do not constitute a request of the legislature itself.  *Cf. Kucinich v. Bush*, 236 F. Supp. 2d 1, 11 (D.D.C. 2002) ("The Supreme Court has observed that individual members of Congress cannot represent the interests of an entire House or all of Congress.") (citing *United States v. Ballin*, 144 U.S. 1, 7 (1892)).  And even if Attorney General Drummond is right that an Oklahoma House rule that authorizes the Speaker to "engage legal counsel" reflects an action taken by the House itself, that rule allows the Speaker to do just that—engage counsel—and nothing more on behalf of that body.  *See* ECF No. 179 at 7.

[3] Even under the "vital to the disposition of the case" standard, the certified question need not definitively resolve the litigation, as Governor Stitt suggests.  A question may be vital to the disposition of a case if, for example, the litigation cannot proceed with that issue pending, even if the resolution of the question would not end the litigation.  Governor Stitt is right that, no matter how the motion to strike is resolved, the case will proceed.  But the case can hardly proceed if it is unclear who properly represents Oklahoma.  Resolving the motion to strike, therefore, is "vital to the disposition of the case," even if it will not itself resolve the entire litigation.

to answer a certified question is that the response be determinative of a *single issue* in the cause and that no controlling state law exist.") (emphasis added).  Whether Attorney General Drummond has the power to assume control of the defense of Oklahoma's interests resolves a pending issue in this case—*i.e.,* whether the Court should strike his appearance.  And that issue, it appears, will materially affect how Oklahoma litigates the merits, given the differing views of Governor Stitt and Attorney General Drummond about the validity of the tribal-gaming compacts at issue.

### C.   Oklahoma Has a Substantial Interest in Resolving the Question of Whether the Attorney General Can "Take and Assume Control" of the Defense of its Interests in this Case

In the D.C. Circuit, courts must also weigh another consideration in deciding whether to certify a question.  The Circuit has explained that certification is especially prudent if a "case is one of extreme public importance in which the [state] has a substantial interest." *Joy,* 999 F.2d at 564 (internal quotations omitted).  Later decisions suggest that this may operate as an either/or— either the case is one of extreme public importance *or* the state has a substantial interest.  *See Metz,* 774 F.3d at 24 ("We have also certified where we found the question to be on a matter of public importance, in which the [state] has a substantial interest, without insisting that the importance be extreme.") (internal quotations omitted).  In any event, the key principle is that the state's "interest be something more than that the question is one of [state] law, else every diversity case would come within its compass." *Id.*  The Court has little difficulty concluding that Oklahoma has a substantial interest in resolving the question here.

The question of whether Attorney General Drummond can take and assume control of the defense of Oklahoma's interests in this case over Governor Stitt's objection is one that involves a fundamental interpretive question of Oklahoma Constitutional law affecting the very structure of Oklahoma's government.  As the Supreme Court has explained, "[t]hrough the structure of its government, and the character of those who exercise government authority, a State defines itself

as a sovereign." *Gregory v. Ashcroft*, 501 U.S. 452, 469 (1991).  In *Joy*, the D.C. Circuit observed that "one can hardly imagine a more significant issue for [a state] than the conditions under which its police officers will be held liable in tort for actions taken in the course of performing their public functions."  999 F.2d at 564.  No need to imagine—in the Court's view, this case presents a more significant issue.  The decision over who has the ultimate authority to represent Oklahoma's interests in this case goes to the very core of its sovereignty.[4]  Moreover, that interest is heightened given the differing views of Governor Stitt and Attorney General Drummond on the merits.

### D.      Oklahoma's Certification Process

Having determined that certification of a question is appropriate, the Court must comply with Oklahoma's certification process, which requires a certifying court to issue a certification order and forward it to the Supreme Court.  Okla. Stat. tit. 20, § 1603.1.  That certification order must include: (1) the question of law to be answered; (2) the facts relevant to the question, showing fully the nature of the controversy out of which the question arose; (3) a statement acknowledging that the Supreme Court or Court of Criminal Appeals of the state, acting as the receiving court, may reformulate the question; and (4) the names and addresses of counsel of record and parties appearing without counsel.  *Id.* § 1604.

A proposed certification order is attached to this Memorandum Opinion and Order.  The Court will provide Governor Stitt and Attorney General Drummond 14 days to file any objections or proposed edits to that proposed order and to designate any docket entries in this matter that they propose should be sent to the Oklahoma Supreme Court.

---

[4] The final consideration in evaluating certification is whether the party seeking certification first chose to litigate in a federal forum.  *Metz*, 774 F.3d at 24.  Neither Attorney General Drummond nor Governor Stitt did so, so that consideration is not implicated here.

**IV.**   **Conclusion and Order**

For all the above reasons, it is hereby

**ORDERED** that by April 4, 2024, Governor Stitt and Attorney General Drummond shall file any objections or proposed edits to the Court's proposed certification order and designate any docket entries that they propose should be sent to the Oklahoma Supreme Court, and it is further

**ORDERED** that, because the Court will certify the question identified to the Oklahoma Supreme Court on its own initiative, the Attorney General's Motion to Certify Question to the Oklahoma Supreme Court, ECF No. 183, is **DENIED AS MOOT**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 21, 2024

ATTACHMENT 1:  COURT'S PROPOSED CERTIFICATION ORDER

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CHEROKEE NATION et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR et al.,<br><br>*Defendants*. | Civil Action No. 20-2167 (TJK) |

## [PROPOSED] ORDER CERTIFYING QUESTION OF LAW TO THE SUPREME COURT OF OKLAHOMA

The United States District Court for the District of Columbia, pursuant to the Revised Uniform Certification of Questions of Law Act, Okla. Stat. tit. 20, § 1601 *et seq*., hereby certifies to the Oklahoma Supreme Court the following question of law which is determinative of an issue in the above-entitled case now pending before this Court, and which appears to be unanswered by controlling precedent of the Supreme Court or the Court of Criminal Appeals of Oklahoma.

## I.    Question of Law

May the Attorney General of Oklahoma, under Title 74, Section 18 of the Oklahoma Statutes, "take and assume control" of the "defense of the state's interests," Okla. Stat. tit 74 § 18b(A)(3), in the instant case before this Court—in which the Governor of Oklahoma is named as a defendant in his official capacity for his role in entering into certain tribal-gaming contracts on behalf of the State of Oklahoma—over the objection of the Governor, who is vested with "Supreme executive power" under Article VI, Section 2 of the Oklahoma Constitution, and when the Governor has already exercised his authority under Title 74, Section 6 of the Oklahoma Statutes to "employ counsel to protect the rights or interests of the state," Okla. Stat. tit 74 § 6?

ATTACHMENT 1: COURT'S PROPOSED CERTIFICATION ORDER

## II.    Factual Background

The instant case before this Court was brought in August 2020 by four Native American tribes who each operate casinos in Oklahoma under a tribal-gaming compact with Oklahoma under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq*.  In their operative complaint, they seek to have set aside four tribal-gaming compacts for casino operations that four other Native American tribes entered into with Oklahoma that were submitted to the U.S. Secretary of the Department of the Interior for approval and that were approved through the Secretary's inaction by operation of law.  Plaintiffs allege that the Governor of Oklahoma played a role in violating their rights under the IGRA because these compacts were not lawfully entered into by the Governor and violated Oklahoma law in other ways.  Since the suit began, the Governor has been represented by retained counsel, whom he represents he hired under Title 74, Section 6 of the Oklahoma Statutes, which allows him to "employ counsel to protect the rights or interests of the state."  Okla. Stat. tit 74 § 6.  And in October 2021, the Governor filed an answer, in which he disputes that any of the compacts at issue are invalid or violate Oklahoma law.

In July 2023, the Attorney General of Oklahoma entered an appearance in the case, claiming authority under Oklahoma law to "take and assume control" of the "defense of the state's interests," Okla. Stat. tit 74 § 18b(A)(3), because in his view, the compacts at issue were invalid. In addition, he represented, the Oklahoma Supreme Court has "clearly and unambiguously" held that the Governor had no authority to unilaterally enter into them, citing *Treat v. Stitt,* 473 P.3d 43 (Okla. 2020); and *Treat v. Stitt*, 481 P.3d 240 (Okla. 2021).  Thus, he argued, the Governor had abrogated his constitutional duty to "cause the laws of the State to be faithfully executed."  Okla. Const. art. VI, § 8.  The Governor objected, arguing that the Attorney General does not have the statutory authority to replace the counsel he had already hired, and even if the Attorney General

ATTACHMENT 1:  COURT'S PROPOSED CERTIFICATION ORDER

did have this statutory authority, doing so would violate the Oklahoma Constitution, which vests

the Governor with "Supreme executive power."  Okla. Const. art. VI, § 2.

**III.**   **Acknowledgment of Authority to Reformulate Question**

      Pursuant to Oklahoma Statute Title 20, Section 1604(A)(3), the Court acknowledges that

the Oklahoma Supreme Court may reformulate this question presented.

**IV.**   **Names and Addresses of Counsel of Record**

**<u>Plaintiff</u>**

**CHEROKEE NATION**
*a federally recognized Indian Tribe*

represented by

**Chad C Harsha**
CHEROKEE NATION-ATTORNEY GEN-
ERAL OFFICE
P.O. Box 1533
Tahlequah, OK 74465-1533
918-453-5369
Fax: 918-458-6142
Email: chad-harsha@cherokee.org

**Colin Cloud Hampson**
SONOSKY, CHAMBERS, SACHSE, EN-
DRESON & PERRY, LLP
145 Willow Street
Suite 200
Bonita, CA 91902-1349
619-267-1306
Fax: 619-267-1388
Email: champson@sonoskysd.com

**Sara Hill**
CHEROKEE NATION ATTORNEY GEN-
ERAL OFFICE
P.O. Box 1533
Tahlequah, OK 74465-1533
918-207-3836
Fax: 918-458-6142
Email: sara-hill@cherokee.org

**Frank Sharp Holleman , IV**
SONOSKY, CHAMBERS, SACHSE, EN-
DRESON & PERRY, LLP

ATTACHMENT 1:  COURT'S PROPOSED CERTIFICATION ORDER

                                                    145 Willow Street
                                                    Suite 200
                                                    Bonita, CA 91902
                                                    619-267-1306
                                                    Email: fholleman@sonosky.com


**Plaintiff**                        represented by  **Colin Cloud Hampson**
**CHICKASAW NATION**                                 (See above for address)
*a federally recognized Indian Tribe*

                                                     **Meredith Presley Turpin**
                                                     THE CHICKASAW NATION
                                                     Office of Executive Counsel
                                                     2021 Arlington Street
                                                     Ada, OK 74820
                                                     580-272-5748
                                                     Email: meredith.turpin@chickasaw.net

                                                     **Stephen Greetham**
                                                     GREETHAM LAW, P.L.L.C.
                                                     Office of Senior Counsel
                                                     512 N. Broadway
                                                     Suite 205
                                                     Oklahoma City, OK 73102
                                                     580-399-6989
                                                     Email: sgreetham@greethamlaw.net

                                                     **Frank Sharp Holleman , IV**
                                                     (See above for address)


**Plaintiff**                        represented by  **Colin Cloud Hampson**
**CHOCTAW NATION**                                   (See above for address)
*a federally recognized Indian Tribe*

                                                     **Bradley Harold Mallett**
                                                     CHOCTAW NATION OF OKLAHOMA
                                                     Legal & Compliance
                                                     1802 Chukka Hina
                                                     Durant, OK 74701
                                                     580-380-3024

                                                     **Brian Danker**
                                                     CHOCTAW NATION OF OKLAHOMA
                                                     1802 Chukka Hina
                                                     Durant, OK 74701
                                                     580-380-7410

ATTACHMENT 1:  COURT'S PROPOSED CERTIFICATION ORDER

Email: bdanker@choctawnation.com

**Frank Sharp Holleman , IV**
(See above for address)

| | | |
|---|---|---|
| **Plaintiff** | represented by | **Colin Cloud Hampson** |
| **CITIZEN POTAWATOMI NATION** | | (See above for address) |
| *a federally recognized Indian Tribe* | | |
| | | **Frank Sharp Holleman , IV** |
| | | (See above for address) |

| | | |
|---|---|---|
| **Defendant** | represented by | **Kristofor R. Swanson** |
| **UNITED STATES** | | DOJ-ENRD |
| **DEPARTMENT OF INTERIOR** | | Natural Resources Section |
| | | PO Box 7611 |
| | | Washington, DC 20044-7611 |
| | | 202-305-0248 |
| | | Fax: 202-305-0275 |
| | | Email: kristofor.swanson@usdoj.gov |
| | | |
| | | **Matthew M. Marinelli** |
| | | U.S. DEPARTMENT OF JUSTICE |
| | | Natural Resources Section |
| | | 4 Constitution Square |
| | | 150 M Street, NE |
| | | Suite 3.206 |
| | | Washington, DC 20002 |
| | | 202-305-0293 |
| | | Email: Matthew.Marinelli@usdoj.gov |

| | | |
|---|---|---|
| **Defendant** | represented by | **Daniel Webber , Jr** |
| **J. KEVIN STITT** | | RYAN WHALEY COLDIRON |
| *in his official capacity as the Governor of* | | JANTZEN PETERS & WEBBER |
| *the State of Oklahoma* | | PLLC |
| | | 400 North Walnut Avenue |
| | | Oklahoma City, OK 73104 |
| | | 405-239-6040 |
| | | Fax: 405-239-6766 |
| | | Email: dwebber@ryanwhaley.com |
| | | |
| | | **Gentner F Drummond** |
| | | OFFICE OF THE ATTORNEY |
| | | GENERAL/OK |

5

ATTACHMENT 1:  COURT'S PROPOSED CERTIFICATION ORDER

313 NE 21st Street
Oklahoma City, OK 73105
405-521-3921
Email: gentner.drummond@oag.ok.gov

**Jason Reese**
GOODWIN LEWIS, PLLC
Office of the Governor
420 NW 6th Street
Second Floor
Oklahoma City, OK 73102
405-900-5700
Email: jreese@goodwinlewis.com

**Jeffrey B. Wall**
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW
Suite 700
Washington, DC 20006-5215
202-956-7500
Fax: 202-956-7676
Email: wallj@sullcrom.com

**Mary Catherine Zinsner**
TROUTMAN PEPPER HAMILTON
SANDERS LLP
401 9th Street, N.W.
Suite 1000
Washington, DC 20004
202-274-1932
Email: mary.zinsner@troutman-sanders.com

**Matthew Kane**
RYAN WHALEY COLDIRON
JANTZEN PETERS & WEBBER
PLLC
400 North Walnut Avenue
Oklahoma City, OK 73104
405-239-6040
Fax: 405-239-6766
Email: mkane@ryanwhaley.com

**Patrick Pearce , Jr**
RYAN WHALEY COLDIRON
JANTZEN PETERS & WEBBER

ATTACHMENT 1:  COURT'S PROPOSED CERTIFICATION ORDER

PLLC
400 North Walnut Avenue
Oklahoma City, OK 73104
405-239-6040
Fax: 405-239-6766
Email: rpearce@ryanwhaley.com

**Phillip Whaley**
RYAN WHALEY COLDIRON
JANTZEN PETERS & WEBBER
PLLC
400 North Walnut Avenue
Oklahoma City, OK 73104
405-239-6040
Fax: 405-239-6766
Email: pwhaley@ryanwhaley.com

**Austin Philip Mayron**
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
212-558-3733
Email: mayrona@sullcrom.com

**Garry M. Gaskins , II**
OFFICE OF THE ATTORNEY
GENERAL
313 NE 21st Street
Oklahoma City, OK 73105
405-521-3921
Email: garry.gaskins@oag.ok.gov

**Judson Owen Littleton**
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Suite 700
Washington, DC 20006
(202) 956-7085
Fax: (202) 239-6330
Email: littletonj@sullcrom.com

**Zoe A. Jacoby**
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Suite 700
Washington, DC 20006

ATTACHMENT 1:  COURT'S PROPOSED CERTIFICATION ORDER

202-956-7507
Email: jacobyz@sullcrom.com

**Defendant**                                    represented by   **Wyatt M. Rosette**
**JOHN R. SHOTTON**                                               ROSETTE, LLP
*in his official capacity as Chairman of Tribal*                  1100 H Street, NW
*Council-Otoe-Missouria Tribe of*                                 Suite 820
*Indians*                                                         Washington, DC 20005
                                                                  Email: wrosette@rosettelaw.com

                                                                  **Brett Stavin**
                                                                  ROSETTE, LLP
                                                                  4111 Perimeter Center Pl
                                                                  Oklahoma City, OK 73112
                                                                  405-256-1910
                                                                  Email: bstavin@rosettelaw.com

**Defendant**                                    represented by   **Ben Kappelman**
**MARK WOOMMAVOVAH**                                              DORSEY & WHITNEY LLP
*in his official capacity as Chairman of the*                     50 South Sixth Street
*Business Committee-Comanche Nation*                              Suite 1500
                                                                  Minneapolis, MN 55402-1498
                                                                  612-492-6744
                                                                  Email: kappelman.ben@dorsey.com

                                                                  **D. Michael McBride , III**
                                                                  CROWE & DUNLEVY
                                                                  222 N. Detroit Ave.
                                                                  Suite 600
                                                                  Tulsa, OK 74120
                                                                  918-592-9800
                                                                  Email: mike.mcbride@crowedunlevy.com

                                                                  **Vernle Charles Durocher , Jr.**
                                                                  DORSEY & WHITNEY LLP
                                                                  50 South Sixth Street
                                                                  Suite 1500
                                                                  Minneapolis, MN 55402
                                                                  (612) 340-7855
                                                                  Fax: 612-340-2807
                                                                  Email: durocher.skip@dorsey.com

8

ATTACHMENT 1:  COURT'S PROPOSED CERTIFICATION ORDER

**Defendant**                          represented by   **Kristofor R. Swanson**
**DEB HAALAND**                                         (See above for address)

                                                   **Matthew M. Marinelli**
                                                   U.S. DEPARTMENT OF JUSTICE
                                                   Environment and Natural Resources Division
                                                   4 Constitution Square
                                                   150 M Street, NE
                                                   Suite 3.206
                                                   Washington, DC 20002
                                                   202-305-0293
                                                   Email: Matthew.Marinelli@usdoj.gov


**Defendant**                          represented by   **Kristofor R. Swanson**
**BRYAN NEWLAND**                                       (See above for address)
*in her official capacity as the Assistant*
*Secretary of the Interior - Indian Affairs*           **Matthew M. Marinelli**
                                                   (See above for address)


_____
TIMOTHY J. KELLY
United States District Judge

Date:

9