UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| THE CHEROKEE NATION et al.,<br><br>      *Plaintiffs*,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR et al.,<br><br>      *Defendants*. | Civil Action No. 20-2167 (TJK) |

**MEMORANDUM OPINION & ORDER**

      Before the Court is Plaintiffs' Motion to Compel, in which they ask the Court to order Federal Defendants to produce the Department of the Interior's pre-decisional, deliberative documents related to the Secretary of the Interior's no-action approval of gaming compacts between Oklahoma and two federally recognized Indian Tribes. But such documents are not part of the administrative record, and compelled production is only justified upon a strong showing of bad faith or improper conduct. Plaintiffs have failed to make such a showing, so the Court will deny the motion.

**I.    Background**

      Plaintiffs, four federally recognized Indian Tribes, operate gaming establishments in Oklahoma under compacts with the State. ECF No. 157 at 6. Two other tribes, the Comanche Nation and the Otoe-Missouria Tribe of Indians, also purportedly entered into compacts with the State following negotiations with Governor Kevin Stitt. *Id.* at 7. Though several state officials questioned the validity of those compacts, the Comanche and the Otoe-Missouria submitted them for approval by the Secretary of the Interior under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.* ECF No. 157 at 8. Under that law, the Secretary had 45 days to review the

compacts and either approve or disapprove them, with failure to do either—known as a "no-action approval"—resulting in each being "considered to have been approved," "but only to the extent the compact is consistent with the provisions" of IGRA. 25 U.S.C. § 2710(d)(8)(C); *Amador County v. Salazar*, 640 F.3d 373, 377 (D.C. Cir. 2011). During that review period, interested parties submitted comments for the Secretary's consideration. ECF No. 157 at 8. Those parties included the Oklahoma Attorney General, who submitted a letter "explaining why the compacts had not been validly entered into by Oklahoma," and Governor Stitt, who defended the compacts. *Id.* Still, the Secretary "did not affirmatively act" on the compacts, and so they were deemed approved. *Id.*

Plaintiffs then sued various federal, state, and tribal officials under the Administrative Procedure Act ("APA"). *See* ECF No. 104. They brought eight claims, broadly divided into two groups. The first group alleges that the Secretary was required by IGRA to disapprove the challenged compacts because neither was legally "entered into" under Oklahoma law. ECF No. 157 at 20; ECF No. 104 ¶¶ 232–44, 266–68. The second alleges that the compacts violated IGRA because certain provisions within the compacts were unlawful. ECF No. 157 at 21; ECF No. 104 ¶¶ 245–65.

Several defendants moved to dismiss, which the Court granted in part and denied in part. ECF No. 157. For the surviving claims, the Court ordered Federal Defendants to serve a copy of the administrative record on all parties, which they did. Min. Order of Jan. 3, 2023; ECF No. 164. Plaintiffs, unhappy with the record as produced, filed the instant motion to compel Federal Defendants to produce additional materials. ECF No. 166. Specifically, Plaintiffs seek a purported "recommendation that the Office of Indian Gaming ('OIG') provided to Defendant Secretary" and any other "documents that [Federal Defendants] have withheld as deliberative and pre-decisional or on any other ground, or to provide a privilege log describing the documents withheld and the

2

basis for withholding them." *Id.* at 1. Federal Defendants oppose. ECF. 169.

## II.     Legal Standard

"Judicial review under the Administrative Procedure Act requires courts to 'review the whole record or those parts of it cited by a party.'" *Stand Up for Cal.! v. U.S. Dep't of Interior*, 315 F. Supp. 3d 289, 293 (D.D.C. 2018) (quoting 5 U.S.C. § 706). "That review is to be based on the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "To ensure fair review of an agency action, therefore, the court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (quoting *IMS, P.C. v. Alvarez,* 129 F.3d 618, 623 (D.C. Cir. 1997)). Thus, the "whole record" includes "the order involved, any findings or reports on which that order is based, and the pleadings, evidence, and other parts of the proceedings before the agency." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (internal quotation marks and quotations omitted). But pre-decisional, deliberative documents reflecting an agency's internal deliberations on how to resolve an issue "are not part of the administrative record to begin with." *Oceana, Inc. v. Ross* (*Oceana II*), 920 F.3d 855, 865 (D.C. Cir. 2019) (quotation omitted).

Pre-decisional, deliberative documents are not typically considered part of the administrative record because—on "arbitrary and capricious review"—they are "immaterial," and so agencies need not produce them in APA suits. *Oceana II*, 920 F.3d at 865 (quoting *In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279–80 (D.C. Cir. 1998)). But that rule is not absolute. Instead, when a party makes "a showing of bad faith or improper behavior" by the agency, then pre-decisional, deliberative documents may be relevant. *Id.* Still, to warrant compelled production, the party must provide "independent evidence of improper conduct by the agency that would constitute

*a strong showing* of bad faith or improper behavior." *Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*, 10 F.4th 869, 878 (D.C. Cir. 2021) (emphasis added) (cleaned up).[1]

Plaintiffs try to sidestep this test by arguing that the Court can compel the production of such records when they fall within one of the three scenarios recognized by the D.C. Circuit in *American Wildlands v. Kempthorne*. Those situations are when "(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the district court needed to supplement the record with background information in order to determine whether the agency considered all of the relevant factors; or (3) the agency failed to explain administrative action so as to frustrate judicial review." *Am. Wildlands*, 530 F.3d at 1002 (cleaned up). And Plaintiffs offer reasons why, they say, each of those circumstances applies here.

The Court disagrees that *American Wildlands* applies. In discussing the three circumstances it identified, the Circuit was addressing a party's efforts to "supplement" the record with materials that were not part of the record because they had not been before the agency when it acted. *Am. Wildlands*, 530 F.3d at 1002. Thus, the Circuit started with the general rule that review under the APA "is to be based on the full administrative record *that was before the Secretary* at the time he made his decision." *Id.* (emphasis added) (quoting *Citizens to Pres. Overton Park, Inc.*, 401 U.S. at 420). And the circumstances it identified were those in which—for various reasons—it had allowed the record to be supplemented with material that had not been before the

---

[1] To the extent Plaintiffs accept this standard, they argue that they need only provide "grounds to *suspect* bad faith or improper behavior" by the agency. ECF No. 166-1 at 11 (quoting *Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C. 1983)). But to the extent that there is any difference between these proposed standards, Federal Defendants—pointing to D.C. Circuit case law and the "presumption of regularity" that Courts afford agencies during APA review—have the better argument. ECF No. 169 at 15–16 (citing *LeBoeuf, Lamb, Greene & MacRae, LLP v. Abraham*, 347 F.3d 315, 320 (D.C. Cir. 2003)). Still, Plaintiffs' showing would fail under either standard.

agency. *See, e.g.*, *Kent County v. EPA*, 963 F.2d 391, 395–96 (D.C. Cir. 1992).

In contrast, pre-decisional, deliberative documents, like the those at issue here, are meant "to assist an agency decisionmaker in arriving at his decision" and "reflect[] the give-and-take of the consultative process." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002) (quotation omitted). By their nature, then, they are part of the agency's decision-making process. So it makes little sense to describe them as not "before the agency" when it made its decision. *Oceana, Inc. v. Ross* (*Oceana I*), 290 F. Supp. 3d 73, 78 (D.D.C. 2018). For that reason, the three circumstances identified in *American Wildlands* do not apply to pre-decisional, deliberative documents. Unsurprisingly, the Circuit has never discussed them in analyzing whether such documents should be produced as part of an administrative record. Instead, as far as the Court can tell, it has stood by its rule that, "on arbitrary and capricious review, absent a showing of bad faith or improper behavior, agency deliberations not part of the record are deemed immaterial." *Oceana II*, 920 F.3d at 865 (cleaned up). And that makes sense. Because such documents are "immaterial" "absent" such a showing, a court may compel their production *only* upon "a showing of bad faith or improper behavior." *Id.* (quotation omitted).

**III.    Analysis**

Plaintiffs have not met their burden to show bad faith or improper behavior by the Secretary.[2] They claim that, because they "informed" the Secretary that the compacts were invalid under

---

[2] The Court notes that even if Plaintiffs *had* met their burden, there is a plausible argument that they would still not be entitled to the agency's deliberative materials. Though deliberative documents "are deemed immaterial" "absent a showing of bad faith or improper behavior," *Oceana II*, 920 F.3d at 865 (quotation omitted), such a showing does not necessarily mean they are relevant. The D.C. Circuit has held that such materials are relevant only when "a cause of action is directed at the government's intent"—but that "the ordinary APA cause of action does not directly call into question the agency's subjective intent." *In re Subpoena Duces Tecum*, 156 F.3d at 1279–80. The APA causes of action here do not appear to be directed at the government's intent. *See* ECF No. 104 ¶¶ 232–68. Thus, the documents sought, which would allegedly shed

Oklahoma law and under IGRA, the Secretary "acted in bad faith and behaved improperly" by not disapproving them. ECF No. 166-1 at 19. But that is not close to "'independent evidence of improper conduct' by the [Secretary] that would constitute 'a strong showing of bad faith or improper behavior' sufficient to overcome the exclusion of deliberative documents from the record." *Transp. Div.*, 10 F.4th at 878 (quoting *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regul. Comm'n*, 789 F.2d 26, 44 (D.C. Cir. 1986)).

Plaintiffs' theory of bad faith and improper behavior is based on speculation and is not supported by independent evidence. In their complaint, Plaintiffs allege that Governor Stitt engaged in a strategy to "secure a proprietary interest" in gaming on native land. ECF No. 104 ¶ 107. And they also allege that the Secretary's no-action approval "evidenced" "complicity with that strategy." *Id.* ¶ 109. At bottom, Plaintiffs' theory is that, because the Secretary's no-action approval of the compacts was unlawful, and because they had explained to the Secretary why in their view that was so, the Secretary's failure to disapprove the compacts shows bad faith. But this is an argument that could be made in almost any APA case. If a party could show bad faith merely by pointing to comments it made to the agency—comments that the agency ultimately disagreed with—then "bad faith" would quickly become the norm. But "disagreement does not mean that the agency's view was wrong, or even if it was wrong, that the agency's decision based on that view was reached in bad faith." *Sierra Club v. U.S. Army Corps of Eng'rs*, 701 F.2d 1011, 1044 (2d Cir. 1983). Even assuming that Plaintiffs are right that the Secretary's no-action approval was unlawful, the Court has no evidence before it suggesting that this disagreement was inconsistent with a good-faith disagreement about the legality of the compacts—and without more, it is hardly

---

light on the Secretary's "subjective motivation," ECF No. 166 at 2, appear irrelevant. In any event, Federal Defendants do not raise this issue, preferring simply to rebut Plaintiffs' claims of bad faith. Thus, the Court need not resolve it.

6

a "strong showing" that the Secretary was somehow improperly coordinating with Governor Stitt to unlawfully circumvent state and federal gaming laws.

As part of their purported showing of bad faith, Plaintiffs argue that, since the Oklahoma Attorney General issued a "binding" opinion that concluded the compacts were unlawful, the Secretary's failure to disapprove them helps them make their required showing. ECF No. 166-1 at 23–26. And in support, they assert that the Court has already found that the opinion was binding on the Secretary. Not so. Plaintiffs cherry-pick language in the Court's Memorandum Opinion and Order resolving several motions to dismiss that said, "any state-law dispute between the Governor and others about whether the compacts were validly 'entered into' was resolved—at least for the time being and for the Secretary's purposes"—when the Attorney General issued his opinion. *See* ECF No. 157 at 36. But to be clear, the Court did not hold that the Secretary was bound by the Attorney General's opinion. Instead, the Court was addressing Federal Defendants' argument that "the Secretary ha[d] no obligation during the forty-five-day review period under IGRA to 'resolve a dispute' about whether a compact submitted to the Secretary was validly 'entered into' under state law." *Id.* at 35 (quoting ECF No. 106-1 at 36–38). In so doing, it noted that "*Plaintiffs allege in their complaint* that any state-law dispute that existed at the start of the review period for these compacts was resolved for the Secretary before the period ended." *Id.* at 36 (emphasis added). Thus, the Court merely recognized that, based on the facts Plaintiffs alleged in their complaint, the Secretary did not need to resolve any state-law dispute.

Still, even if Plaintiffs are ultimately right that the Attorney General's opinion was binding on the Secretary, that would not show bad faith or improper behavior either. Nothing before the Court suggests that the Secretary's no-action approval is inconsistent with a good-faith disagreement over both the Attorney General's conclusions *and* his authority to bind non-state officials like the Secretary. And again, that the Secretary's decision might have been wrong on these

7

points—even clearly so—is not on its own strong evidence of bad faith. *Sierra Club*, 701 F.2d at 1044. For these reasons, the Secretary's decision, even in light of the Attorney General's opinion, is not the necessary "strong showing" of bad faith.[3]

Other information before the Secretary underscores the conclusion that Plaintiffs have not made an adequate showing of bad faith or improper behavior. As just one example, the Comanche and Otoe-Missouria submitted a letter to the agency defending the compacts' legality. ECF No. 173 at 215–24. And though the Secretary was informed—three days before the 45-day deadline—that the Oklahoma legislature's leadership had filed an action in state court challenging the compacts on state-law grounds, that case was not resolved by the time the Secretary had to decide whether to approve the compacts. ECF No. 173 at 359. In other words, the Secretary knew that various parties had divergent views about state-law requirements and that the Oklahoma courts had not yet resolved the relevant issues. Especially given all these circumstances, the Secretary's decision to no-action approve the compacts is not a strong showing of bad faith or improper behavior sufficient to compel production of the agency's deliberative materials.[4]

---

[3] Plaintiffs also argue that the Secretary's failure to explain the no-action approval shows bad faith. ECF No. 172 at 15. But IGRA authorizes this course. 25 U.S.C. § 2710(d)(8)(C); *see also Amador County*, 640 F.3d at 377. Thus, the Court fails to see how it shows bad faith.

[4] Plaintiffs also argue that, unless they obtain the requested documents, Federal Defendants will "offer their own version of the Secretary's reasons for his actions uninformed by the Secretary's actual rationale, which the Federal Defendants will have kept secret." ECF No. 172 at 10. This argument does not help them meet their burden to show bad faith or improper conduct, and it fails on its own terms, as well. The Court strains to see how the OIG recommendation would shed light on the Secretary's rationale, since Plaintiffs' theory is that the Secretary *failed* to follow it. *See* ECF No. 166-1 at 14. In any event, while that argument may carry more weight in a different case, it does little here. Even if Federal Defendants attempt to offer their "own version" of the Secretary's reasons for the challenged actions, such attempts—beyond merely defending the lawfulness of the Secretary's actions—would do little to help their case. Indeed, most (if not all) of Plaintiffs' causes of action target the lawfulness of the Secretary's no-action approval under IGRA and state law, not the Secretary's reasons for doing so. For such claims, the Circuit has noted that courts "need no agency reasoning" at all because "[e]ither the compact meets the requirements of

In sum, Plaintiffs argue that they have shown that the Secretary acted in bad faith because, despite their protestations that the compacts could not be lawfully approved, the Secretary failed to disapprove them. But even assuming that Plaintiffs are right that the no-action approval was unlawful, on this record, the Secretary's decision is consistent with a good-faith disagreement over the applicable law. Plaintiffs have provided no additional extrinsic or "independent evidence" supporting their theory that the Secretary's alleged legal errors were deliberate or reflect improper behavior. *See Transp. Div.*, 10 F.4th at 878 (quoting *San Luis Obispo*, 789 F.2d at 44). And since a legal error alone does not show bad faith, *Sierra Club*, 701 F.2d at 1044, Plaintiffs have not met their burden. Thus, the Court declines to compel Federal Defendants to produce the identified pre-decisional, deliberative documents.[5]

## IV. Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Plaintiffs' Motion to Compel Production of Documents Not Included in Administrative Record as Produced, ECF No. 166, is **DENIED**. It is further **ORDERED**, sua sponte, that the stay of this case is **LIFTED**.[6] It is further **ORDERED** that the parties shall meet, confer, and propose a new briefing schedule on their

---

IGRA, in which case [courts] must reject the challenge, or it does not, in which case [courts] must direct the Secretary to disapprove the compact." *Amador County*, 640 F.3d at 382.

[5] To the extent that Plaintiffs seek any records other than the OIG recommendation, the Court also denies their motion because it fails to "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are likely to exist as a result of other documents that are included in the administrative record." *Univ. of Colo. Health v. Azar*, 486 F. Supp. 3d 185, 200 (D.D.C. 2020) (internal quotation marks and quotation omitted).

[6] Following briefing on this motion, the Court stayed the case pending resolution of an unrelated question of state law that the Court certified to the Oklahoma Supreme Court. Min. Order of Mar. 21, 2024. That court has since answered the certified question. ECF Nos. 198, 205. Accordingly, the Court lifts the stay. *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2003).

motions for summary judgment by July 23, 2025.  It is further **ORDERED** that the proposed briefing schedule shall account for any dispute that may exist as to the scope and manner of the Oklahoma Attorney General's appearance and include any relevant motion that would permit the Court to clarify the Attorney General's further participation.

    **SO ORDERED.**

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: July 9, 2025