No. 1:20-cv-02167 (TJK)

_____

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

_____

The Cherokee Nation, et al.,

*Plaintiffs*,

v.

United States Department of the Interior, et al.,

*Defendants.*

_____

## BRIEF OF THE OKLAHOMA ATTORNEY GENERAL
## AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS

_____

GENTNER F. DRUMMOND
*Attorney General*
GARRY M. GASKINS, II
*Solicitor General*
OFFICE OF THE OKLAHOMA
ATTORNEY GENERAL
313 NE 21st Street
Oklahoma City, OK 73105
Garry.Gaskins@oag.ok.gov

## TABLE OF CONTENTS

PAGE

INTEREST OF AMICUS CURIAE ...................................................................................1

SUMMARY OF ARGUMENT ..........................................................................................1

BACKGROUND ................................................................................................................1

ARGUMENT ......................................................................................................................4

    I.    THE STATE OF OKLAHOMA DID NOT VALIDLY ENTER INTO THE
COMPACTS. .........................................................................................................4

    II.    BECAUSE THE STATE OF OKLAHOMA DID NOT ENTER INTO THE
COMPACTS, THE SECRETARY'S APPROVAL WAS INEFFECTIVE. .........................4

    III.    ALTERNATIVELY, BECAUSE THE STATE OF OKLAHOMA DID NOT
LAWFULLY ENTER INTO THE COMPACTS, THE SECRETARY WAS
REQUIRED TO AFFIRMATIVELY DISAPPROVE THE COMPACTS. ...........................7

CONCLUSION ...................................................................................................7

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

## <u>Cases</u>

*Amador Cnty. v. Salazar*,
  640 F.3d 373 (D.C. Cir. 2011)............................................................................ 3, 6, 8, 9

*California v. Cabazon Band of Mission Indians*,
  480 U.S. 202 (1987) ........................................................................................ 3

*Detroit Int'l Bridge Co. v. Canada*,
  192 F.Supp.3d 54 (D.D.C. 2016)...................................................................... 4

*Doe v. United States*,
  48 Fed. Cl. 495 (2000)...................................................................................... 2

*Federal Crop Ins. Corp. v. Merrill*,
  332 U.S. 380 (1947) .......................................................................................... 4

*Keweenaw Bay Indian Cmty. v. United States*,
  136 F.3d 469 (6th Cir. 1998) ............................................................................ 6

*Kickapoo Tribe of Indians v. Babbitt*,
  43 F.3d 1491 (D.C. Cir. 1995).......................................................................... 4

*Kickapoo Tribe of Indians v. Babbitt*,
  827 F. Supp. 37 (D.D.C. 1993)....................................................................... 4, 5

*Michigan v. Bay Mills Indian Cmty.*,
  572 U.S. 782 (2014) ........................................................................................ 3

*Narragansett Indian Tribe v. Rhode Island*,
  Nos. Civ.A. 94-0618-T, 94-0619-T, and Nos. Civ.A. 95-0034, 1996 WL 97856
  (D.R.I. Feb. 13, 1996)...................................................................................... 5

*Pueblo of Santa Ana v. Kelly*,
  104 F.3d 1546 (10th Cir. 1997)....................................................................... 4, 7

*Seminole Tribe of Fla. v. Florida*,
  517 U.S. 44 (1996) .......................................................................................... 1, 3

*Stockbridge-Munsee Cmty. v. Wisconsin*,
  922 F.3d 818 (7th Cir. 2019)........................................................................... 2, 4

*Treat v. Stitt*, (Treat I)
  473 P.3d 43, 2020 OK 64 ................................................................................ 1, 2, 4, 5

*Treat v. Stitt*, (Treat II)
  481 P.3d 240, 2021 OK 3 ................................................................................................ 5

*United States v. Santee Sioux Tribe*,
  135 F.3d 558 (8th Cir. 1998) ......................................................................................... 5

*W. Flagler Assocs., Ltd. v. Haaland*,
  71 F.4th 1059 (D.C. Cir. 2023) ................................................................................... 8, 9

**<u>Statutes</u>**

25 U.S.C. § 2710 ................................................................................................ *passim*

**INTEREST OF AMICUS CURIAE**

Amicus, the Oklahoma Attorney General, as the chief law officer of the State of Oklahoma, 74 Okla. Stat. § 18b(A), has a compelling interest in protecting the State of Oklahoma's authority to regulate gaming on Indian lands under IGRA. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996). Moreover, as the State's chief law officer, he has an interest in ensuring that Oklahoma is not bound by contracts that were entered into by state officials who lack actual authority to bind the State.

**SUMMARY OF ARGUMENT**

The Indian Gaming Regulatory Act ("IGRA") requires that tribes enter into "gaming compacts," with the surrounding state before conducting Class III [1] gaming on Indian land. *See* 25 U.S.C. § 2710. After the tribe and state agree to the terms of a gaming compact, and enter into it, it must be submitted to the Secretary of the Interior ("Secretary") for approval. *Id*. § 2710(d)(8)(A). If the Secretary neither approves nor disapproves within forty-five days, a gaming compact is deemed approved but only to the extent that the compact is consistent with IGRA. *Id*. § 2710(d)(8)(C). After a gaming compact is approved, Class III gaming is allowed only if "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State . . . that is in effect." *Id*. § 2710(d)(1)(C).

This case concerns the validity of certain gaming compacts ("Compacts") that the Governor of Oklahoma ("Governor") attempted to enter into with the Comanche Nation and Otoe-Missouria Tribe. But the Governor lacked authority to enter into the Compacts. ECF No. 154 at 2. Thus, the State of Oklahoma is not bound to the Compacts, *Treat v. Stitt*, 473 P.3d 43, 44, 2020

---

[1] Class III gaming includes, *inter alia*, slot machines, blackjack, baccarat, roulette, and craps. 25 U.S.C. §§ 2703(9), 2703(7)(B).

OK 64, ¶ 8 (*Treat I*), and they were not "entered into" pursuant to IGRA, *see* 25 U.S.C. § 2710(d)(1)(C), (d)(8)(A).  Nevertheless, the Compacts received a "no-action approval" after the Secretary failed to disapprove of the same within forty-five days. ECF No. 157 at 8.

The Compacts are contracts. *See Stockbridge-Munsee Cmty. v. Wisconsin*, 922 F.3d 818, 824 (7th Cir. 2019) ("the [tribe's] claims under its [gaming compact] with Wisconsin are contractual"). And, under both state and federal law, only government officials with actual authority can validly enter into contracts on behalf of the government. *Treat I*, 473 P.3d at 43, 44, 2020 OK 64, ¶ 8; *Doe v. United States*, 48 Fed. Cl. 495, 501 (2000). Here, the Governor admits that he "lacked compacting authority." ECF No. 154 at 2. It follows that the State of Oklahoma did not enter into the Compacts and there is no gaming compact in effect between the State and either of the Defendant Tribes.

Contrary to the expected assertions of the Governor and Defendant Tribal Chairmen, *see id.*, the Secretary's no-action approvals did not cure the Governor's lack of authority to bind the State to the Compacts. A no-action approval is "effective only to the extent that the compact complies with IGRA." 25 U.S.C. § 2710(d)(8)(C). And, because the Governor lacked authority to bind the State, no IGRA-compliant compacts between the State and the Comanche Nation and Otoe-Missouria Tribe were in effect at the time of the no-action approvals. Thus, the Secretary's approvals were wholly ineffective, and the Court should enter declaratory relief in favor of Plaintiffs.

Alternatively, if the Court finds that the Secretary's no-action approvals validated the Compacts, then the Secretary's no-action approvals must still be set aside. The Compacts plainly violate IGRA because they were not validly entered into by the State of Oklahoma. Before the forty-five-day review period expired, the Oklahoma Attorney General at the time delivered an

official Opinion to the Secretary explaining that the Compacts were invalid. ECF No. 157 at 8. Thus, there can be no dispute that the Secretary was aware that the Compacts were invalid at the time of the no-action approvals. Accordingly, the Secretary was required to disapprove the Compacts within forty-five days, and the failure to do so was arbitrary and capricious and should be set aside.

## BACKGROUND

In 1987, the Supreme Court held that states had no power to regulate gaming on Indian lands. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987). Congress responded quickly, passing IGRA just one year later. ECF No. 157 at 2. IGRA grants states "some measure of authority over gaming on Indian lands." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996). Through IGRA, Congress "created a regulatory framework for tribal gaming intended to balance state, federal, and tribal interests." *Amador Cnty. v. Salazar*, 640 F.3d 373, 376 (D.C. Cir. 2011). Importantly, under IGRA, a tribe may offer Class III gaming "only pursuant to, and in compliance with, a compact it has negotiated with the surrounding State." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 785 (2014). IGRA further safeguards state involvement by requiring tribal gaming operations to be conducted in a manner consistent with a gaming compact that is "in effect." 25 U.S.C. § 2710(d)(1)(C).

This case is about preserving state involvement in IGRA's regulatory framework. Defendant tribes negotiated the Compacts with the Governor, an officer of the State of Oklahoma who lacked authority to bind the State to the Compacts. ECF No. 154 at 2. The unauthorized Compacts were then submitted to the Secretary who failed to disapprove of the Compacts even after the Oklahoma Attorney General at the time submitted an official Opinion to the Secretary confirming that the Governor lacked authority to bind the State. ECF No. 157 at 8. After the Secretary failed to disapprove of the Compacts within forty-five days of submission, the Compacts

were approved by operation of law, but "only to the extent" that they are "consistent with" IGRA. 25 U.S.C. § 2710(d)(8)(C).

Plaintiffs brought this action challenging the Secretary's no-action approvals under the Administrative Procedure Act. ECF No. 104. Specifically, Plaintiffs allege that the approvals are arbitrary and capricious because the Compacts were not validly entered into under Oklahoma law. Accordingly, Plaintiffs ask this Court to set aside the Secretary's approval of the Compacts. For the reasons set forth herein, this Court should enter relief in favor of Plaintiffs.

**ARGUMENT**

I.    **THE STATE OF OKLAHOMA DID NOT VALIDLY ENTER INTO THE COMPACTS.**

A "gaming compact" is a contract between a tribe and a state. *See Stockbridge-Munsee Cmty.*, 922 F.3d at 824. As with all contracts, gaming compacts are enforceable only after being "legally entered into by both parties." ECF No. 157 at 4.

"[I]t is for the federal court to determine whether the Governor's approval of the Tribal-State compact is sufficient for purposes of IGRA." *Kickapoo Tribe of Indians v. Babbitt*, 827 F. Supp. 37, 45 (D.D.C. 1993) *rev'd on other grounds*, 43 F.3d 1491 (D.C. Cir. 1995). But "that does not mean that state law plays no role at all in the statute." *Pueblo of Santa Ana v. Kelly,* 104 F.3d 1546, 1557 (10th Cir. 1997). Rather, "state law determines the procedures by which a state may validly enter into a compact." *Detroit Int'l Bridge Co. v. Canada*, 192 F.Supp.3d 54, 75 (D.D.C. June 21) (citing *Pueblo of Santa Ana*, 104 F.3d at 1553). And, under both federal and Oklahoma law, only officers with actual authority to bind the state can legally enter into contracts on behalf of the state. *Treat I*, 473 P.3d at 44, 2020 OK 64, ¶ 8 (holding that, because the Governor lacked authority to execute the Compacts, "Oklahoma is not and cannot be legally bound by [the Compacts]"); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947) ("anyone entering into an arrangement with the Government takes the risk of having accurately ascertained the he who

4

purports to act for the Government stays within the bound of his authority"). Thus, where gaming compacts are entered into by state officers, even governors, who lack authority to bind the state, the appropriate remedy is to declare such compacts void. *See Narragansett Indian Tribe v. Rhode Island*, Nos. Civ.A. 94-0618-T, 94-0619-T, and Nos. Civ.A. 95-0034, 1996 WL 97856, at *1-3 (D.R.I. Feb. 13, 1996); *Kickapoo*, 827 F. Supp. at 46.

In this case, there is no question that the State did not legally enter into the Compacts. The Supreme Court of Oklahoma has unequivocally stated that the Compacts are "invalid under Oklahoma law," and "[t]he State of Oklahoma is not and cannot be legally bound by [the Compacts]." *Treat I*, 473 P.3d at 44, 2020 OK 64, ¶ 8; *Treat v. Stitt*, 481 P.3d 240, 241, 2021 OK 3, ¶ 1 (*Treat II*). Even the Governor admits that he "lacked compacting authority." ECF No. 154 at 2, 9. Because the Compacts were executed by a state official that lacked actual authority to bind the State, there is no valid gaming compact between the State and Defendant tribes.

Given the absence of a valid state-tribal gaming compact, the Eighth Circuit's reasoning in *United States v. Santee Sioux Tribe*, 135 F.3d 558 (8th Cir. 1998), is directly applicable to this case. In *Santee Sioux*, the Defendant tribes failed to legally enter into a gaming compact with Nebraska before conducting Class III gaming operations. *Id*. at 560. And, just like Oklahoma, Nebraska generally prohibits possession or operation of gambling devices. *Id.* at 564. The Court held that, because there was no valid state-tribal gaming compact in effect, and the state generally prohibited unauthorized gaming, the Defendant tribes' gaming operations "constitute[d] a continuing violation of Nebraska law made applicable in Indian country through [] IGRA." *Id.* at 564.

Here, there is no dispute that the Governor lacked actual authority to bind the State to the Compacts. As a result, there is no binding compact in effect between the State and Defendant

Tribes. Thus, because IGRA prohibits tribes from conducting gaming operations in the absence of a valid tribal-state compact that is in effect, the Court should enter declaratory relief in favor of Plaintiffs.

## II.    BECAUSE THE STATE OF OKLAHOMA DID NOT ENTER INTO THE COMPACTS, THE SECRETARY'S APPROVAL WAS INEFFECTIVE.

When, as in this case, the Secretary takes no action within forty-five days of receipt of a request to approve a gaming compact, the compact is deemed approved "'but *only to the extent the compact is consistent with the provisions*' of IGRA." *Amador County*, 640 F.3d at 377 (quoting 25 U.S.C. § 2710(d)(8)(C) (emphasis added)). Thus, "the Secretary's approval of a Class III gaming proposal does not override the simultaneous compact requirement." *Keweenaw Bay Indian Cmty. v. United States*, 136 F.3d 469, 475 (6th Cir. 1998). Rather, the "caveat" in 25 U.S.C. § 2710(d)(8)(C) "invites judicial review" of no-action approvals. *Amador County*, 640 F.3d at 381. Because "only lawful compacts can become effective, [] someone—i.e., the courts—must decide whether those provisions are in fact lawful." *Id*.

Here, no portion of the Compacts is lawful because the Compacts are entirely inconsistent with IGRA's requirement that gaming compacts be "legally entered into by both parties." *Supra* Section I. And, while the Compacts received no-action approvals, the Secretary's approval does not obviate the need for a gaming compact that has been legally entered into by both parties. *Keweenaw Bay*, 136 F.3d at 475. On the contrary, because no provision of the Compacts was "entered into" by the tribe and state or "in effect" as required by IGRA, no provision of the Compacts may be "deemed approved" by the Secretary's inaction. *See* 25 U.S.C. § 2710(d)(8)(C). Thus, the Secretary's approval was wholly ineffective, and the Court should enter declaratory relief.

Defendants may argue that requiring the Secretary to review state law within the forty-five-day period is not feasible. ECF No. 154-1 at 23. But any such argument is severely undermined by the fact that Oklahoma's Attorney General at the time informed the Secretary in writing of the status of Oklahoma law during the forty-five-day period. ECF No. 157 at 8. Regardless, this Court need not decide that the Secretary was obligated to review Oklahoma law within the forty-five-day period. Rather, it should follow the Tenth Circuit's reasoning:

> We agree with the Tribes that Congress did not intend to force the Secretary to make extensive inquiry into state law to determine whether the person or entity signing the compact for the state in fact had the authority to do so. However, that does not mean that consequences should not flow, such as a determination that the compact is invalid, if it turns out that the state has not validly bound itself to the compact. . . . As the Secretary observes, a compact is not *valid* unless properly authorized, but the Secretary is not expected to *resolve* state law issues regarding that authority in the 45-day period given to him to approve a compact.

*Pueblo of Santa Ana*, 104 F.3d at 1557.

The Secretary's no-action approval is effective "only to the extent the compact is consistent with the provisions" of IGRA. 25 U.S.C. § 2710(d)(8)(C). And IGRA requires gaming compacts to be "legally entered into by both parties." Because, in this case, it is undisputed that the Compacts were not "lawfully entered into" by the State of Oklahoma, this Court should find that the Secretary's no-action approval was entirely ineffective as a matter of law and did not create any rights or obligations between Defendant Tribes and the State.

## III. ALTERNATIVELY, BECAUSE THE STATE OF OKLAHOMA DID NOT LAWFULLY ENTER INTO THE COMPACTS, THE SECRETARY WAS REQUIRED TO AFFIRMATIVELY DISAPPROVE THE COMPACTS.

Even if this Court were to find that the no-action approvals effectively authorized Class III gaming, it would follow that the Secretary had an obligation to disapprove the contracts. IGRA requires the Secretary to disapprove a compact if it violates federal law. 25 U.S.C. § 2710(d)(8)(B)(i)-(iii). The no-action approval option "includes no exemption from this obligation

7

to disapprove illegal compacts." *Amador County*, 640 F.3d at 381. Thus, "the Secretary may not no-action approve a compact that violates IGRA, as such a compact would if it were not validly 'entered into' under state law." ECF No. 157 at 36.

Again, in this case, there is no dispute that the Compacts were not properly entered into by the State of Oklahoma. Because the Compacts were not validly entered into by the State, they violate IGRA. *Id*. As a result, the Secretary was required to disapprove of the contracts, and the failure to do so was arbitrary and capricious.

Of course, at the time that this Court held that a compact "violates IGRA" if it is "not validly 'entered into' under state law," ECF No. 157 at 36 n.16, the D.C. Circuit had not yet handed down its decision in *W. Flagler Assocs., Ltd. v. Haaland*, 71 F.4th 1059, 1069 (D.C. Cir. 2023). *West Flagler* does not unsettle *Amador County*'s holding that the Secretary must disapprove a gaming compact that is void under state law.

The D.C. Circuit, in *West Flagler*, recognized that "inconsistency with IGRA" is a "ground for nullifying a compact considered approved following secretarial inaction." *Id.* at 1069. But, unlike the case at hand, in *West Flagler* there was no dispute that "the Seminole Tribe of Florida and the State of Florida entered into a compact." *Id*. at 1063. *West Flagler* concerned what a compact *authorized*—specifically, whether it authorized off-reservation gaming. *Id*. at 1061-62. In particular, the dispute in *West Flagler* was over whether the gaming compact "'authorize[d] sports betting both on and off Indian lands, in violation of IGRA's Indian lands requirement." *Id*. at 1061.

The Court found that the gaming compact at issue in that case was not intended to authorize "betting off of tribal lands." *Id*. at 1066. Indeed, the D.C. Circuit repeated the Supreme Court's admonition in *Bay Mills* that IGRA "regulates gaming activity on Indian lands, but 'nowhere

else.'" *Id.* at 1065 (quoting *Bay Mills*, 572 U.S. at 795).  It further agreed with the appellee's argument that "whether or not [betting off of tribal lands] is authorized or permissible as a matter of [state] law falls outside the scope of the Secretary's review." *Id.* at 1065  Therefore, disputes about whether such non-IGRA gaming is authorized concern a matter of state law that falls outside the Secretary's purview. *Id*. at 1065.

*West Flagler* did not address whether a purported compact *exists* as a legally binding agreement. *West Flagler* has no bearing on whether an unauthorized gaming compact satisfies IGRA's requirement that gaming be conducted pursuant to a compact with the state that is "in effect."  Instead, *West Flagler* dictates that, where a gaming compact addresses subjects that are "directly related to the operation of gaming activities," *id.* at 1064 (quoting 25 U.S.C. § 2710(d)(3)(C)(vii)), and where those other subjects are not governed by federal law or IGRA (e.g., the authorization of off-reservation gaming), such issues do not fall within the purview of the Secretary.

For that reason, *West Flagler* does not suggest that the Secretary's no-action approval can override IGRA's requirement that a state and tribe must "enter into" a compact that is "in effect" before gaming may occur "in conformance with" that compact. *See* 25 U.S.C. § 2710(d)(1)(C). Nor does *West Flagler* abrogate *Amador County*'s holding that the Secretary must disapprove compacts that violate IGRA. *See Amador County*, 640 F.3d at 381.

Whether the Compacts meet IGRA's requirement that gaming occur only "in conformance with" a compact "in effect," 25 U.S.C. § 2710(d)(1)(C), is plainly a question of federal law. It is also a question that is within the Secretary's purview. *West Flagler* does not permit the Secretary to disregard the federal law question of whether an IGRA-compliant gaming compact exists. The Secretary was required to disapprove of the Compacts because they were not properly entered into

by the State and Defendant Tribes. His failure to do so was arbitrary and capricious. Accordingly,

the Court should enter judgment in favor of Plaintiffs.

## CONCLUSION

This Court should enter judgment in favor of Plaintiffs on their claims for declaratory and

injunctive relief.

November 7, 2025

Respectfully submitted,

By /s/ *Garry M. Gaskins, II*

GENTNER F. DRUMMOND, OBA #16645
  *Attorney General*
GARRY M. GASKINS, II, OBA #20212
  *Solicitor General*
OFFICE OF THE OKLAHOMA
ATTORNEY GENERAL
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Garry.Gaskins@oag.ok.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of November 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court for the District of Columbia using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Garry M. Gaskins, II*